No. 23-2214

———————————————

IN THE

# United States Court of Appeals

FOR THE FOURTH CIRCUIT

———————————————

ICG TYGART VALLEY, LLC,
*Petitioner,*

v.

JAMES A. BRAHAM,
*Respondent,*
and

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,
*Party-In-Interest*

———————————————

ON PETITION FOR REVIEW OF A DECISION AND ORDER
OF THE BENEFITS REVIEW BOARD,
UNITED STATES DEPARTMENT OF LABOR

———————————————

**JOINT APPENDIX**

———————————————

William S. Mattingly
Jackson Kelly PLLC
100 W. Main Street, Suite 700
Lexington, KY 40507
(859) 288-2811
*Counsel for ICG Tygart Valley, LLC*

Leonard J. Stayton
Attorney at Law
P.O. Box 1386
Inez, KY 41224
(606) 298-5117
*Counsel for James A. Braham*

Eirik J. Cheverud
U.S. Department of Labor
Office of the Solicitor
200 Constitution Avenue, N.W., Suite N-2119
Washington, D.C. 20210
*Counsel for Director*

## JOINT APPENDIX[1]

| Description | Record Entry No. | Page |
|---|---|---|
| The February 5, 2018 Application for Benefits; | Director's Exhibit Nos. 2, 3, 4 | 1 |
| Dr. Stephany S. Swart's report of the October 1, 2013 CT scan; | Director's Exhibit No. 22 | 11 |
| Dr. Henry K. Smith's report of the October 1, 2013 CT scan; | Director's Exhibit No. 22 | 12 |
| Dr. Kathleen DePonte's July 5, 2021 report of the October 1, 2013 CT scan; | Claimant's Exhibit No. 1 | 14 |
| Dr. Robert D. Tarver's August 19, 2021 report of the October 1, 2013 CT scan; | Employer's Exhibit No. 3 | 16 |
| Dr. DePonte's December 23, 2021 supplemental report of the October 1, 2013 CT scan and March 27, 2019 x-ray; | Claimant's Exhibit Nos. 3, 5 | 18 |
| Dr. Tarver's February 1, 2022 supplemental report of the October 1, 2013 CT scan and March 27, 2019 x-ray; | Employer's Exhibit No. 7 | 26 |
| Dr. Garrett Stover's report of the February 21, 2017 x-ray; | Director's Exhibit No. 22 | 27 |
| Dr. DePonte's report of the May 15, 2018 x-ray; | Director's Exhibit No. 32 | 28 |
| Dr. Tarver's report of the May 15, 2018 x-ray; | Director's Exhibit No. 21 | 29 |

---

[1] Personal data has benefits redacted pursuant to Federal Rule of Appellate Procedure 25(a)(5), Federal Rule of Civil Procedure 5.2(a).

i

## JOINT APPENDIX

| Description | Record Entry No. | Page |
|---|---|---|
| Dr. Michael Alexander's report of the May 15, 2018 x-ray; | Director's Exhibit No. 18 | 31 |
| Dr. Tarver's report of the March 27, 2019 x-ray; | Employer's Exhibit No. 6 | 32 |
| Dr. Kim A. Adcock's report of the April 9, 2019 x-ray; | Employer's Exhibit No. 2 | 34 |
| Dr. Gregory J. Fino's report of the April 9, 2019 x-ray; | Director's Exhibit No. 25 | 35 |
| Dr. DePonte's report of the April 9, 2019 x-ray; | Director's Exhibit No. 20 | 37 |
| Dr. David A. Celko's December 19, 2019 supplemental medical report; | Director's Exhibit No. 28 | 38 |
| The August 17, 2021 Affidavit of Amy Livengood; | Claimant's Exhibit No. 2 | 39 |
| The September 10, 2021 Hearing Transcript; | Not Applicable | 41 |
| The April 18, 2022 Decision and Order Awarding Benefits by ALJ Drew A. Swank; | Not Applicable | 71 |
| The September 21, 2023 Decision and Order Affirming Benefits by the Benefits Review Board; and | Not Applicable | 97 |
| The November 17, 2023 Notice of Appeal to Fourth Circuit Court of Appeals. | Not Applicable | 112 |

## CERTIFICATE OF SERVICE

The undersigned counsel herby that the foregoing was served upon the following, through the CM/ECF system, this 28th day of February 2024.

**<u>ELECTRONIC:</u>**    Nwamaka Anowi
Office of the Clerk
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 501
Richmond, VA 23219-3517

Eirik J. Cheverud
U.S. Department of Labor
Office of the Solicitor
Room N-2119
200 Constitution Avenue, N.W.,
    Suite N-2119
Washington, D.C. 20210
*Cheverud.Eirik.J@dol.gov*
*brb-bllls@dol.gov*

Leonard J. Stayton
Attorney at Law
Main Street, Cain Bldg.
P.O Box 1386
Inez, KY  41224
*staytonlawoffice@bellsouth.com*

*/s/ William S. Mattingly*
William S. Mattingly
Kentucky State Bar No. 96067
Ohio State Bar No. 0029476
West Virginia State Bar No. 004699
Pennsylvania State Bar No. 68577 (inactive)
Jackson Kelly PLLC
100 West Main Street, Suite 700
Lexington, KY 40507
(859) 288-2811
*wmattingly@jacksonkelly.com*

-0005208037

**Miner's Claim for Benefits Under The Black Lung Benefits Act**

U.S. Department of Labor
Office of Workers' Compensation Programs

I hereby claim all benefits which may be payable to me under the Black Lung Benefits Act. I also hereby apply on behalf of my family for any benefits that may be payable under the Act.

**IMPORTANT:** No benefits may be paid under the Black Lung Benefits Act, unless a completed application form has been received. However, disclosure of your Social Security Number; the failure to disclose such number will not result in the denial of any right, benefit, or privilege to which an individual may be entitled. Collection of the information on this form is authorized by law (30 U.S.C. 901, et. seq.). This information is required to obtain a benefit.

OMB No : 1240-00
Expires: 10/31/201-
(FOR DOL USE)

1. Miner's Full Name (First, Middle, Last)

_James   Allen  Braham_

2. Miner's Social Security Number ████████

3. Miner's Date of birth (Month, day, year) ████████

4. Highest grade miner completed in school   _12_

5. Have you (or someone on your behalf) ever filed a claim for Federal Black Lung benefits before?
☐ Yes    ☑ No

6. Decision made (If more than one claim filed, identify and show disposition of each in Item 18, "Remarks.")
☐ Allowed        ☐ Denied
☐ Withdrawn      ☐ Pending

7. Are you still working in or around the coal mines?   ☐ Yes  If "yes," answer only c.
☑ No   If "no," answer a-c.

a. When did you stop working in or around coal mines or a coal preparation facility in the extraction, transportation or preparation of coal, or in coal mine construction or maintenance in or around a coal mine?

_2-10-2017_

b. Why did you stop working in or around coal mines or in a coal preparation facility in the extraction, transportation or preparation of coal, or in coal mine construction or maintenance in or around a coal mine?

_Retired_

c. Have you ever been transferred from your regular coal mine job to lighter duty?
☐ Yes  ☑ No  If "Yes," provide the dates and reasons why you were transferred. Use space in item 18, "Remarks."

8. How many years have your worked in or around coal mines, or in a coal preparation facility, in the extraction or preparation of coal, or worked in coal mine construction or transportation in or around a coal mine?  _40_  To the best of your knowledge, list your complete coal mine Employment History on form CM-911a.

NOTE: If available evidence is not sufficient to arrive at a determination, you may be requested to have an independent medical examination at no expense to you. Should the Department of Labor obtain information useful to your physician for treatment, such information may be furnished to the physician.

9. Describe briefly any disability you believe you have due to pneumoconiosis (Black Lung) or other respiratory or pulmonary disease resulting from coal mine employment. Specifically, what aspect(s) of your regular job in the coal mines are you physically unable to perform as a result of your disability? _Unable to breathe under stress, physical activity, physical exertion_

**JA 1**

Form CM-911

—0005208037

NOTE: The amount of any state or Federal Workers' Compensation / Occupational Disease benefits you are receiving based on your disabilit
due to coal workers' pneumoconiosis will be subtracted from your benefits under Part C of the Black Lung Benefits Act.

10. Have you filed a workers' compensation claim under any state or Federal law on account of your disability, due to coal workers'
pneumoconiosis?

☐ Yes  ☑ No  (If "Yes," complete items a through j.)

| a. With what State or Federal agency was the claim filed? | b. Approximate date of filing: | c. Claim No. (If known) |
|---|---|---|

| d. Decision made: | e. Employer against whom Workers' Compensation Claim was filed? |
|---|---|
| ☐ Allowed  ☐ Denied  ☐ Pending | |

| f. Amount of payment:<br><br>Weekly: $ _____ per week<br>Other: $ _____ per _____ | g. Date payments began:<br><br>Date payments ended: |
|---|---|

| h. Did you pay any attorney fees or legal fees in securing your workers' compensation award?<br><br>☐ Yes   ☐ No | i. If you received a lump sum payment based on your compensation claim, please indicate the following:<br><br>Period covered (fill in below):   Amount: $<br>From:   To: |
|---|---|

j. Did you receive any medical benefits as part of your Workers' Compensation benefits?    ☐ Yes   ☐ No

NOTE: The amount of your earnings, either as an employee or from self-employment, will help us determine the correct payment of black lung
benefits to which you may be entitled. This information is required by the 1981 Amendments to the Black Lung Benefits Act.

11a. Enter the names and addresses of all persons, companies, or government agencies for which you worked during the previous calendar
year. If self-employed, so indicate.

| Name and Address of Employer | Work Began Month / Year | Work Ended Month / Year | Approximate Earnings |
|---|---|---|---|
| Arch Coal<br>1 City Place Drive<br>St. Louis, MO 63141 | 8/2009 | 2/2017 | $1,800.00 every 2 wks. |

b. How much do you expect the earnings to be this year? (Count all of your earnings beginning with the first of the year and all expected
earnings through the end of the year.) $ 0

| 12. Are you married now?  ☑ Yes   ☐ No  (If "Yes," complete items a-f)<br>(If "No," go to item 13) | a. Date of marriage:<br>7-2-2004 |
|---|---|

| b. Your spouse's first and maiden name (Print):<br>Patricia Wilson<br>SSN ████████ | c. Spouse's birth date:<br>████████ | d. Do you and your spouse live together?<br>☑ Yes   ☐ No  (If "No," answer items e and f) |
|---|---|---|

| e. Are you required to make support payments to your spouse?<br>☐ Yes   ☑ No  (If "Yes," attach a copy of the order.) | f. Do you make regular support payments to your spouse?<br>☐ Yes   ☑ No  (If "Yes," indicate amount.)<br>$ _____ per _____ (month, day, year) |
|---|---|

13. Have you previously married?  ☑ Yes   ☐ No  (If "Yes," answer a through f.)

| a. Full name of your previous spouse:<br>Lisa Thorn Braham | b. Date married (month, day year)<br>11/93 | c. Place married (City & State)<br>Oakland, MD |
|---|---|---|

| d. How marriage ended: (death, divorce)<br>Divorce | e. Date marriage ended:<br>7/95 | f. Place marriage ended (City, State)<br>Kingwood, WV |
|---|---|---|

If prior marriage ended by divorce and you were married for 10 years before the divorce action, answer questions 14 and 15.

| 14. Are you under a court order to make support payments to a divorced spouse?<br>☐ Yes   ☐ No  (If "Yes," attach a copy of the orders). | 15. Do you make substantial contributions to a divorced spouse?<br>☐ Yes   ☐ No  (If "Yes," indicate amount)<br>$ _____ per _____ (month, day, year) |
|---|---|

**JA 2**

-0005208037

| Do you have any unmarried children who are: | List All Such Children In Order Of Birth Beginning With The Oldest (Use "Remarks" space Item 18 if space below is insufficient) | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Check (X) sex of child | | Date of Birth | Check (X) if child 18 or older is student or disabled. | | Check (X) If that shows child's relationship to you | | | | |
| | Male | Female | (Mo., day, yr.) | Student | Disabled | Legitimate | Adopted | Stepchild | Other |
| Under age 18 ☐ Yes ☒ No | | | | | | | | | | |
| Age 18-23 and attending school ☐ Yes ☒ No | | | | | | | | | | |
| Age 18 or older and disabled ☐ Yes ☒ No | | | | | | | | | | |
| Full name of child: | | | | | | | | | | |
| SSN: | | | | | | | | | | |
| Full name of child: | | | | | | | | | | |
| SSN: | | | | | | | | | | |
| Full name of child: | | | | | | | | | | |
| SSN: | | | | | | | | | | |

If Any Child Named Above Does Not Live With You, Enter The Name And Address Of The Person Or Organization With Whom The Child Lives In Item 18, "Remarks."

17. The events listed below may affect the amount of your Federal Black Lung benefits:

Your condition improves; or

You become entitled to receive workers' compensation or occupational disease payments due to disability on account of pneumoconiosis; or

The amount of any of the benefits described above to which you are entitled changes; or

You work in or around coal mines or any other employment, including self-employment.

The events listed below relating to your dependents may also affect the amount of your Federal Black Lung benefits:

A dependent marries, divorces, dies, or is adopted by someone else; or

A child age 18-23 stops attending school, or in the case of a disabled child 18 or older, the disabling condition improves.

It is IMPORTANT that you report PROMPTLY any of the above events that occur.

Do you agree to notify the Department of Labor if any of the above events occur? ☒ Yes   ☐ No

18. Remarks. (You may use this space for explanations. If you need more space, attach a separate sheet.

**JA 3**

-0005208037

19. Do you authorize any physician, hospital, agency, employer or other organization (including the Social Security Administration) to disclose to the Department of Labor any medical records, or information about your disability, or any other information pertinent to your claim?
☑ Yes    ☐ No

20. Do you authorize the Department of Labor to give information about the decision in your Black Lung Benefits claim to the Workers' Compensation, Unemployment Compensation, or Disability Insurance agency of your State to use in connection with a claim you may have with the agency?
☑ Yes    ☐ No

### SIGNATURE OF MINER

I hereby certify that the information given by me on and in connection with this form is true and correct to the best of my knowledge and belief. I am fully aware that any person who willfully makes any false or misleading statement or representation for the purpose of obtaining any benefit or payment under this title shall be guilty of a misdemeanor and on conviction thereof shall be punished by a fine of not more than $1,000.00, or by imprisonment for not more than one year, or both.

| 21. Signature of claimant (First, middle, last) | 22. Date (Month, day, year) |
|---|---|
| X _Dana Allen Blem_ JB | 1-25-18 |

| 22. Mailing Address (Number, street, Apt. No., P.O. Box or Rural Route) | 24. City and State |
|---|---|
| 89 Apple Drive | Albright, WV |

| 25. Zip Code | 26. County Where You Now Live | 27. Telephone number (Include area code) |
|---|---|---|
| 26519 | Preston | 304-379-1141 |

Witnesses are required ONLY if this application has been signed by mark (X) above. If signed by mark (X), two witnesses to the signing who know the applicant must sign below, giving their full address

| 28. Signature of witness | 29. Signature of witness |
|---|---|
| Brandie L Pixe | Benjami mm |

| 30. Address (Number, street, city, state & zip code) | 31. Address (Number, street, city, state & zip code) |
|---|---|
| 8604 Brandonville Pike Albright, WV 26519 | 8604 Brandonville Pike Albright, WV 26519 |

Note: Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

### PRIVACY ACT NOTICE

In accordance with the Privacy Act of 1974, as amended (5 U.S.C. 552a), you are hereby notified that: (1) the Black Lung Benefits Act (BLBA) (30 U.S.C. 901 et seq.), as amended, is administered by the Office of Workers' Compensation Programs (OWCP) of the U.S. Department of Labor, which receives and maintains personal information, relative to this application, on claimants and their immediate families; (2) information obtained by OWCP will be used to determine eligibility for benefits payable under the BLBA; (3) information may be given to coal mine operators potentially liable for payment of the claim or to the insurance carrier or other entity which secured the operator's compensation liability, (4) information may be given to physicians or other medical service providers for use in providing treatment, making evaluations and for other purposes relating to the medical management of the claim; (5) information may be given to the Department of Labor's Office of Administrative Law Judges, or other person, board or organization, which is authorized or required to render decisions with respect to the claim or other matters arising in connection with the claim; (6) information may be given to Federal, state or local agencies for law enforcement purposes, to obtain information relevant to a decision under the BLBA, to determine whether benefits are being or have been paid properly, and where appropriate, to pursue administrative offset and/or debt collection actions required or permitted by law; (7) disclosure of the claimant's or deceased miner's Social Security Number (SSN) or tax identifying number (TIN) on this form is voluntary, and the SSN and/or TIN and other information maintained by the OWCP may be used for identification and for other purposes authorized by law; (8) failure to disclose all requested information, may delay the processing of this claim or the payment of benefits, or may result in an unfavorable decision or reduced level of benefits.

COMPUTER MATCHING PROGRAM. The Department of Labor conducts computer matches with the Department of Health and Human Services and the Department of Veterans Affairs. Any information provided by applicants or and recipients of financial assistance or payments under Federal benefit programs may be subject to verification through computer matches which the Department of Labor conducts with these agencies.

### Public Burden Statement

Public reporting for this collection of information is estimated to average 45 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Division of Coal Mine Workers' Compensation, Room N-3464, 200 Constitution Avenue, NW, Washington, DC 20210. **DO NOT SEND THE COMPLETED FORM TO THIS OFFICE.**

### JA 4

-0005218037

**Employment History**

**U.S. Department of Labor**
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation



[ Reset ] [ Print ]

Note: Persons are not required to respond to this collection of information unless it displays currently valid OMB control number.

Please complete as accurately as possible the miner's complete employment history. (Where employment was in coal mining, specify whether the mine was a strip mine or an underground mine.) This report is authorized by law (30 U.S.C. 901 et. seq.) and required to obtain a benefit. While you are not required to respond, your cooperation is needed to ensure that full and proper consideration is given to this claim. Disclosure of the social security number is voluntary. Failure to disclose such number will not result in the denial of any right, privilege or benefit to which you may be entitled.

OMB No 1240-0035
Expires 10/31/2014

| Miner's Name | | | Miner's Social Security Number |
|---|---|---|---|
| First Name: James | M.I. A. | Last Name: Braham | |

| Name and Address of Employer (City and State) | Type of Industry (Indicate if coal mining, extraction or preparation of coal, coal mine construction, or transportation in or around a coal mine, steel, manufacturing or other) | Occupation (Specify type of work) | Period of Employment Mo/Yr | Mo/Yr | Exposure to dust, gases, or fumes? (Yes/No) |
|---|---|---|---|---|---|
| T&T Coal Bruceton, Mills WV | Coal mining | roof bolter Shuttle car | 11/76 | 12/98 | ☑ Yes ☐ No |
| Kingwood Mining Tunnelton, WV | Coal mining | roof bolter Shuttle car | 3/99 | 4/09 | ☑ Yes ☐ No |
| Arch Coal Grafton, WV | Coal mining | roof bolter Shuttle car belts | 8/09 | 2/17 | ☑ Yes ☐ No |
| | | | | | ☐ Yes ☐ No |
| | | | | | ☐ Yes ☐ No |
| | | | | | ☐ Yes ☐ No |
| | | | | | ☐ Yes ☐ No |
| | | | | | ☐ Yes ☐ No |
| | | | | | ☐ Yes ☐ No |

**JA 5**

-0005218037

| 1. Name and Address of Employer (City and State) | 2. Type of Industry (indicate if coal mining, extraction or preparation of coal, coal mine construction, or transportation in or around a coal mine, steel, manufacturing or other) | 3. Occupation (Specify type of work) | 4. Period of Employment Mo/Yr | Mo/Yr | 5. Exposure to dust, gases, or fumes? (Yes/No) |
|---|---|---|---|---|---|
| | | | | | ☐ Yes ☐ No |
| | | | | | ☐ Yes ☐ No |
| | | | | | ☐ Yes ☐ No |
| | | | | | ☐ Yes ☐ No |

I hereby certify that the information given by me on and in connection with this form is true and correct to the best of my knowledge and belief. I am also fully aware that any person who willfully makes any false or misleading statement or representation for the purpose of obtaining any benefit or payment under this title shall be guilty of a misdemeanor and on conviction thereof shall be punished by a fine of not more than $1,000, or by imprisonment for not more than one year or both.

6. Signature of Claimant (First, middle, last)    *James Allen Blaney*

7. Date (Month, date, year)    *1-25-18*

8. Mailing Address (Number, Street, Apt. No., P.O. Box or Rural Route)    *89 Apple Drive*

9. City and State    *Albright, WV*

10. ZIP Code    *26519*

11. County where you live    *Preston*

12. Telephone number (include area code)    *304-379-1141*

Witnesses are required only if this application has been signed by mark (X) above. If signed by mark (X), two witnesses to the signing who know the applicant must sign below, giving their full address.

| Signature of Witness | Signature of Witness |
|---|---|
| Address (Number, Street, City, State & ZIP Code) city: state: zip: | Address (Number, Street, City, State & ZIP Code) city: state: zip: |

**PRIVACY ACT STATEMENT**

The following statement is made in accordance with the Privacy Act of 1974, as amended (5 U.S.C 552a). (1) Submission of this report is required under the Black Lung Benefits Act. (2) The information in the report will be used to determine eligibility under the Act. (3) The information may be used by other agencies or persons in handling matters relating, directly or indirectly, to the subject matter of the claim, so long as such agencies or persons have received the consent of the individual claimant or beneficiary, or have complied with the provisions of 20 CFR Part 725. (4) Furnishing all requested information will facilitate the claims adjudication process; and the effects of not providing all or any part of the requested information may delay the process, or result in an unfavorable decision or a reduced level of benefits. (Disclosure of your social security number is voluntary; the failure to disclose such number will not result in the denial of any right, benefit or privilege to which an individual may be entitled.)

**Public Burden Statement**

Public reporting burden for this collection of information is estimated to average 40 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Division of Coal Mine Workers' Compensation, Room N-3464, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

**JA 6**

-0005228037

**Description of Coal Mine Work and Other Employment**

**U. S. Department of Labor**
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation



| | OMB No 1240-003 |
|---|---|
| | Expires 04-30-201 |

This report is authorized by the Black Lung Benefits Act (30 U.S.C. 901 et. seq.). While you are not required to respond, your cooperation is needed to ensure that this claim is given full and proper consideration.

Miner's Name

JAMES A. BRAHAM

Claim Number

[redacted]

Please provide the following information concerning your current or last coal mine work, or the miner's last coal mine work prior to death.

**PART I - DESCRIPTION OF COAL MINE WORK**

1. Job title

Coal miner   roof bolter, shuttle car

2. Dates worked (mm/dd/yyyy):

From 8/09    To 2/10/2017

3. Highest or current rate of pay

$30.00 hr.

4. Number of days worked per week

6

5. Describe the duties of this job in your own words:

roof bolter - helped load roof bolter, drilled holes in top of roof, installed glue and bolts in hole drilled, helped hang air curtain, clean dust boxes every cut, then moved to next cut.

6. List all other jobs you or the deceased miner did in the coal mines for at least one year.

| a. Job Title | b. Dates Worked (Month and Year) | |
|---|---|---|
| | From | To |
| Belt Shoveler | 2/2015 | 8/2015 |
| Parts runner | 8/2015 | 2/2017 |
| | | |
| | | |
| | | |
| | | |

**Public Burden Statement**

Public reporting burden for this collection of information is estimated to average 30 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Division of Coal Mine Workers' Compensation, Room C3526, 200 Constitution Avenue NW, Washington, D.C. 20210. DO NOT SEND THE COMPLETED FORM TO THIS OFFICE.

**JA 7**

-0005228037

7. Describe the physical activity required by the coal mine job described in number 5.

Sitting for ____O____ hours (Give number of hours per day)

Standing for ____10____ hours (Give number of hours per day)

Crawling ____O____ (distance) for ____O____ hours per day.

Lifting ____50____ pounds ____6____ times per day.

_____ pounds _____ times per day

_____ pounds _____ times per day.

( Example: 25 pounds ten times per day )

Carrying ____50____ pounds ____20 ft____ ( distance ) ____6____ times per day.

_____ pounds _____ ( distance ) _____ times per day.

_____ pounds _____ ( distance ) _____ times per day.

( Example: 20 pounds 50 feet 15 times per day )

8. Did the coal mine job discussed above involve:

1. The use of tools, machines or equipment:?    ☑Yes ☐No

2. Technical knowledge or special skills?    ☑Yes ☐No

3. Any supervisory responsibilities?    ☐Yes ☑No

Please explain all "Yes" answers. For example, the specific type of tools, machines or equipment used; the nature of any technical knowledge or special skills needed and the nature of any supervisory duties including the number and type of employees supervised, and the extent to which they had to be supervised, etc..

- drill steels, bolt wrenchs, hammer
- where to drill the hole, how to place the roof bolt and glue

9. Were you (or the deceased miner) transferred from a previous job due to health reasons?    Yes
If "Yes", provide the following information:

a. Previous Job:

roof bolter

b. Job transferred to:

parts runner

c. Effective date of transfer:

8/2015

d. Reason: she was a part 90 miner and had to get out of face because of dust/breathing

e. If coal mine work has stopped, give reason and last date worked:

retired    2-10-2017

**JA 8**

-0005228037

## PART II - DESCRIPTION OF OTHER EMPLOYMENT

**Please provide the following information about current or last non-coal mine employment.**

| 10. Job title | 11. Type of business or industry |
|---|---|
| N/A | |

| 12. Dates worked (mm/dd/yyyy) | 13. Highest or current rate of pay | 14. Number of days worked per week. |
|---|---|---|
| From:                To: | | |

15. Describe the duties of this job in your own words:

16. Describe the physical activity required by the job described above.

Sitting for _____ hours per day.          Standing for _____ hours per day.

Lifting _____ pounds _____ times per day.

_____ pounds _____ times per day.

_____ pounds _____ times per day.

( Example: 25 pounds ten times per day )

Carrying _____ pounds _____ ( distance ) _____ times per day.

_____ pounds _____ ( distance ) _____ times per day.

_____ pounds _____ ( distance ) _____ times per day.

( Example: 20 pounds 50 feet 15 times per day )

17 Did the job discussed above (10 to 16) involve:

17 a. The use of tools, machines or equipment?  ☐ Yes ☐ No

17 b. Technical knowledge or special skills?  ☐ Yes ☐ No

17 c. Any supervisory responsibilities?  ☐ Yes ☐ No

Please explain all "Yes" answers. For example, the specific type of tools, machines or equipment used; the nature of any technical knowledge or special skills needed and the nature of any supervisory duties including the number and type of employees supervised, the extent to which they had to be supervised, etc.

18. If work has stopped, give date of last employment and reason.

| Date | Reason for stopping |
|---|---|
| | |

**JA 9**

-0005228037

**PART - III**

19. Use this section for additional space to answer any previous question, or to provide any other information you feel would be helpful Please refer to previous questions by the corresponding number. If more space is needed, use a blank sheet and attach.

**PRIVACY ACT**

The following information is provided in accordance with the Privacy Act of 1974. (1) Submission of this information is required under the Black Lung Benefits Act. (2) The information will be used to determine eligibility for and the amount of benefits payable under the Act. (3) The information may be used by other agencies or persons in handling matters relating, directly or indirectly, to the subject matter of the claim, so long as such agencies or persons have received the consent of the individual claimant or beneficiary, or have complied with the provisions of 20 CFR Part 725. (4) Furnishing all requested information will facilitate the claim adjudication process; and the effects of not providing all or any part of the requested information may delay the process, or result in an unfavorable decision or a reduced level of benefits.

I certify that the information given by me on and in connection with this form is true and correct to the best of my knowledge and belief. I am also fully aware that any person who willfully makes any false or misleading statement or representation for the purpose of obtaining any benefit or payment under this title shall be guilty of a misdemeanor and on conviction thereof shall be punished by a fine of not more than $1,000, or by imprisonment for not more than one year or both.

| Signature of claimant or person filing on his/her behalf | **JA 10** | Date 1-25-18 |
|---|---|---|

Apr 16 2019 02:34PM NCWVBLP 304-892-3953　　　　page 17

## PRESTON MEMORIAL HOSPITAL
### 300 S. Price Street
### Kingwood, WV 26537

### RADIOLOGY REPORT

| | | | |
|---|---|---|---|
| Patient Name: | BRAHAM JAMES A | Patient Number: | 10330703 |
| Patient Age: | 58 | Admitting Physician: | PHILLIPS P |
| Patient DOB: | ███████ | Ordering Physician: | PHILLIPS P |
| Patient Stay Type: | O/P | Medical Record #: | 033286 |
| Admit Date: | 10/01/13 | XRay Number: | 6115 |

CT THORAX W/WO CONTRAST　　　　COMPLETE:10/01/13 13:51 LBH 47240
(REASON FOR CHEST UPPER LUNG NODULES COPD
ER ONLY (Others answer NA) Pt Primary/Backup MD: NA

### ***Unsigned Transcriptions are preliminary reports and do not represent a Medical or Legal Document***

10/01/13 CT CHEST W/WO CONTRAST:

HISTORY: Upper lung nodules/chronic obstructive pulmonary disease.

There are subcentimeter subcarinal lymph nodes. There are multiple small pulmonary nodules seen measuring less then 5 mm throughout both lung zones. Some of these nodules are pleural based predominantly on the right. There is no evidence of pleural effusion or pneumothorax.

IMPRESSION·
Multiple tiny pulmonary nodules of unknown etiology. Recommendation is for three month follow-up CT scan. Please note these nodules are less then the sensitivity level for a PET CT scan. Correlate with clinical and laboratory data to exclude other infectious or secondary pulmonary etiologies.

Electronically reviewed and signed by:
**STEPHANY S SWART, MD**

Sign Date/Time: 10/02/13 11:37
DICT: 10/02/13 11:14 SS/rlc
Trans: 10/02/13 11:19
Trans Initials: RC

Copy for: PHILLIPS PEGGY　　　via fax
Copy for: PRESTON URGENT　　　via fax
Copy for: 800 HEALTH INFORMATION MANAGEMENT

10/25/13

## JA 11

12/09/2013  01:05    3048922927    PTCHC INC    PAGE  02/03



## SMITH RADIOLOGY, INC.

Henry K. Smith, D.O.
Sonja G. Schaffer, M.D.
*Board Certified Radiologist*

November 25, 2013

**Services**
X-ray/Fluoroscopy
Mammography
Ultrasound
Computed Tomography
Bone Densitometry
Certified "B" Reader

Lungs At Work
4000 Waterdam Plaza Drive, Suite 120
McMurray, PA 15317

Attn: Lynda Giagola, Program Director

**Locations**

1515 Bridge St.
New Cumberland,
PA 17070
717) 774-7351

RE:  BRAHAM, JAMES
SS#:  XXX-XX-
DOB:
DOS:  10/1/13

460 Rising Sun Rd.
Millersburg,
PA 17061
717) 892-3097

Dear Ms. Giagola:

CT THORAX W/ AND W/O CONTRAST

Multiple computed scans are performed with satisfactory technique employed including high resolution as well as thickness of sections and the intervals between body sections necessary for evaluation of CWP. There are noted small nodular opacities throughout the upper, mid and lower zones bilaterally. The HRCT appearance is consistent with that radiographic type-P pneumoconiosis characterized by tiny branching lines and ill-defined punctate opacities in a centrilobular location. Many of these small non-peripheral areas of low attenuation contain a central dot, which corresponds to irregular fibrosis around and long the respiratory bronchioles and dust macules with dilatation of respiratory bronchioles, findings which correspond to focal dust emphysema. These findings of focal emphysema are most commonly found in pneumoconiosis with P-type changes, consistent with coal-worker's pneumoconiosis. The overall size/involvement is primary p, secondary q in the upper mid and lower zones, profusion 1/2. There are several small benign appearing subpleural opacities of the lungs particularly in the right mid and lower lung laterally and posteriorly of size no greater than 5mm.

In summary, there are noted findings of simple coal-worker's pneumoconiosis with small opacities, primary p, secondary q, all zones including upper, mid and lower zones involved bilaterally, of a profusion of at least 1/2. No other large opacities, chest wall plaques or calcifications are seen. There are several small subpleural nodules no greater than 5mm in diameter in the lateral and posterior right mid to lower lung.

NOTE*** Although there are no specific guidelines for administering or interpreting a CT scan for evaluation of coal-worker's pneumoconiosis, for which reason is considered "other medical evidence." The consensus by the medical profession including myself as a board certified radiologist is that this procedure is a medically acceptable test for diagnosing the presence or absence of coal-workers pneumoconiosis, as well as grading the degree of involvement. High resolution CT (HRCT) has been found to be very useful in achieving an accurate characterization of the parenchymal changes with the spectrum of diseases referred to as pneumoconioses, and specifically CWP.









Continued

*12-9-13
Notified pt of
Results -
AL*

## JA 12



**SMITH RADIOLOGY, INC.**

Henry K. Smith, D.O.
Sonja G. Schaffer, M.D.
*Board Certified Radiologists*

Page 2

RE:   James Braham
DOS:  10/1/13

**Services**
X-ray/Fluoroscopy
Mammography
Ultrasound
Computed Tomography
Bone Densitometry
Certified "B" Reader

Regarding my specific use of CT as a diagnostic tool, this is a very common imaging modality utilized in my practice approximately 6-8 times daily, which I have been utilizing for the past 20-25 years in my medical practice both within hospitals and in my own private practice of Radiology.

My credentials include education, experience and ongoing training and reading of CT scans which are considered well above average. My Radiology office is fully accredited through the American College of Radiology in Computed Tomography.

I have been an approved NIOSH certified B-reader without interruption since August 1987. I have been a member of the American Osteopathic College of Radiology since I was first able to apply and became certified at the conclusion of my Radiology training July 1972.

If you have any further questions, please do not hesitate to contact me at my office.

**Locations**

1515 Bridge St.
New Cumberland,
PA 17070
(717) 774-7351

360 Rising Sun Rd.
Millersburg,
PA 17061
(717) 692-3997

*Henry K. Smith, D.O.*

Henry K. Smith, D.O.
AOBR Board Certified Radiologist/1975-Lifetime
NIOSH Certified B-reader/1987-2015

HKS/dg









**JA 13**

**Kathleen A. DePonte, M.D.**
Board Certified Diagnostic Radiology
NIOSH B Reader

**DIAGNOSTIC IMAGING ASSOCIATES, P.C.**
P.O. Box 408
Norton, Virginia 24273
Phone #: 276-679-2729    Fax #: 276-679-0578

**RADIOGRAPHIC STUDY REVIEW**          **DATE OF REPORT:** 7/05/2021

**PATIENT:** James A. Braham

**SSN:** XXX-XX███                          JUL 1 2 2021

**DATE OF BIRTH:** ████████

**DATE OF EXAM:** 10/01/2013

**FACILITY:** Preston Memorial Hospital

**CT OF THE THORAX WITH and WITHOUT INTRAVENOUS CONTRAST:**

**IMAGES:**
333 images were submitted on a disc. These consist of axial images with coronal reconstructions.
Slice thickness is 5 mm on the axial images and 4 mm on the reconstructions. Technical quality
is good though the lack of thin section images limits evaluation of fine interstitial abnormalities.
Examination is reviewed at a standard PACS workstation with medical grade monitors. Format
allows for windowing, leveling and electronic measurement.

**FINDINGS:**
The lung parenchyma shows interstitial nodularity in all lung zones predominating in the upper
lobes and superior segments of the lower lobes bilaterally. The nodules are mostly 2-3 mm in
diameter which would correspond with "q" type opacities. The highest profusion is in the right
upper lung zone with coalescence. The pattern is classic for simple coal workers'
pneumoconiosis.

In a region of coalescence, in the apical posterior segment of the right upper lobe, is 17 mm
peripheral large opacity consistent with a Category A large opacity of progressive massive
fibrosis and complicated coal workers' pneumoconiosis. The apical posterior segment is the
classic location of the most severe findings of coal workers' pneumoconiosis. This is attributed
to diminished lymph flow and therefore decreased clearance of dust particles in this segment of
the lung. There is also an 11 mm large opacity more centrally in the right lung apex, also in a
region of coalescence, as well as a peripheral 14 mm large opacity in the left lung apex.

No significant emphysema is seen. No pleural plaques or diffuse pleural thickening. No
mediastinal or hilar adenopathy. Heart and great vessels are unremarkable with only minimal
aortic plaque. Main pulmonary artery diameter is normal. Upper abdominal contents are
unremarkable.

**JA 14**

RE: James Braham
DOB: 2/10/1955
Date of Exam: 10/01/2013
Page 2

**IMPRESSION:**

1. Classic findings of simple coal worker's pneumoconiosis.

2. Progressive massive fibrosis indicating complicated coal workers' pneumoconiosis.

CT is medically acceptable for evaluation of pulmonary diseases. CT is beneficial in confirming or denying the presence of simple coal worker's pneumoconiosis and can be beneficial in recognizing simple and complicated coal worker's pneumoconiosis when it is not evident on the routine chest x-rays.

The large opacities would measure similar in size and greater than one centimeter on a standard chest radiograph (x-ray).

**Kathleen A. DePonte, M.D.**
**BOARD CERTIFIED DIAGNOSTIC RADIOLOGIST**
**NIOSH B READER**

**JA 15**

### ROBERT D. TARVER, M.D.
#### Board Certified Radiologist/B-Reader

**Manager: Nancy Hudson**
**E-mail: hudsonnr@outlook.com**

**Phone: (513) 825-0062**
**Fax: (513) 825-0325**

DATE:    August 19, 2021

TO:    Mr. William Mattingly
Jackson Kelly Law Firm
100 West Main Street, Suite 700
Lexington, KY 40507

**RE:    James Braham**
**SS# xxx-xx-████**

**CHEST CT SCAN:**
Supplier:    Preston Memorial Hospital
Date of Film:  10-01-13

CT FINDINGS: The chest CT was performed with contrast, of excellent technical quality.

Mediastinum/soft tissues: There is no mediastinal or hilar lymphadenopathy. There are no pericardial or pleural effusions. The upper portions of the abdomen are normal.

Lungs: There are small 1-2 mm nodules predominantly in the upper lobes. There are no large masses. There is minimal right apical scarring versus pseudoplaque.

IMPRESSION:

CT findings consistent with simple coal workers' pneumoconiosis.

Chest CT scan is more sensitive than chest xray for detection and characterization for pulmonary parenchymal abnormalities. CT may be useful in confirming or denying the presence of simple coal workers' pneumoconiosis, as well as documenting the presence of complicated coal workers' pneumoconiosis when not well demonstrated on routine chest xrays. This CT scan is of good quality, the interpretation of which is sufficient for evaluating the presence or absence of coal workers' pneumoconiosis.

I am a University Radiology Professor of chest radiology. I practice exclusively in pulmonary and emergency radiology. I interpret more than 30,000 radiographs of the chest per year, and 50-

August 19, 2021
Re: James Braham
CT scan 10-01-13
Page Two


100 chest CT scans per week for parenchymal lung disease. I am certified by the American Board of Radiology. I have given many national presentations on chest disease and have held the office of President of the Society of Thoracic Radiology. Please refer to my CV for further details of my credentials.


INTERPRETATION: _____

Robert D. Tarver, M.D.

**Kathleen A. DePonte, M.D.**
Board Certified Diagnostic Radiology
NIOSH B Reader

**DIAGNOSTIC IMAGING ASSOCIATES, P.C.**
P.O. Box 408
Norton, Virginia 24273
Phone #: 276-679-2729     Fax #: 276-679-0578

December 23, 2021

Mr. Leonard Stayton
P.O. Box 1386
Inez, KY 41224

RE: James Braham
     SSN: XXX-XX-████

Dear Mr. Stayton,

I have reviewed the chest CT images of Mr. Braham of 10/01/13, his chest radiograph of 3/27/2019 and my interpretations of those studies. I have also reviewed Dr. Tarver's interpretation of the chest CT of 10/01/2013.

Dr. Tarver and I agree that Mr. Braham has simple coal workers' pneumoconiosis.

Regarding the presence of complicated coal workers' pneumoconiosis, I have attached to this letter multiple images documenting the presence of large opacities of complicated coal workers' pneumoconiosis on both the chest radiograph as well as the CT scan of the chest. The large opacities are quite subtle on the chest radiograph due to underexposure of the radiographic image and location of the opacites in the right lung apex. The lung apices are the classic location of large opacities of complicated coal workers' pneumoconiosis however visualization can be limited due to the overlying bony structures of anterior and posterior ribs as well as the clavicle. Nonetheless, careful observation reveals the presence of at least one large opacity.

The CT scan is a more sensitive and specific exam for coal workers' pneumoconiosis, not only for the detection of small opacities but large opacities as well. In this case, the large opacites are more clearly visible as illustrated on the attached documents. Some of these opacities are peripheral and rest along the pleural surface but are clearly within the lung parenchyma and do not represent pleural plaques or non-specific pleural scarring which occurs higher in the lung apices. The 11 mm opacity is clearly separate from the pleura and within a region of coalescence, a classic location of progressive massive fibrosis. The slice thickness on the axial images is 5 mm which leads to partial volume averaging artifact and underestimation of the size of large opacities. This opacity would measure slightly larger with thinner section imaging, such as 1 mm thick images.

The course of the lymphatic channels is around the periphery of the pulmonary lobules, the functional unit of the lung, some of which rest along the pleura and therefore some of the large

**JA 18**

J Braham
12/23/2021
Page 2

opacities form peripherally, as in this case, adjacent to the pleura. The term pseudoplaque has been applied to these opacities as a descriptive term however, these are parenchymal opacities like those that occur more centrally. Thin-section images would likewise render these opacities more distinct and allow for easier recognition of their true location.

All of my opinions are expressed within a reasonable degree of medical certainty and are based on my decades of experience as a board-certified diagnostic radiologist and NIOSH Certified B reader practicing in the coal fields of southwest Virginia as well review of the medical literature.

I trust this will remove any doubt as to this miner's diagnosis. If you have any additional questions, please do not hesitate to contact me.

Sincerely yours,

Kathleen A. DePonte, M.D.

Attachments:  5 Images













**ROBERT D. TARVER, M.D.**
*Board Certified Radiologist/B-Reader*

Manager: Nancy Hudson
E-mail: hudsonnr@outlook.com

Phone: (513) 825-0062
Fax: (513) 825-0325

DATE:        February 1, 2022

TO:         Mr. William Mattingly
            Jackson Kelly Law Firm
            175 East Main Street, PO Box 2150
            Lexington, KY 40595-2150

RE:     **James Braham**
        **SS# xxx-xx**▮

**REBUTTAL REPORT:**

Supplier:       Preston Memorial Hospital        Preston Memorial Hospital
Date of Film:   03-27-19                          10-1-13
Film Type:      PA-Lat chest, digital             chest CT scan

As stated in my prior reports to you dated 8-19-21 regarding the above listed chest xray and CT scan, the patient has simple coal workers' pneumoconiosis. There is minimal right apical scarring versus pseudoplaque seen on CT.

I disagree with Dr. DePonte in that the opacities seen in the right apex are small peripheral pseudoplaques. Dr. DePonte described them as large opacities. We are in disagreement as to whether a pseudoplaque would qualify as a large opacity.

In summary, findings on the chest xray and CT scan show simple coal workers' pneumoconiosis. There is apical scarring/pseudoplaque in the right apex. There are no large opacities to suggest complicated coal workers' pneumoconiosis.

INTERPRETATION: _____
                         Robert D. Tarver, M.D.

Apr 16 2019 02:32PM NCWVBLP 304-892-3953      page 14

To: Preston Memorial Hospital GAINE      From: TeleRIS      2-21-17 10:55am p. 1 of 1

## Preston Memorial Hospital

NAME: BRAHAM, JAMES A    ADM #    MRN: 033286

SEX:M    AGE: 62     DATE OF BIRTH ▓▓▓▓      LOCATION: Outpatient

DATE OF EXAM: 2/21/2017 10:28:00 AM

ORDERING PHYSICIAN: MARY GAINER

REASON FOR EXAM: CHEST -PA&LAT "REASON FOR CHEST DYSPNEA

PROCEDURE: CHEST PA & LAT

2 view chest for dyspnea. No comparison.

Findings: The heart size is normal. There is a nodular interstitial pattern in the lung apices.
Differential considerations include granulomatous processes such as sarcoidosis or pneumoconiosis.
No focal infiltrates. No pleural effusions, pulmonary edema, or pneumothorax.

Impression: Nodular interstitial pattern in the lung apices acute process seen.

Dictated and Authenticated by: Garrett Stover, M.D. 2/21/2017 10:52:38 AM

CONFIDENTIALITY STATEMENT

This transmission is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential or protected health information which is exempt from disclosure under applicable laws. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this communication in error, please notify us by telephone and return the original message to us by US Postage or 700 Village Dr, Personal, NM 26666. Thank you.

## JA 27

**Radiologic Interpretation**

**U.S. DEPARTMENT OF LABOR**
OFFICE OF WORKERS' COMPENSATION PROGRAMS
DIVISION OF COAL MINE WORKERS' COMPENSATION

OMB No. 1240-0023
Expires 05/31/2017

Note: This report is authorized by law (30 USC 901 et. seq.) and required to obtain a benefit. The results of this interpretation will aid in determining the miner's eligibility for black lung benefits. Disclosure of a Social Security number for black lung benefits is voluntary. The failure to disclose such number will not result in the denial of any right, benefit, or privilege to which the claimant may be entitled. This method of collecting information complies with the Freedom of Information Act, the Privacy Act of 1974, and OMB Circular No. 108.

Please record your interpretation of a single image by placing "X" in the appropriate boxes on the form and return it promptly to the office that requested the interpretation. The form must be completed as per instructions, signed by a physician, and contain the miner's name, and social security number. The Department of Labor will pay only for images of acceptable quality (1, 2 and 3). Images of inferior quality (U/R) must be retaken without cost to the Department.

| 1. Miner's Name (Print) | 1A. Date of X-Ray | | | 1B. Miner's Social Security Number | 1C. Image Quality (if not Grade 1, Give Reason:) |
|---|---|---|---|---|---|
| **James Allen Braham** | 05 / 15 / 2018 (MO / DAY / YR) | | | **PA XXX-XX-1499 LM C** Case ID: 2BXXR-2018038 | 1  2  3  U/R   *underexposed* |

**1D. Is Image Completely Negative?**
YES ☐ Proceed to Section 5    NO ☒ Complete Section 2A

**2A. Any Parenchymal Abnormalities Consistent with Pneumoconiosis?**
YES ☒ Complete 2B and 2C    NO ☐ Proceed to Section 3

**2B. Small Opacities Consistent With Pneumoconiosis**

a. SHAPE/SIZE

| PRIMARY | SECONDARY |
|---|---|
| p  s | p  s |
| t | t |
| r  u | r  u |

b. ZONES

☒ (R / L)

c. PROFUSION

| 0/- | 0/0 | 0/1 |
| 1/0 | 1/1 | 1/2 |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3/+ |

**2C. Large Opacities Consistent with Pneumoconiosis**
O ☒ A  B  C   SIZE   Proceed to Section 3

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**
YES ☐ Complete Sections 3B, 3C    NO ☒ Proceed to Section 4A

**3B. PLEURAL PLAQUES** (mark site, calcification, extent and width)

| Chest Wall | Site | Calcification |
|---|---|---|
| In Profile | O  R  L | O  R  L |
| Face On | O  R  L | O  R  L |
| Diaphragm | O  R  L | O  R  L |
| Other site(s) | O  R  L | O  R  L |

Extent (chest wall; combined for in profile and face on)
Up to 1/4 of lateral chest wall = 1
1/4 to 1/2 of lateral chest wall = 2
> 1/2 of lateral chest wall = 3

| O  R | O  L |
| 1  2  3 | 1  2  3 |

Width (in profile only) (3m minimum width required)
3 to 5 mm = a
5 to 10 mm = b
> 10 mm = c

| O  R | O  L |
| a  b  c | a  b  c |

**3C. COSTOPHRENIC ANGLE OBLITERATION**
R  L   Proceed to 3D    NO ☐ Proceed to Section 4A

**3D. DIFFUSE PLEURAL THICKENING** (mark site, calcification, extent, and width)

| Chest wall | Site | Calcification |
|---|---|---|
| In Profile | O  R  L | O  R  L |
| Face On | O  R  L | O  R  L |

Extent (chest wall, combined for in profile and face on)
Up to 1/4 of lateral chest wall = 1
1/4 to 1/2 of lateral chest wall = 2
> 1/2 of lateral chest wall = 3

| O  R | O  L |
| 1  2  3 | 1  2  3 |

Width (in profile only) (3m minimum width required)
3 to 5 mm = a
5 to 10 mm = b
> 10 mm = c

| O  R | O  L |
| a  b  c | a  b  c |

**4A. ANY OTHER ABNORMALITIES?**
YES ☒ Complete 4B and 4C    NO ☐ Proceed to Section 5

**4B. OTHER SYMBOLS (OBLIGATORY)**
☒ aa  at  bu  ca ☒ co  cp  cv  di  ef  em  es  fr ☒ ho  id  ih  kl  me  pa  pb  pi  px  ra  rp  tb

REPORT ITEMS WHICH MAY BE OF PRESENT CLINICAL SIGNIFICANCE IN THIS SECTION
od   (Specify od.)   Date Personal Physician notified?   M  o.  D  ay  Y  r.

**4C. OTHER COMMENTS**
*at least 17mm Category A opacity right lung apex. 16mm nodule that appears over left 5th anterior rib — recommend pleuroscopy or chest CT to evaluate malignancy.*

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C? YES ☒ NO ☐ Proceed to Section 5

**5A. FACILITY PROVIDING RADIOLOGIC EXAMINATION:**
DOL Medical Provider Number (if applicable): *Washington Hosp. VA Potsdam*
Was image taken by a registered radiographer/radiographic technologist? ☐ Yes ☐ No
Name _____ Registration No. _____ State _____

**5B. Radiologist Interpreting Image (Print Name):** **Kathleen A. DePonte, M.D.**

Are you: Board-Certified Radiologist? ☒ Yes ☐ No   Board-eligible radiologist? ☐ Yes ☐ No   B-reader? ☒ Yes ☐ No   Date Current B-reader Certification Expires: *06/30/21*

**5C.** I certify that this image has been interpreted in accordance with the instructions provided on Form CM-954a and/or 20 CFR 718, Subpart B, 718.102 and Appendix A. I also certify that the information furnished is correct and am aware that my signature attests to the accuracy of the results reported. I am aware that any person who willfully makes any false or misleading statements or representation in support of an application for benefits under Title 30 USC 941 shall be guilty of a misdemeanor and subject to a fine of up to $1,000, or to imprisonment for up to one year, or both.

PHYSICIAN'S SIGNATURE _____ DATE OF READING *5-31-18* (Mo., Day, Yr.)

Form CM-933 (Rev. 2014)

**JA 28**

Case No: 2BXXR-2018038     Rec'd Date: 02/22/2018
Exhibit : 32     Page No: 11 of 31     Rec'd Date: 09/20/2018, Sub. Date: 09/20/2018



RECEIVED
MAR 13 2019

---

**ROBERT D. TARVER, M.D.**
**Board Certified Radiologist/B-Reader**

*Manager: Nancy Hudson*
*E-mail: hudsonnr@outlook.com*

*Phone: (513) 825-0062*
*Fax: (513) 825-0325*

---

DATE:     March 8, 2019

TO:       Mr. William Mattingly
          Jackson Kelly Law Firm
          175 East Main Street, PO Box 2150
          Lexington, KY 40595-2150

RE:       **James Braham**
          **SS# xxx-xx**

Supplier:     Washington Health System
Date of Film: 05-15-18
Film Type:    PA chest, digital
Quality:      1

FINDINGS:    There are "q/q" small opacities involving all lung zones at a profusion of 1/1. There are no large opacities. There are no pleural abnormalities. The heart size is normal.

IMPRESSION:

Radiographic findings consistent with simple coal worker's pneumoconiosis.

This x-ray was interpreted in compliance with 20 C.F.R. § 718.102 as amended.

INTERPRETATION: _____

                        Robert D. Tarver, M.D.

PA

| | | | | | | |
|---|---|---|---|---|---|---|
| 0 | 5 | | 1 | 5 | 20 | 18 |

DATE OF RADIOGRAPH — MONTH / DAY / YEAR

**RADIOGRAPHIC INTERPRETATION (B READING)**

PATIENT NAME: James Braham

FACILITY: Washington Health System

WORKER'S Social Security Number

**1. FILM QUALITY**
- [ ] Overexposed (dark)
- [ ] Improper position
- [ ] Underinflation
- [ ] Underexposed (light)
- [ ] Poor contrast
- [ ] Mottle
- [ ] Artifacts
- [ ] Poor processing
- [ ] Other (please specify)

Film Quality (1 2 3 UR)
(first Grade 1 only if
non-acceptable)

**2A. ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**
YES [✓]   NO [ ] → Proceed to Section 3A
Complete Sections 2B and 2C

**2B. SMALL OPACITIES**

SHAPE/SIZE
PRIMARY: p/s, q/t, r/u
SECONDARY: p/s, q/t, r/u

ZONES: R L
UPPER
MIDDLE
LOWER

PROFUSION:
0/- 0/0 0/1
1/0 1/1 1/2
2/1 2/2 2/3
3/2 3/3 3/+

**2C. LARGE OPACITIES**
SIZE: 0 A B C → Proceed to Section 3A

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**
YES [ ]   NO [✓] → Proceed to Section 4A
Complete Sections 3B, 3C

**3B. PLEURAL PLAQUES** (include calcification, extent and width)

| Chest wall | Site | Calcification | Extent | Width (in profile only) |
|---|---|---|---|---|
| In profile | O R L | O R L | Up to 1/4 of lateral chest wall = 1 | 3 to 5 mm = a |
| Face on | O R L | O R L | 1/4 to 1/2 of lateral chest wall = 2 | 5 to 10 mm = b |
| Diaphragm | O R L | O R L | > 1/2 of lateral chest wall = 3 | > 10 mm = c |
| Other (site) | O R L | O R L | | |

**3C. COSTOPHRENIC ANGLE OBLITERATION**   R L → Section 3D   NO [ ] → Proceed to Section 4A

**3D. DIFFUSE PLEURAL THICKENING** (include calcification, extent, and width)

**4A. ANY OTHER ABNORMALITIES?**   YES [ ]   NO [✓] → Proceed to Section 5
Complete Sections 4B, 4C, 4D, 4E

**4B. OTHER SYMBOLS (OBLIGATORY)**

[ ] OD   If other disease or significant abnormalities, findings must be recorded (section 4C/4D)

Date Physician or Worker notified? MONTH / DAY / YEAR

**4E. Should worker see personal physician because of findings in section 4?**  YES [ ]   NO [ ]
Proceed to Section 5

**4C. MARK ALL BOXES THAT APPLY**

Abnormalities of Diaphragm
- [ ] Eventration
- [ ] Hiatal hernia

Lung Parenchymal Abnormalities
- [ ] Azygos lobe
- [ ] Density, lung
- [ ] Infiltrate
- [ ] Nodule, nodular lesion

Airway Disorders
- [ ] Bronchovascular markings, heavy or increased
- [ ] Hyperinflation

Miscellaneous Abnormalities
- [ ] Foreign body
- [ ] Postsurgical changes/staple and wire
- [ ] Cyst

Bony Abnormalities
- [ ] Bony chest cage abnormality
- [ ] Fracture, healed (non-rib)
- [ ] Fracture, not healed (non-rib)
- [ ] Scoliosis
- [ ] Vertebral column abnormality

Vascular Disorders
- [ ] Aorta, anomaly of
- [ ] Vascular abnormality

**4D. Other**

**5. FILM READER'S INITIALS**

| R | D | T |
|---|---|---|

Robert D. Tarver, M.D.

DATE OF READING
Mo 3 / Day 0 / Yr

**JA 30**

May 02 2019 4:54PM    HP LASERJET FAX      9804292140      p.2

**Roentgenographic Interpretation**

**U.S. DEPARTMENT OF LABOR**
EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
DIVISION OF COAL MINE WORKERS' COMPENSATION

OMB No. 1215-0090
Expires 08/31/2011

Note: This report is authorized by law (30 USC 901 et. seq.) and required to obtain a benefit. The results of this interpretation will aid in determining the miner's eligibility for black lung benefits. Disclosure of a Social Security number is voluntary. The failure to disclose such number will not result in the denial of any right, benefit, or privilege to which the claimant may be entitled. This method of collecting information complies with the Freedom of Information Act, the Privacy Act of 1974, and OMB Circular No. 108.

Please record your interpretation of a single film by placing "X" in the appropriate boxes on the form and return it promptly to the office that requested the interpretation. The form must be completed as per instructions, signed by a physician, and contain the miner's name and social security number. The Department of Labor will pay only for films of acceptable quality (1, 2 and 3). Films of inferior quality (U/R) must be retaken without cost to the Department.

| 1. Miner's Name (Print) | 1A. Date of X-Ray | 1B. Miner's Social Security Number | 1C. Film Quality (If not Grade 1, Give Reason) |
|---|---|---|---|
| **James Allen Braham** | 05 MO.   15 DAY   2018 YR | XXX-XX-▆▆▆ | ☒ 1   2   3   U/R    DIGITAL |

**1D. Is Film Completely Negative?**    YES ☐ Proceed to Section 5   NO ☒   Complete Section 2A

**2A. Any Parenchymal Abnormalities Consistent with Pneumoconiosis?**    YES ☒ Complete 2B and 2C    NO ☐ Proceed to Section 3

**2B. Small Opacities Consistent With Pneumoconiosis**

a. SHAPE/SIZE

| PRIMARY | | SECONDARY | |
|---|---|---|---|
| ☒ | p | ☐ | s |
| q | t | ☐ | t |
| r | u | ☐ | u |

b. ZONES

|   | R | L |
|---|---|---|
| | ☒ | ☒ |
| | ☒ | ☒ |
| | ☒ | ☒ |

c. PROFUSION

| 0/- | 0/0 | 0/1 |
|---|---|---|
| 1/0 | 1/1 | ☒ |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3/+ |

**2C. Large Opacities Consistent With Pneumoconiosis**

SIZE   O ☒ B   C    Proceed to Section 3

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**    YES ☐ Complete Sections 3B, 3C    NO ☒ Proceed to Section 4A

**3B. PLEURAL PLAQUES** (mark site, calcification, extent and width)

| Chest Wall | Site | Calcification | Extent (chest wall; combined for in profile and face on) | Width (in profile only) (3m minimum width required) |
|---|---|---|---|---|
| In Profile | O R L | O R L | Up to 1/4 of lateral chest wall = 1 | 3 to 5 mm = a |
| Face On | O R L | O R L | Up to 1/2 of lateral chest wall = 2 | 5 to 10 mm = b |
| Diaphragm | O R L | O R L | > 1/2 of lateral chest wall = 3 | > 10 mm = c |
| Other site(s) | O R L | O R L | O L   1 2 3 | O L   a b c |

**3C. COSTOPHRENIC ANGLE OBLITERATION**    R L ☐ Proceed to Section 3D    NO ☐ Proceed to Section 4A

**3D. DIFFUSE PLEURAL THICKENING** (mark site, calcification, extent, and width)

| Chest wall | Site | Calcification | Extent (chest wall, combined for in profile and face on) | Width (in profile only) (3m minimum width required) |
|---|---|---|---|---|
| In Profile | O R L | O R L | Up to 1/4 of lateral chest wall = 1 | 3 to 5 mm = a |
| Face On | O R L | O R L | Up to 1/2 of lateral chest wall = 2 | 5 to 10 mm = b |
| | | | > 1/2 of lateral chest wall = 3 | > 10 mm = c |
| | | | O L   1 2 3 | O L   a b c |

**4A. ANY OTHER ABNORMALITIES?**    YES ☒ Complete 4B and 4C    NO ☐ Proceed to Section 5

**4B. OTHER SYMBOLS (OBLIGATORY)**

aa   at   ax   bu   ca   cg   cn   co   cp   cv   di   ef   em   es   fr   hi   ho   id   ih   kl   me   pa   pb   pi   px   ra   rp   tb

REPORT ITEMS WHICH MAY BE OF PRESENT CLINICAL SIGNIFICANCE IN THIS SECTION    OD (Specify od.)    Date Personal Physician notified?    M   C   D    ay   Y   r.

**4C. OTHER COMMENTS**   Area of coalescence in the right upper zone. Mild aortic atherosclerotic vascular disease. Mild thoracic spine scoliosis with degenerative changes. In the right upper zone in the 1st anterior rib interspace there is an opacity measuring approximately 12 x 5mm. This is located above the area of coalescence, and would be consistent with category A complicated Coal Workers' Pneumoconiosis.

**SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C?**    YES ☒   NO ☐ Proceed to Section 5

| 5A. FACILITY PROVIDING ROENTGENOGRAPHIC EXAMINATION:   Washington Health Systems | US DOL X-RAY |
|---|---|
| DOL Medical Provider Number (if applicable): | |
| Was film taken by a registered radiographer/radiographic technologist? ☐ Yes ☐ No | PA |
| Name | State |
| | Registration No. |

**5B. Physician Interpreting Film (Print Name):** Michael S. Alexander, MD

**5C.** Are you: Board-Certified Radiologist? ☒ Yes ☐ No.    Board-eligible radiologist? ☐ Yes ☐ No.    B-reader? ☒ Yes ☐ No

I certify that this film has been interpreted in accordance with the instructions provided on Form CM-954a and/or 20 CFR 718, Subpart B, 718.102 and Appendix A. I also certify that the information furnished is correct and am aware that my signature attests to the accuracy of the results reported. I am aware that any person who willfully makes any false or misleading statements or representation in support of an application for benefits under Title 30 USC 941 shall be guilty of a misdemeanor and subject to a fine of up to $1,000, or to imprisonment for up to one year, or both.

PHYSICIAN'S SIGNATURE _*Michael S. Alexander, M.D.*_    DATE OF READING ___05/02/19___ (Mo., Day, Yr.)

**Public Burden Statement**
We estimate that it will take an average of 5 minutes to complete this information collection, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the information. If you have any comments regarding these estimates or any other aspect of this survey, including suggestions for reducing this burden, send them to the Division of Coal Mine Workers' Compensation, U. S. Department of Labor, Room N-3464, 200 Constitution Avenue, N.W., Washington, D.C. 20210.
**DO NOT SEND THE COMPLETED FORM TO THIS OFFICE**
NOTE: Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

Form CM-933
Rev. June 2008

**JA 31**

## ROBERT D. TARVER, M.D.
### Board Certified Radiologist/B-Reader

**Manager: Nancy Hudson**
**E-mail: hudsonnr@outlook.com**

**Phone: (513) 825-0062**
**Fax: (513) 825-0325**

DATE:        August 19, 2021

TO:          Mr. William Mattingly
             Jackson Kelly Law Firm
             175 East Main Street, PO Box 2150
             Lexington, KY 40595-2150

**RE:        James Braham**
**           SS# xxx-xx-**████

Supplier:      Preston Memorial Hospital
Date of Film:  03-27-19
Film Type:     PA-Lat chest, digital
Quality:       1

FINDINGS:    There are "q/q" small opacities involving all lung zones at a profusion of 1/1.
There are no large opacities. There are no pleural abnormalities. The heart size is normal.  There
is aortic calcification.

IMPRESSION:

Radiographic findings consistent with simple coal workers' pneumoconiosis.

This x-ray was interpreted in compliance with 20 C.F.R. § 718.102 as amended.


INTERPRETATION:  _____
                         Robert D. Tarver, M.D.


**JA 32**                                    **EX 6, pg. 001**

PA-LAT

**CHEST RADIOGRAPH CLASSIFICATION FORM (B-reading)**

DATE OF RADIOGRAPH
Month: 03   Day: 27   Year: 2019

Worker's Social Security Number: - - - - -

Patient Name: James Braham

Facility: Preston mem Hosp

**1. IMAGE QUALITY**   ☑1 2 3   UR
- ☐ Over-exposed
- ☐ Under-exposed
- ☐ Artifacts
- ☐ Improper position
- ☐ Poor contrast
- ☐ Poor processing
- ☐ Under-inflation
- ☐ Mottle
- ☐ Excessive edge enhancement
- ☐ Scapula overlay
- ☐ Other (please specify)

**2A. ANY CLASSIFIABLE PARENCHYMAL ABNORMALITIES?**   ☑ YES (Complete sections 2B & 2C)   ☐ NO (Proceed to 3A)

**2B. SMALL OPACITIES**

a. Shape/Size

| Primary | Secondary |
|---|---|
| p s / t r u | p s / t r u |

b. Zones (R/L): Upper, Middle, Lower

c. Profusion

| | | |
|---|---|---|
| 0/- | 0/0 | 0/1 |
| 1/0 | ☒1/1 | 1/2 |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3/4 |

**2C. LARGE OPACITIES**

Size: ☒ A B C

(proceed to section 3A)

**3A. ANY CLASSIFIABLE PLEURAL ABNORMALITIES?**   ☐ YES (Complete sections 3B & 3C)   ☑ NO (Proceed to 4A)

**3B. PLEURAL PLAQUES** *(mark site, calcification, extent, and width)*

| | Site | Calcification | Extent (chest wall; combined for in profile and face on) Up to 1/4 of lateral chest wall = 1; 1/4 to 1/2 of lateral chest wall = 2; >1/2 of lateral chest wall = 3 | Width (in profile only) (3mm minimum width required) 3 to 5 mm = a; 5 to 10 mm = b; >10 mm = c |
|---|---|---|---|---|
| In profile | O R L | O R L | | |
| Face on | O R L | O R L | | |
| Diaphragm | O R L | O R L | O R   O L | O R   O L |
| Other site(s) | O R L | O R L | 1 2 3   1 2 3 | a b c   a b c |

**3C. COSTOPHRENIC ANGLE OBLITERATION**   R L Proceed to Section 3D   NO [ ] Proceed to Section 4A

**3D. DIFFUSE PLEURAL THICKENING** *(mark site, calcification, extent, and width)*

| | Site | Calcification | Extent (chest wall; combined for in profile and face on) Up to 1/4 of lateral chest wall = 1; 1/4 to 1/2 of lateral chest wall = 2; >1/2 of lateral chest wall = 3 | Width (in profile only) (3mm minimum width required) 3 to 5 mm = a; 5 to 10 mm = b; >10 mm = c |
|---|---|---|---|---|
| In profile | O R L | O R L | O R   O L | O R   O L |
| Face on | O R L | O R L | 1 2 3   1 2 3 | a b c   a b c |

**4A. ANY OTHER ABNORMALITIES?**   YES ☑ (complete sec 4B-E & 5)   NO ☐ (complete sec 5)

**4B. OTHER SYMBOLS** (obligatory)

| aa | at | ax | bu | ca | cg | cn | co | cp | cv | di | ef | em | es | fr | hi | ho | id | ih | kl | me | pa | pb | pi | px | ra | rp | tb |
|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|

☑ OD- Check box for other disease. (If other disease or significant abnormalities, findings must be recorded in section 4C/4D.)

**4E. Should worker see personal physician because of findings in section 4?**   YES ☐   NO ☑   Date physician notified:

**4C. MARK ALL BOXES THAT APPLY**

*Abnormalities of the Diaphragm*
- ☐ Eventration
- ☐ Hiatal hernia

*Lung Parenchymal Abnormalities*
- ☐ Azygos lobe
- ☐ Density, lung
- ☐ Infiltrate
- ☐ Nodule, nodular lesion

4D. Other _____ CWP

*Airway Disorders*
- ☐ Bronchovascular markings (heavy or increased)
- ☐ Hyperinflation

*Miscellaneous Abnormalities*
- ☐ Foreign body
- ☐ Post-surgical changes/sternal wire
- ☐ Cyst

*Bony Abnormalities*
- ☐ Bony chest cage abnormality
- ☐ Fracture, healed (non-rib)
- ☐ Fracture, not healed (non-rib)
- ☐ Scoliosis
- ☐ Vertebral column abnormality

*Vascular Disorders*
- ☐ Acute, anomaly of
- ☐ Vascular abnormality

**5. READER'S INITIALS**   R D T

ROBERT D. TARVER, M.D.
Reader's ID#3179

DATE OF READING: 8/9/21

JA 33      EX 6, pg. 002

RECEIVED MAY 5, 2021-WSM

Radiologic Interpretation



**U.S. DEPARTMENT OF LABOR**
OFFICE OF WORKERS' COMPENSATION PROGRAMS
DIVISION OF COAL MINE WORKERS' COMPENSATION

OMB No. 1240-0023
Expires 12-31-2023

**Note:** This report is authorized by law (30 USC 901 et. seq. and 20 CFR 718.102). The results of this interpretation will aid in determining the claimant's eligibility for black lung benefits. This method of collecting information complies with the Freedom of Information Act, the Privacy Act of 1974, and OMB Circular No. 108.

Please record your interpretation of a single image by placing "X" in the appropriate boxes on the form and return it promptly to the office that requested the interpretation. The form must be completed as per instructions: signed by a physician, and contain the miner's name and DOL's Case ID Number. The Department of Labor will pay only for images of acceptable quality (1, 2 and 3). Images of inferior quality (U/R) must be retaken without cost to the Department.

| 1. Miner's Name (Print) | 1A. Date of X-Ray | 1B. DOL's Case ID Number | 1C. Image Quality (if not Grade 1. Give Reason:) |
|---|---|---|---|
| **James Allen Braham** | 04 / 09 / 2019 MO DAY YR | XXX-XX | 1 [X] 3 U/R |

1D. Is Image Completely Negative? YES   Proceed to NO [X] Complete Section 2A

2A. Any Parenchymal Abnormalities Consistent With Pneumoconiosis? YES [X] Complete 2B and 2C   NO   Proceed to Section 3

**2B. Small Opacities Consistent With Pneumoconiosis**

a. SHAPE/SIZE

| PRIMARY | SECONDARY |
|---|---|
| p   s | p   s |
| [X] t | q   t |
| r   u | [X] u |

b. ZONES
| | |
|---|---|
| X | X |
| X | X |
| X | X |
| R | L |

c. PROFUSION

| 0/- | 0/0 | 0/1 |
|---|---|---|
| 1/0 | 1/1 | 1/2 |
| 2/1 | [X] 2/2 | 2/3 |
| 3/2 | 3/3 | 3/+ |

2C. Large Opacities Consistent With Pneumoconiosis

SIZE | [X] | A | B | C | Proceed to Section 3

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?** YES [ ] Complete Sections 3B, 3C   NO [X] Proceed to Section 4A

**3B. PLEURAL PLAQUES** (mark site, calcification, extent and width)

| Chest Wall | Site | Calcification | Extent (chest wall; combined for in profile and face on) Up to 1/4 of lateral chest wall = 1 1/4 to 1/2 of lateral chest wall = 2 > 1/2 of lateral chest wall = 3 | Width (in profile only) (3mm minimum width required) 3 to 5 mm = a 5 to 10 mm = b > 10 mm = c |
|---|---|---|---|---|
| In Profile | O R L | O R L | | |
| Face On | O R L | O R L | | |
| Diaphragm | O R L | O R L | O R   O L | O R   O L |
| Other site(s) | O R L | O R L | 1 2 3   1 2 3 | a b c   a b c |

**3C. COSTOPHRENIC ANGLE OBLITERATION**   R L Proceed to Section 3D   NO [ ] Proceed to Section 4A

**3D. DIFFUSE PLEURAL THICKENING** (mark site, calcification, extent, and width)

| Chest wall | Site | Calcification | Extent (chest wall, combined for in profile and face on) Up to 1/4 of lateral chest wall = 1 1/4 to 1/2 of lateral chest wall = 2 > 1/2 of lateral chest wall = 3 | Width (in profile only) (3mm minimum width required) 3 to 5 mm = a 5 to 10 mm = b > 10 mm = c |
|---|---|---|---|---|
| In Profile | O R L | O R L | O R   O L | O R   O L |
| Face On | O R L | O R L | 1 2 3   1 2 3 | a b c   a b c |

**4A. ANY OTHER ABNORMALITIES?** YES [X] Complete 4B and 4C   NO [ ] Proceed to Section 5

**4B. OTHER SYMBOLS (OBLIGATORY)**

aa   at   ax   bu   ca   cg   cn   co   cp   cv   di   ef   em   es   fr   hi   ho   id   ih   kl   me   pa   pb   pi   px   ra   rp   tb

REPORT ITEMS WHICH MAY BE OF PRESENT CLINICAL SIGNIFICANCE IN THIS SECTION   [ ] - (Specify cd.)   Date Personal Physician notified?   M M D D Y Y

**4C   OTHER COMMENTS** _____

The digital image on which this classification is based has been viewed in compliance with the requirements set forth in 20 CFR sect. 718 app. A(d) at 13-17 (2014

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C?   YES [ ] NO [ ] Proceed to Section 5

**5A. FACILITY PROVIDING RADIOLOGIC EXAMINATION:**   St. Clair Memorial Hospital
DOL Medical Provider Number (if applicable): _____
Was image taken by a registered radiographer/radiographic technologist?   [ ] Yes   [ ] No
Name _____   Registration No. _____   State _____

**5B.** Physician Interpreting Image (Print Name):   Kim A. Adcock, MD NIOSH B Reader # 4524

Are you: Board-certified radiologist? [X] Yes [ ] No   Board-eligible radiologist? [ ] Yes [X] No   B-reader? [X] Yes [ ] No   Date Current B-reader Certification Expires: 05/31/22

**5C.** I certify that this image has been interpreted in accordance with the instructions provided on Form CM-954a and/or 20 CFR 718, Subpart B, 718.102 and Appendix A. I also certify that the information furnished is correct and am aware that if my signature attests to the accuracy of the results reported. I am aware that any person who willfully makes any false or misleading statement or representation in support of an application for benefits shall be guilty of a misdemeanor under 30 USC 941 and, on conviction, subject to a fine of up to $1,000, or to imprisonment for up to one year, or both.

PHYSICIAN'S SIGNATURE _____   DATE OF READING   04/26/2021

(Last, First, M.I.)

**PATIENT NAME:** BRAHAM, JAMES

# Gregory J. Fino, M.D.

1000 Bower Hill Rd. Suite 211
Pittsburgh, PA   15243

**Date of Birth:** ▮▮▮▮▮

**Patient ID Number:** 473709

Radiograph Interpretation Form

**Date of Radiograph:** 4/ 9/2019

Note: Please record your interpretation of a single radiograph by placing an "x" in the appropriate boxes on this form. Classify all appearances described in the ILO International Classification of Radiographs of Pneumoconiosis or Illustrated by the ILO Standard Radiographs. Use symbols and record comments as appropriate.

## 1. IMAGE QUALITY

☒ [2] [3] [U/R]
(If not Grade 1, mark all boxes that apply)

☐ Overexposed (dark)   ☐ Improper position   ☐ Underinflation
☐ Underexposed (light)   ☐ Poor contrast   ☐ Mottle
☐ Artifacts   ☐ Poor processing   ☐ Other (please specify)

## 2A. ANY CLASSIFIABLE PARENCHYMAL ABNORMALITIES?

YES ☒   Complete Sections 2B and 2C   NO ☐   Proceed to Section 3A

## 2B. SMALL OPACITIES

**a. SHAPE/SIZE**
PRIMARY: ☒ P  ☐ S   ☐ r  ☐ u
SECONDARY: ☒ P  ☐ S   ☐ r  ☐ u
(t marked)

**b. ZONES**     R   L
UPPER   ☒   ☒
MIDDLE   ☒   ☒
LOWER   ☐   ☐

**c. PROFUSION**
[0/-] [0/0] [0/1]
[☒ 1/0] [1/1] [1/2]
[2/1] [2/2] [2/3]
[3/2] [3/3] [3/+]

## 2C. LARGE OPACITIES

SIZE  ☒  ☐ A  ☐ B  ☐ C

Proceed to Section 3A

## 3A. ANY CLASSIFIABLE PLEURAL ABNORMALITIES?

YES ☐   Complete Sections 3B, 3C   NO ☒   Proceed to Section 4A

## 3B. PLEURAL PLAQUES  *(mark site, calcification, extent, and width)*

| Chest wall | Site | Calcification | Extent (chest wall; combined for in profile and face on) | Width (in profile only) (3mm minimum width required) |
|---|---|---|---|---|
| In profile | O R L | O R L | Up to 1/4 of lateral wall = 1 | 3 to 5 mm = a |
| Face on | O R L | O R L | 1/4 to 1/2 of lateral wall = 2 | 5 to 10 mm = b |
| Diaphragm | O R L | O R L | > 1/2 of lateral wall = 3 | > 10 mm = c |
| Other site(s) | O R L | O R L | O R   O L   [1][2][3] [1][2][3] | O R   O L   a b c   a b c |

## 3C. COSTOPHRENIC ANGLE OBLITERATION

R L   Proceed to Section 3D   NO ☐   Proceed to Section 4A

## 3D. DIFFUSE PLEURAL THICKENING  *(mark site, calcification, extent, and width)*

| Chest wall | Site | Calcification | Extent (chest wall; combined for in profile and face on) | Width (in profile only) (3mm minimum width required) |
|---|---|---|---|---|
| In profile | O R L | O R L | Up to 1/4 of lateral chest wall = 1 | 3 to 5 mm = a |
| Face on | O R L | O R L | 1/4 to 1/2 of lateral chest wall = 2 | 5 to 10 mm = b |
| | | | > 1/2 of lateral chest wall = 3 | > 10 mm = c |
| | | | O R   O L   [1][2][3] [1][2][3] | O R   O L   a b c   a b c |

## 4A. ANY OTHER ABNORMALITIES?

YES ☒   Complete Sections 4B, 4C, 4D, 4E   NO ☐   Proceed to Section 5

## 4B. OTHER SYMBOLS (OBLIGATORY)

aa ☒at bu ca cg en co cp cv di ef em es fr hi ho id ih kl me pa pb pi px ra rp tb

☐ OD   If other diseases or significant abnormalities (OD), findings must be recorded on reverse. (section 4C/4D)
(See reverse for other symbol definitions.)

Date Physician or Worker notified? (mm-dd-yyyy)

## 4E. Should worker see personal physician because of findings in section 4?

YES ☐   NO ☒   [ ]-[ ]-[ ]
Proceed to Section 5

### 4B. Other Symbol Definitions

Each of the following definition of symbols assumes an introductory qualifying word or phrase such as "changes indicative of" or "opacities suggestive of", or "suspect."

| | | | |
|---|---|---|---|
| aa | atherosclerotic aorta | hi | enlargement of non-calcified hilar or mediastinal lymph nodes |
| at | significant apical pleural thickening | ho | honeycomb lung |
| ax | coalescence of small opacities - with margins of the small opacities remaining visible, whereas a large opacity demonstrates a homogenous opaque appearance - may be recorded either in the presence or in the absence of large opacities | id | ill-defined diaphragm border - should be recorded only if more than one-third of one hemidiaphragm is affected |
| bu | bulla(e) | ih | ill-defined heart border - should be recorded only if the length of the heart border affected, whether on the right or on the left side, is more than one-third of the length of the left heart border |
| ca | cancer, thoracic malignancies excluding mesothelioma | kl | septal (Kerley) lines |
| cg | calcified non-pneumoconiotic nodules (e.g. granuloma) or nodes | me | mesothelioma |
| cn | calcification in small pneumoconiotic opacities | pa | plate atelectasis |
| co | abnormality of cardiac size or shape | pb | parenchymal bands - significant parenchymal fibrotic strands in continuity with the pleura |
| cp | cor pulmonale | | |
| cv | cavity | pi | pleural thickening of an interlobar fissure |
| di | marked distortion of an intrathoracic structure | px | pneumothorax |
| ef | pleural effusion | ra | rounded atelectasis |
| em | emphysema | rp | rheumatoid pneumoconiosis |
| es | eggshell calcification of hilar or mediastinal lymph nodes | tb | tuberculosis |
| fr | fractured rib(s) (acute or healed) | | |

### 4C. MARK ALL BOXES THAT APPLY: (Use of this list is intended to reduce handwritten comments and is optional)

**Abnormalities of the Diaphragm**
- ☐ Eventration
- ☐ Hiatal hernia

**Airway Disorders**
- ☐ Bronchovascular markings, heavy or increased
- ☐ Hyperinflation

**Bony Abnormalities**
- ☐ Bony chest cage abnormality
- ☐ Fracture, healed (non-rib)
- ☐ Fracture, not healed (non-rib)
- ☐ Scoliosis
- ☐ Vertebral column abnormality

**Lung Parenchymal Abnormalities**
- ☐ Azygos lobe
- ☐ Density, lung
- ☐ Infiltrate
- ☐ Nodule, nodular lesion

**Miscellaneous Abnormalities**
- ☐ Foreign body
- ☐ Post-surgical changes/sternal wire
- ☐ Cyst

**Vascular Disorders**
- ☐ Aorta, anomaly of
- ☐ Vascular abnormality

### 4D. OTHER COMMENTS

Ax R apex

---

| PATIENT NAME ( Last, First  M.I. ) | Date of Birth ( Day/Month/Year ): | Patient ID Number: |
|---|---|---|
| BRAHAM, JAMES | ■ | 473709 |

**5.**
Radiology Facility: St Clair Memorial Hospital

Ordering Physician or Program: FINO^GREGORY J

Date of Reading: 5/27/2019

Classification Purpose:

TYPE OF READING
☐ A   ☒ B   ☐ Other

Interpreting Physician: Gregory J. Fino, M.D.

Signature:

Page 2 of 2

## JA 36

07/01/2019 12:57 FAX   2766790578        Diagnostic imaging              ☑0002/0019

## "B" READING INTERPRETATION

| PATIENT NAME: *James Braham* | FACILITY: *St Clair Hospital* |
|---|---|
| DATE OF RADIOGRAPH: *04-09.19* | PATIENT I.D. # XXX-XX- |

**1. FILM QUALITY**

[1] [X] 2 [3] [U/R]  *mildy*

☐ Overexposed (dark)   ☐ Improper position   ☐ Underinflation
[X] Underexposed (light)   ☐ Poor contrast   ☐ Mottle
If not Grade 1, mark all boxes that apply   ☐ Artifacts   ☐ Poor processing   ☐ Other (please specify)

**2A. ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMONCONIOSIS?**   YES [X]   Complete Sections 2B and 2C   NO [ . ]   Proceed to Section 3A

**2B. SMALL OPACITIES** | **2C. LARGE OPACITIES**

a. SHAPE/SIZE

| PRIMARY | SECONDARY |
|---|---|
| [p] [s] | [s] |
| [X] [t] | [q] [t] |
| [r] [u] | [r] [u] |

B. ZONES

| | R | L |
|---|---|---|
| UPPER | [X] | [X] |
| MIDDLE | [X] | [X] |
| LOWER | [X] | [X] |

c. PROFUSION

| 0/- | 0/0 | 0/1 |
| 1/0 | [1/1] | 1/2 |
| [2/1] | [X] | 2/3 |
| 3/2 | 3/3 | 3/+ |

SIZE  [O] [X] [B] [C]   PROCEED to SECTION 3A

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMONCONIOSIS?**   YES [ ]   Complete Sections 3B and 3C   NO [X]   Proceed to Section 4A

**3B. PLEURAL PLAQUES** (mark site, calcification, extent, and width)

| Chest wall | Site | Calcification | Extent (chest wall combined for in profile and face on) Up to 1/4 on lateral chest wall = 1 1/4 to 1/2 on lateral chest wall =2 > 1/2 of lateral chest wall = 3 | Width (in profile only) (3 mm minimum width required) 3 to 5 mm = a 5 to 10 mm = b > 10 mm =c |
|---|---|---|---|---|
| In profile | [O] [R] [L] | [O] [R] [L] | | |
| Face on | [O] [R] [L] | [O] [R] [L] | | |
| Diaphragm | [O] [R] [L] | [O] [R] [L] | [O] [R] [1][2][3]  [O] [L] [1][2][3] | [O] [R] [a][b][c]  [O] [L] [a][b][c] |
| Other site(s) | [O] [R] [L] | [O] [R] [L] | | |

**3C. COSTOPHRENIC ANLGE OBLITERATION**   [R] [L]   Proceed to Section 3D   NO [X]   Proceed to Section 4A

**3D. DIFFUSE PLEURAL THICKENING** (mark site, calcification, extent, and width)

| Chest wall | Site | Calcification | Extent (chest wall combined for in profile and face on) Up to 1/4 on lateral chest wall = 1 1/4 to 1/2 on lateral chest wall =2 > 1/2 of lateral chest wall = 3 | Width (in profile only) (3 mm minimum width required) 3 to 5 mm = a 5 to 10 mm = b > 10 mm =c |
|---|---|---|---|---|
| Face on | [O] [R] [L] | [O] [R] [L] | [O] [R] [1][2][3]  [O] [L] [1][2][3] | [O] [R] [a][b][c]  [O] [L] [a][b][c] |
| In profile | [O] [R] [L] | [O] [R] [L] | | |

**4A. ANY OTHER ABNORMALITIES**   YES [X]   Complete Sections 4B, 4C, 4D, 4E   NO [ ]   Proceed to Section 5

**4B. OTHER SYMBOLS (OBLIGATORY)**

[X] at [X] bu ca [X] cn co cp cv di ef em es fr [X] ho id ih kl me pa pb pt px ra rp tb

[OD] If other diseases or significant abnormalities, findings must be recorded. (section 4D)

**4C.** Should worker see personal physician because of findings in section 4d?   YES [ ]   NO [ ]

Date Physician or Worker notified?
MONTH [ ][ ]   DAY [ ][ ]   YEAR [ ][ ][ ][ ]

**4D. OTHER COMMENTS:** *Category A opacity right lung apex*

Certified B Reader's Signature: *[signature]*   Date of Reading: *6-28-19*

Kathleen A. DePonte, M.D., Board Certified Radiologist
NIOSH Certified B Reader

## JA 37



*Lungs at Work*

4000 Waterdam Plaza Dr., Suite 240
McMurray, PA 15317

724-941-1650
Fax: 724-941-1380

December 19, 2019

Ms. Carmalina Simpson, Claims Examiner
U. S. Department of Labor
Division of Coal Mine Workers' Compensation
Central Mail Room
P. O. Box 8307
London, KY 40742-8307

Dear Ms. Simpson,

This is in response to your correspondence regarding Mr. James Alan Braham dated September 27, 2019.

1. After the review of the additional medical records attached, including the report of Dr. Fino and the an additional chest x-ray readings of Drs. DePonte, Alexander and Fino, I continue to believe that Mr. Braham's 39 years of coal mine employment has directly led to his development of complicated coal workers' pneumoconiosis and that he is statutorily disabled from his complicated coal workers' pneumoconiosis. The preponderance of the most qualified chest x-ray interpretations are positive for a diagnosis of complicated coal workers' pneumoconiosis and the treatment records document the presence of a pulmonary nodule as well.

If I can be of further assistance, do not hesitate to contact me.

Sincerely,

David A. Celko M.D.

**JA 38**

U.S. DEPARTMENT OF LABOR
OFFICE OF ADMINISTRATIVE LAW JUDGES

IN THE MATTER OF:                  )

JAMES ALLEN BRAHAM,      )

   CLAIMANT               )

V                               )

ICG TYGART VALLEY LLC,    )    CASE NO.: 2020-BLA-05528

   EMPLOYER             )    OWCP NO: XXX-XX-1499 LM C

AND                       )

DIRECTOR, OWCP,         )

   PARTY IN INTEREST     )

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### AFFIDAVIT OF AMY LIVENGOOD
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Comes the affiant, Amy Livengood, and after being dually sworn, states as follows:

1. I am the program coordinator for the North Central West Virginia Black Lung Program.

2. As the program coordinator for the North Central West Virginia Black Lung Program I was involved in the filing of state occupational pneumoconiosis claims on behalf of James Braham.

3. The reading of the 2/21/17 chest x-ray by Dr. M. Kim and the reading of the 10/1/13 CT scan by Dr. H. Smith were both made for the purpose of litigating Mr. Braham's state occupational disease claims, not for treatment purposes.

I, Amy Livengood, state that the above is true and correct to the best of my knowledge and/or belief.

AMY LIVENGOOD

STATE OF WEST VIRGINIA
COUNTY OF _Taylor_

    SUBSCRIBED, SWORN TO, and ACKNOWLEDGED before me by Amy Livengood
this _17th_ day of _August_, 2021 to be her true act and deed.

Beverly Snyder, Notary

My commission expires: _Dec 19, 2023_

OFFICIAL SEAL
Notary Public, State Of West Virginia
BEVERLY SNYDER
Preston-Taylor Community Health Centers
725 North Pike Street, Grafton, WV 26354
My Commission Expires December 19, 2023

**JA 40**

**UNITED STATES DEPARTMENT OF LABOR**
**OFFICE OF ADMINISTRATIVE LAW JUDGES**

In the Matter of:

| | |
|---|---|
| JAMES A. BRAHAM, ) | |
| ) | |
| Claimant, ) | |
| ) | |
| vs. ) | Case No.  202-BLA-05528 |
| ) | |
| ICG TYGART VALLEY, LLC, ) | |
| ) | |
| Employer ) | |
| ) | |
| And ) | |
| ) | |
| ARCH COAL INC., ) | |
| ) | |
| Carrier ) | |
| ) | |
| And ) | |
| ) | |
| DIRECTOR, OFFICE OF WORKERS' ) | |
| COMPENSATION PROGRAMS, ) | |
| U.S. DEPARTMENT OF LABOR, ) | |
| ) | |
| Party-in-Interest. ) | |

TELEPHONIC HEARING

SEPTEMBER 10, 2021

The above entitled matter came on for Telephonic Hearing
pursuant to notice, at 9:00 a.m.

                    BEFORE:   HONORABLE DREW A. SWANK
                              Administrative Law Judge

**Bayley Reporting, Inc.**
**(727)585-0600**

**JA 41**

A P P E A R A N C E S

On behalf of Claimant:

LEONARD STAYTON, ESQ.
P.O. BOX 619
INEZ, KENTUCKY 41224
staytenlawoffice@emailsent.net
606-298-5117


On behalf of Employer/Carrier:

WILLIAM MATTINGLY, ESQ.
JACKSON KELLY, PLLC
100 West Main St. Suite 700
LEXINGTON, KENTUCKY 40507
wmattingly@jacksonkelly.com
859-288-2811

3

I N D E X

| CLAIMANT'S WITNESS: | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| James Allen Braham | 17 | 25 | | |


| EMPLOYER'S WITNESSES: | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| None | | | | |

E X H I B I T S

| EXHIBIT | IDENTIFIED | IN EVIDENCE | WITHDRAWN |
|---|---|---|---|
| CLAIMANT'S | | | |
| 1 through 5 | 13 | 13 | |
| EMPLOYER'S | | | |
| 1 through 7 | 15 | 15 | |
| DIRECTOR'S | | | |
| 1 through 43 | 12 | 12 | (pages 15 & 16 of DX 22 was Rejected) |
| 44 | 12 | | Rejected |
| 45 through 67 | 12 | 12 | |
| ALJ | | | |
| 1 through 3 | 6 | 6 | |

**Bayley Reporting, Inc.**
**(727) 585-0600**

**JA 43**

4

```
1                    P R O C E E D I N G S
2          JUDGE SWANK: Today is September 10, 2021. This
3    is the Black Lung claim for Mr. Braham, Case number 2020-
4    BLA-05528. My name is Judge Swank, I am the Administrative
5    Law Judge assigned to hear this case. What we are going to
6    be doing is covering a few housekeeping matters first, and
7    then talking briefly about the issues, and then moving on
8    to the evidence, and finally taking any testimony that we
9    might have. First things first, we need to have the
10   appearance by the counsel.  Counsel for the claimant could
11   you please enter your appearance.
12         MR. STAYTON: Yes, Your Honor. My name is
13   Leonard Stayton, my mailing address is P.O. BOX 1386 Inez,
14   Kentucky 41224. My telephone number is 606-298-5117. My
15   email address is staytonlawoffice@mailsent.net. I am
16   appearing on behalf of the claimant, Mr. James Allen
17   Braham.
18         JUDGE SWANK: Thank you, sir. Counsel for the
19   employer, please enter your appearance.
20         MR. MATTINGLY: On behalf of the employer, ICG
21   Tygart Valley LLC, I am William S. Mattingly. I am a member
22   of the law firm, Jackson Kelly PLLC. My mailing address is
23   100 West Main Street Suite 700 Lexington, Kentucky 40507.
24   My office phone number is 859-288-2811, and my email
25   address is wmattingly@jacksonkelly.com
```

**Bayley Reporting, Inc.**
**(727) 585-0600**

**JA 44**

5

1        JUDGE SWANK: Thank you, sir. What we are going

2    to be doing next is moving to the issues involved in the

3    claim before me. To do that, we are going to turn to the

4    employer's pre-hearing report we have listed there the

5    issues contested by employer. Timeliness, length of

6    employment, pneumoconiosis, causal relationship, total

7    disability, dependency, responsible operator and other

8    issues including the constitutionality of the Black Lung

9    Benefits Act, and the Affordable Care Act, and the

10   regulations derived thereto. Then, contingent upon the

11   claimant's testimony being consistent with the record as it

12   now stands, that the employer would agree that the claimant

13   has one dependent, his spouse, for purposes of

14   augmentation.  And the employer is the responsible

15   operator.  The Employer would stipulate to 4 years of coal

16   mine employment but well, I imagine it might be a little

17   bit more than that in the coal mine, but we will see. But

18   Mr. Stayton, how does one dependent and responsible

19   operator sound to you?

20       MR. STAYTON: That sounds fine to the claimant,

21   Your Honor.

22       JUDGE SWANK: Okay, very good. If necessary, get

23   ready to object Mr. Mattingly. I will be taking

24   administrative notice of the Dictionary of Occupational

25   Titles. Any objection?

6

1          MR. MATTINGLY: I do object to that because I

2     don't think it is necessary in this case, disability is not

3     going to be an issue. The physicians agree, there's not a

4     pulmonary impairment. So, I don't think the Dictionary of

5     Titles is going to come into play.

6          JUDGE SWANK: Okay. I am happy to note your

7     objection for the record, but I will overrule it. Next, we

8     are going to move to the evidence involved, and let us

9     start with the ALJ Exhibits.

10          First, we have my notice of hearing a pre-hearing

11     order that was issued on April 15th, 2021. That is ALJ-1.

12          ALJ-2 is the claimant's Black Lung evidence

13     summary form, and I have an August 18th, 2021 version that

14     will be ALJ-2.

15          ALJ-3 is the employer's Black Lung evidence

16     summary form, and I have a September 9th, 2021 version.

17                              (Whereupon, the documents

18                              referred to were marked for

19                              identification as ALJ Exhibits 1

20                              through 3 and admitted into

21                              evidence).

22          JUDGE SWANK:  Next, we'll move to the Director's

23     Exhibits, the previously marked DX-1 through DX-67. Any

24     objection on behalf of the claimant through the Director's

25     Exhibits?

7

1          MR. STAYTON: Yes, Your Honor. I have objections

2     to 3 separate items of evidence included in the Director's

3     Exhibits. The first one, I would object to is a reading of

4     the 2-21-17 chest X-Ray by Dr. Kim, which is present at the

5     Director's Exhibit 22, pages 15 -16. The basis of my

6     objection, those records were submitted by the employer or

7     submitted as part of a set of treatment records by the

8     employer. I assumed the employer's position, is that

9     reading is a treatment record, however, it is my position

10    that it is not a treatment record. In support of that, I

11    have a proposed exhibit that would be proposed during the

12    claimant's submission of exhibits with the claimant's

13    exhibit 4. It is an affidavit of Amy Livengood. Ms.

14    Livengood states that she is the Program Director or

15    Program Coordinator for the North Central West Virginia

16    Black Lung Program. As the program coordinator for that

17    agency, she was involved in the filing of State

18    Occupational Pneumoconiosis claims on behalf of Mr. Braham

19    and she states that the reading of the 2-21-17 chest X-Ray

20    by Dr. Kim was made for the purpose of litigating Mr.

21    Braham's state, one of his state occupational disease

22    claims, not for treatment purposes. Then I would also point

23    out to Dr. Kim's reading is in the form of an ILO reading.

24    While that is not my position, historically, Mr.

25    Mattingly's firm has argued that readings made in the form

8

1  of ILO readings are necessarily prepared for the purposes

2  of litigation, not for treatment, so, I would object to the

3  inclusion of that item of evidence into the record.

4       JUDGE SWANK: Okay. Well, that is one Director's

5  Exhibit rather than the Director's [crosstalk]

6       MR. STAYTON: Okay. The second one would be Dr.

7  Smith's reading of the 10-1-13 CT-scan, which is present at

8  the Director's Exhibit 22, pages 18 -19. The basis of that

9  would be exactly the same as what I just gave for the

10  initial chest X-Ray reading by Dr. Kim. The third item is

11  the Director's Exhibit 44, which consists of findings from

12  the West Virginia Occupational Board dated 11-16-17, which

13  includes medical findings and my position on that, that it

14  would also not be a treatment record and pursuant to

15  Dempsey V. Sewell Co. Company 23 BLR 1-47, issued in 2004,

16  state claim evidence is properly excluded if it contains

17  testing that exceeds the evidentiary limitations and here,

18  no one has designated that record as part of their

19  affirmative evidence, so it is my position that that record

20  from the West Virginia Occupational Pneumoconiosis Board is

21  not admissible.

22       JUDGE SWANK: Okay. Your response, Mr.

23  Mattingly, to the objection is to the 3 Director's

24  Exhibits, please.

25       MR. MATTINGLY: Let me take the easy one first.

1    I agree with Leonard on the Director's Exhibit 44. I don't

2    know who obtained it. I don't know who offered it, but it

3    has not been designated by either the claimant or the

4    employer as testing evidence, in this case, to be

5    considered. The director is not authorized to gather that

6    kind of information. So, I agree Director's Exhibit 44

7    doesn't fit in under the rubric of 725.414, and should not

8    be considered in this case.

9          JUDGE SWANK: So, since you are in agreement, I

10   will strike Director's Exhibit 44.

11         MR. MATTINGLY: With regards to the objections

12   to the Director's Exhibit 22, I always enjoy practicing

13   with Leonard because he's always thoughtful, and he always

14   brings up good objections, but I think he's misfocused on

15   this one. Because, the question is under Section 725.414

16   A4, which has come in as hospitalization or medical

17   treatment record, and doesn't have to fit into the

18   categories under the previous subsections of A. The

19   regulations don't define treatment records, but I think a

20   good working definition would be a test result related to a

21   claimant, or generated as part of, or as a result in

22   connection to a patient's medical treatment, history, or

23   condition. So the focus is not, was the report generated

24   for litigation, but the focus that I think you need to look

25   at, Judge Swank, is whether, or not this was included in

1    records considered by the physicians that treated or cared

2    for Mr. Braham. So when you go through the other parts of

3    the treatment records of the North Central West Virginia

4    Black Lung Program, we requested those records, and it

5    becomes obvious that he has been seen there on several

6    occasions by different physicians. They have diagnosed coal

7    workers' pneumoconiosis or Black Lung and in their notes

8    say, chest X-Rays show persistent nodules, needs a follow-

9    up CT scan, which refers to an earlier CT scan, and then,

10   specifically says, "Black lung evaluation. See attached

11   forms." And I can only work with what is given to me by the

12   medical provider. These are all the forms that the medical

13   provider gave to me. You can see the physician here signed

14   the pulmonary function study results. At the bottom of the

15   page, it was done in connection with the treatment. You

16   have got a narrative interpretation of an X-Ray, and then

17   you have got Dr. Kim's ILO interpretation and Dr. Smith's

18   interpretation of the CT scan. I am going to assume that

19   the initials A.L., are the lady that Mr. Stayton has

20   offered the affidavit from, but on Dr. Smith's CT scan

21   interpretation of that CT scan that was made on October 1,

22   2013, her note says, "December 9, 2013, notified patient of

23   results." I think the reasonable conclusion is, while these

24   may have been as Mr. Stayton has suggested, developed for

25   litigation, they are part and parcel of his treatment or

11

1    were looked at in connection with his treatment at the

2    North Central West Virginia Black Lung Program and by its

3    Physicians. Therefore, these do come in as treatment

4    records.

5          JUDGE SWANK: Well, gentlemen, I appreciate both

6    of your arguments. I also appreciate the times when we both

7    appeared before me together over the past decade. You both

8    kept me on my toes, especially on a Friday morning, at

9    9:00. But here's what I am going to do: I am going to place

10   all of them on this one and I am splitting the baby a

11   little bit. The CT ratings of October 1st, 2013, I will

12   deny the objection regarding it. There are no limitations

13   on the submission of CT readings under the evidentiary

14   rules. CT readings are kind of nebulous since the rules

15   really don't contemplate them, but they should because CT

16   readings would be very much so focused on this. So I am

17   going to overrule the objection with regards to the CT

18   reading of October 1st, 2013.

19         With regard to the ILO, I'm going to agree with

20   Mr. Stayton, that seems to be – if in fact it was not part

21   and parcel of this claim before me, this claim wasn't filed

22   until February 5th, 2018. Since it was part of a state

23   claim, I will grant his objection to that one ILO form as

24   it was being submitted through the evidentiary scheme as an

25   exhibit by the employer. And I don't know if you have the

12

1   spot for it on your form or not, Mr. Mattingly, but that is

2   going to be my ruling gentlemen. So I am going to allow in

3   the CT reading and I will strike the ILO form, and since

4   you are in agreement with DX-44, it is stricken.

5          Does the employer have objections to the

6   Director's Exhibits?

7          MR. MATTINGLY: No.

8          JUDGE SWANK: Okay. So what we are going to do

9   is the Director's Exhibits 1-43, are admitted with the

10  exception at DX-22, the pages 15 and 16 ILO form and 45

11  through 67 are admitted.

12                         (Whereupon, the documents referred

13                          to were marked for identification

14                          as Director's Exhibits 1 through

15                          67).

16                              AND

17                         (Whereupon, Director's Exhibits 1

18                          through 22, with the exception of

19                          pages 15 & 16 of DX-22 were

20                          admitted as well as DX 45 through

21                          67).

22         JUDGE SWANK:  Does the claimant have evidence

23  they wish to introduce today?

24         MR. STAYTON: Yes, Your Honor. I would propose

25  as claimant's exhibit 1, a reading of the

13

1   10-1-13 CT scan by Dr. DePonte.

2       I would propose as claimant's 2, the qualifications of

3   Dr. DePonte.

4       I would propose as claimant's 3, a rehabilitative

5   reading of the 10-1-13 CT scan by Dr. DePonte, which has

6   not yet been received.

7       As claimant's exhibit 4, I would propose the affidavit

8   of Amy Livengood.

9       As Claimant's 5, I would propose a reading of the 3-

10  27-19 chest X-Ray, which has not yet been read and

11  received.

12          JUDGE SWANK: Any objection on behalf of the

13  employer to the claimant's proposed exhibits?

14          MR. MATTINGLY: No objection to those 5

15  exhibits.

16          JUDGE SWANK: Very good. We'll admit the

17  claimant's exhibits and when we get the outstanding ones,

18  they will be admitted as well.

19                      (Whereupon, the documents referred

20                      to were marked for identification as

21                      Claimant's Exhibits 1 through 5 and

22                      admitted into evidence).

23          JUDGE SWANK:  Does the employer have exhibits

24  they wish to introduce today?

25          MR. MATTINGLY: I do. I have 6 exhibits for you

**Bayley Reporting, Inc.**
**(727) 585-0600**

**JA 53**

14

1   and this time.

2       there is exhibit 1, Dr. Kim's curriculum vitae which

3   now may be unnecessary, but I still offer it as an exhibit.

4       Employer's exhibit 2 is the affirmative medical

5   interpretation of the April 9th, 2019 chest X-Ray by Doctor

6   Adcock along with his curriculum vitae.

7       Employer's 3 is the deposition the parties took of Dr.

8   Celko on May 28th, 2021.

9       Employer's 4 is the deposition the parties took of Dr.

10  Fino on August 23rd, 2021.

11      Employer's 5 is the interpretation by Dr. Tarver of

12  the October 1, 2013, CT scan interpretation along with his

13  curriculum vitae.

14      And Employer's Exhibit 6 is the interpretation of the

15  March 27th, 2019 chest X-Ray by Dr. Tarver. I have those

16  exhibits and those have been transmitted both to you, Judge

17  Swank, as well as to Mr. Stayton. I would ask to also

18  preserve it as a potential employer's exhibit 7, a

19  rehabilitative statement by Dr. Tarver after we get Dr.

20  DePonte's rehabilitative statement contemplated as

21  Claimant's Exhibit 3.

22          JUDGE SWANK: Any objection by the claimant to

23  the employer's proposed exhibits?

24          MR. STAYTON: I have no objection to 2 through 6

25  as we have them and most likely no objection to a proposed

15

1   EX-7, as Mr. Mattingly has mentioned that it appears that

2   Dr. Kim's CV at EX-1 is unnecessary since you struck his

3   reading so I would object to that.

4       JUDGE SWANK: Well, I am going to overrule the

5   objection, it's not relevant to the litigation before me

6   today. However, I would rather keep it in the records so

7   that if this goes on appeal and the board then later says

8   Dr. Kim's reading does come in, then we would save the step

9   of having this CV. Still don't know if that will happen or

10  not, of all people on the planet, I am the least psychic of

11  them all. However, it does not harm having that CV in

12  there, especially if the report is not going to be

13  considered. I will allow it to stand.  I will admit into

14  evidence the employer's exhibits as read.

15              (Whereupon, the documents referred to

16              were marked for identification as

17              Employer's Exhibits 1 through 7 and

18              admitted into evidence).

19      JUDGE SWANK:  At the end, gentlemen, as always,

20  we will talk about the timeline for the submission of the

21  outstanding exhibits for both the claimant and the

22  employer. So if the claimant has any testimony that they

23  wish to put on today?

24      MR. STAYTON: Yes, Your Honor. I would like to

25  call Mr. Braham to testify.

16

1          JUDGE SWANK: Okay. Mr. Braham are you still on

2    the line?

3          MR. BRAHAM: Yes, sir.

4          JUDGE SWANK: Okay. Like I said at the

5    beginning, we would be getting to you in a little bit and

6    this is where we get to you. What's going to happen is I am

7    going to be swearing you in just as if we were in court,

8    then Mr. Stayton is going to have a whole bunch of

9    questions for you. What I need you to do is listen very

10   carefully to the questions that he asks you and answer

11   those very specific questions. After he is done, Mr.

12   Mattingly might have questions that he would like to ask of

13   you and I need you to do the same thing. I need you to

14   listen real carefully and answer those questions. Now,

15   sometimes at these hearings, when a miner is asked a

16   question, they think of something that they would rather

17   talk about because they feel it is more important. I need

18   you to trust me. The Attorneys on this case today are two

19   of the best in the nation when it comes to this kind of

20   work, they know exactly what questions I need to have

21   answered. So listen to the questions and answer that

22   specific question. Now, even though we are not in the same

23   room together, I am going to swear you in just like we are

24   in court. I need you to raise your right hand and I am

25   going to raise my right hand, and I am going to swear you

1    in by asking the following question.

2    WHEREUPON,

3                    **JAMES ALLEN BRAHAM**

4    Was called as a witness herein and, having been first duly

5    sworn, was examined and testified as follows:

6                    THE WITNESS: Yes, sir.

7                    JUDGE SWANK: That is the right answer. You can

8    put your hand down, Sir. Mr. Stayton, your questions,

9    please.

10                   MR. STAYTON: Thank you, Your Honor.

11                           DIRECT EXAMINATION

12   BY MR STAYTON:

13         Q     Can you state your name for me?

14         A     James Allen Braham.

15         Q     When you filed your application for benefits,

16   you listed your mailing address as 89 Apple Drive, Albright

17   West Virginia, 26519. Is that still your mailing address?

18         A     Yes, sir.

19         Q     Okay. Are you still married to Patricia?

20         A     Yes, sir.

21         Q     Does she live in your household?

22         A     Yes, sir.

23         Q     Okay. Now, as far as your coal mine

24   employment, when you filed your application for benefits,

25   you filled out a form called a CM-911A employment history

19

1     Q     Okay. Was all of your work either underground

2   coal mine employment or at the location of an underground

3   mine?

4     A     What was that again?

5     Q     Was all of your coal mine employment either

6   underground coal mine employment or performed at the

7   location of an underground mine?

8     A     It was all underground.

9     Q     Okay. What was the last job that you did in

10  the mining industry?

11    A     I was a parts runner.

12    Q     Okay. When did you start as a parts runner?

13    A     2015.

14    Q     Okay. And you told me that you switched to

15  that job because you were a part mining miner, is that

16  correct?

17    A     Yes, sir.

18    Q     Okay. Now, as a parts runner, did you have any

19  lifting?

20    A     Yes, sir. Yes, I did.

21    Q     Okay. Well on top of lifting, what did you do?

22    A     I had to take parts to the sections where they

23  were broken down and whatever they sent in, I had to take

24  to the sections, you know what I mean?

25    Q     Okay. So how much lifting were you doing in

20

1    that job?

2        A        I was lifting every day. I mean sometimes I

3    had to get help in lifting.

4        Q        Okay. Can you tell us the weights that you

5    were lifting?

6        A        Some of them were a hundred pounds. Some of

7    it, I couldn't lift by myself, I had to get help.

8        Q        But how much weight would you be lifting on

9    your own? I know even I am sure it was three to four

10   hundred pounds you probably had to have help. So I am

11   wondering how much weight would you regularly lift, just

12   you?

13       A        Maybe 50 pounds.

14       Q        Okay. And then when you were lifting the three

15   to four hundred pounds, how many men would be involved in

16   that?

17       A        3.

18       Q        Okay. So seventy-five to a hundred pounds

19   each?

20       A        Yes.

21       Q        Okay. So heavy lifting was a regular part of

22   your job as a parts runner?

23       A        Yes, sir.

24       Q        Okay. Now, before you worked as a parts

25   runner, I believe, according to the records you worked

1    mainly as a roof bolter?

2        A       Yes, that is right.

3        Q       Okay. In that job, you had to lift bundles of

4    bolts and boxes of load.

5        A       Yes, sir.

6        Q       What weights would those things be?

7        A       I don't know. Maybe twenty to twenty-five

8    pounds of bolts picked up.

9        Q       You are telling me that you also did what's

10   commonly referred to as dead work. You would rock dust,

11   timber, build brattices, help with belt structuring, other

12   jobs involving mining coal.

13       A       Yes, sir.

14              COURT REPORTER: Excuse me, I need the witness

15   to speak a little louder.

16       Q       Did you hear him, Jim? You need to speak just

17   a little bit louder?

18       A       Okay.

19       Q       Okay. When you would rock dust, what size bags

20   of rock dust would you use?

21       A       forty or fifty pounds bags.

22       Q       Okay. When you would timber, what size timbers

23   would you use?

24       A       Anywhere from 6 footers to 8 footers. I had to

25   have helped like 2 guys on 1 timber.

22

1      Q      Okay. So how much weight would you be lifting
2   when you would be lifting the timbers?
3      A      That would be seventy-five pounds, maybe.
4      Q      Okay. When you would build brattices, did you
5   have solid concrete blocks?
6      A      Yes, sir.
7      Q      How much would those weigh?
8      A      Maybe thirty pounds.
9      Q      Okay. When you would build a brattice, how
10   many blocks would it take to build a brattice?
11      A      I would say fifty, sixty, maybe more.
12      Q      Okay. When you helped make belt and power
13   moves, how much would the structure weigh?
14      A      The structure is pretty heavy. I would say
15   that a hundred pounds.
16      Q      Okay. So I take it even during the time that
17   you worked as a roof bolter, you were doing the heavy
18   lifting on a regular basis.
19      A      Yes sir, and a lot of stretching.
20      Q      Okay. After you left ICG Tygart, did you work
21   anywhere else for wages?
22      A      No, sir.
23      Q      Okay. So was ICG Tygart the last coal mine
24   that you worked for at least a year?
25      A      Yes, sir.

23

1      Q     Okay. Now, we are here today, concerning

2  whether you have, the main reason is, Mr. Mattingly said

3  that the main question is whether you have complicated

4  pneumoconiosis or black lung, but you told me you also have

5  some breathing problems. So tell me about your breathing

6  problems.

7      A     Yes, I was telling you yesterday that I can't

8  go out when it is hot and humid. I have trouble breathing,

9  I have an inhaler that I use a lot in the morning and night

10  and sometimes I can use it every 6 hours if needed.

11  Sometimes I use it in the middle of the day and I am on an

12  inhaler, morning and night. Symbicort, I take every morning

13  and night. I have a rescue inhaler here with me.

14      Q     Do you have any difficulty walking because of

15  your breathing?

16      A     Yes, sir.

17      Q     If you are in a town where it is fairly flat,

18  could you walk around the city block without stopping?

19      A     No, sir.

20      Q     Okay. Do you have difficulty walking up hills

21  or steps?

22      A     Yes, sir.

23      Q     Okay. Do you have any other health problems

24  besides your breathing?

25      A     I have high blood pressure, Type 2 diabetes.

24

1      Q      Are those conditions controlled by medication?

2      A      Yes, sir.

3      Q      Okay. Now, when you filed this claim, you went

4   to see Dr. Celko and as part of that exam, your chest X-Ray

5   was read as showing you to have complicated black lung. Was

6   that the first time that you are aware of? That you were

7   advised that you had a complicated black lung?

8      A      No, sir.

9      Q      Did you say no or yes?

10     A      No, I knew back in this time I went for the

11  state black lung.

12     Q      Okay. Now that time, I think they read your X-

13  Rays showing you have Black Lung. But now we are talking

14  about two different types, we have Black Lung and then we

15  have what we call, complicated black lung but it shows up

16  as big spots. Were you ever know that you had complicated

17  black lung before you saw Doctor Celko?

18     A      I think so, yes.

19     Q      Okay, do you know when?

20     A      I don't know. I have been to so many doctors.

21  I can't keep track of them, you know what I mean?

22     Q      Okay. That is fine. According to your records,

23  you have never smoked cigarettes.

24     A      No, sir. Never had.

25     Q      What time do you normally go to bed at night?

**Bayley Reporting, Inc.**
**(727) 585-0600**

**JA 63**

```
 1       A       Usually around 10:00 or 11:00.

 2       Q       Are you able to sleep through the night?

 3       A       Sometimes I have good nights and sometimes I

 4   don't.

 5       Q       What wakes you up?

 6       A       Coughing.

 7       Q       Okay. What time do you normally get up in the

 8   morning?

 9       A       Around 6:00.

10       Q       Do you take naps during the day?

11       A       Yes. Lately, I have. Yes.

12       Q       How do you pass your time during the day?

13       A       I usually go outside and tinker a little bit

14   if it is not hot and humid. Doing the heat and the cold,

15   this is worse, you know what I mean?

16       Q       Okay. Well, that is all the questions I have

17   for you. Now, Mr. Mattingly or the Judge may have some

18   questions for you.

19       A       Okay.

20               JUDGE SWANK: Cross-examination, please.

21                          CROSS EXAMINATION

22   BY MR. MATTINGLY

23       Q       Hello, this is Bill Mattingly.  I've just got a

24   couple of questions for you. Do you know Amy Livengood?

25       A       Yes, sir. I do.
```

26

1      Q      And who is she?

2      A      She was my state black lung representative.

3      Q      Did she call you about the CT scan that was

4    interpreted by Dr. Smith?

5      A      No.

6      Q      Did she call you about an X-Ray that was

7    interpreted by Dr. Kim?

8      A      No.

9      Q      Did the physicians at Preston Memorial or North

10   Central West Virginia Black Lung Program discuss those

11   tests with you?

12     A      No. I can't remember.

13     Q      Do you remember seeing Dr. Peter Wentzel?

14     A      Yes.

15     Q      What did he tell you about black lung?

16     A      Like nodules in the lungs or something like

17   that.

18     Q      Did he tell you why he reached that conclusion?

19     A      I can't remember. Do you know what year that

20   was?

21     Q      The records I have are from 2013.

22     A      2013?

23     Q      That is back a while. It has been my experience

24   that usually doctors will have X-Rays and they will talk

25   about the results of your X-Rays as it has been interpreted

27

1    by radiologists with the patient. Is that what Dr. Wentzel

2    did?

3         A    I think so. Yes.

4         Q    So you would have talked about the results of

5    X-Rays and CT scans that you had?

6         A    Yes.

7         Q    The same thing for Dr. Mary Gaynor. Did she

8    talk to you about X-Rays and CT scans?

9         A    Yes, sir.

10        Q    And she also told you, you had black lung

11   disease?

12        A    Yes.

13        Q    Has a doctor ever said to you that you are

14   totally disabled by black lung disease?

15        A    Yes, sir.

16        Q    What doctor told you that?

17        A    The one at Lungs at Work. I can't remember his

18   name. Celko or it was the first one I have seen down there.

19        Q    That would have been in Canonsburg,

20   Pennsylvania?

21        A    Yes.

22        Q    Dr. Celko was the first doctor to ever say that

23   you were disabled by Black Lung disease?

24        A    Yes, sir.

25        Q    I believe that is all the questions I have for

1    you. Thank you.

2            JUDGE SWANK: Redirect, please.

3            MR. STAYTON: No. No redirect, Your Honor.

4            JUDGE SWANK: Okay. Any other witnesses for the

5    claimant?

6            MR. STAYTON: No, Your Honor.

7            JUDGE SWANK: Any witnesses for the employer?

8            MR. MATTINGLY: No witnesses, but I would ask

9    after hearing the testimony, does that cause you to

10   reconsider striking Dr. Kim's ILO interpretation of the X-

11   Ray?

12           JUDGE SWANK: No, it doesn't. I am happy to

13   preserve the objection. No, I am not going to change my

14   ruling on that. I am happy to preserve your objection to my

15   ruling that we put it that way. Let us talk gentlemen, with

16   regards to the time that you need for your outstanding

17   evidence.  Mr. Stayton, how long are you going to need it?

18           MR. STAYTON: I would say 30 days.

19           JUDGE SWANK: Okay. Mr. Mattingly, because you

20   might want to do a something based on what he submits, how

21   long would you like?

22           MR. MATTINGLY: 30 days after I get whatever is

23   submitted.

24           JUDGE SWANK: Okay. So that takes October. That

25   gets us into November. Let us say the evidence is going to

29

1    be due November 26th, which gives us a little bit of wiggle

2    room. And briefs, I know we are getting into holiday time,

3    about December 17th. Will those dates do?

4                MR. STAYTON: That sounds fine to the claimant,

5    Your Honor.

6                MR. MATTINGLY: That will work for me, also.

7                JUDGE SWANK: Okay. Claimant, you both stood in

8    my standard admonition probably by heart, you have heard me

9    said so many times. But for the record, I will say that

10   again. Those are the dates received by me, please submit

11   everything electronically. It can be through the e-file, e-

12   serve, it can be through email. It can be through fax

13   because faxes are turned into emails these days, it is some

14   sort of magic. If you need more time before the end of the

15   deadline, just send me a really simple request asking for

16   more time, I would be happy to grant it as long as I

17   receive it before the end of the deadline, meaning midnight

18   on the day things are due and so we have evidence on

19   November 26th and briefs on December 17th. Anything further

20   from the claimant?

21               MR. STAYTON: No, Your honor.

22               JUDGE SWANK: Anything further from the

23   employer?

24               MR. MATTINGLY: No.

25               JUDGE SWANK: Okay. Thank you both for your

30

1    appearance today.

2            MR. STAYTON: Thank you, Your Honor.

3        (WHEREUPON, the hearing was concluded at 9:39 a.m.)

4    //

5    //

6    //

7    //

8    //

9    //

10   //

11   //

12   //

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

31

```
 1                     C E R T I F I C A T E

 2

 3   Case Name:      JAMES A. BRAHAM

 4   Number:         2020-BLA-05528

 5   Date:           SEPTEMBER 10, 2021

 6   Location:       TELEPHONIC HEARING

 7

 8            This is to certify that the attached proceedings

 9   before the United States Department of Labor, Office of

10   Administrative Law Judges, were held according to the

11   record and that this is the original, complete, true and

12   accurate transcript that has been compared to the reporting

13   or recording accomplished at the hearing.

14

15   /s/ Michelle Bayley               September 10, 2021

16   Bayley Reporting, Inc.                    Date

17   Official Federal Reporters

18   Building 1, Suite 14

19   12945 Seminole Boulevard

20   Seminole, FL  33778

21

22

23

24

25
```

**Bayley Reporting, Inc.**
**(727) 585-0600**

**JA 70**

**U.S. Department of Labor**

Office of Administrative Law Judges
William S. Moorhead Federal Office Building
1000 Liberty Avenue, Suite 1800
Pittsburgh, PA 15222

(412) 644-5754
(412) 644-5005 (FAX)



**Issue Date: 18 April 2022**

CASE NUMBER:     2020-BLA-05528

*In the Matter of:*

JAMES ALLEN BRAHAM,
        Claimant

    v.

ICG TYGART VALLEY, LLC,
        Employer

    And

ARCH COAL INC.,
        Carrier

    And

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
U.S. DEPARTMENT OF LABOR,
        Party-in-Interest

Appearances:

Leonard Stayton, Esq.,
        For the Claimant

William Mattingly, Esq.,
        For the Employer

Samantha N. Thomas, Esq. and Karen M. Barefield, Esq.,
        For the Director

Before:      **DREW A. SWANK**
        Administrative Law Judge

## <u>DECISION AND ORDER AWARDING BENEFITS</u>

     This proceeding arises from a miner's claim for benefits, under the Federal Coal Mine Health and Safety Act of 1969, as amended, at 30 U.S.C. § 901 *et seq.* (the "Black Lung Benefits

Act" or "Act") and the implementing regulations at 20 C.F.R. Parts 718 and 725 (Regulations). Unless otherwise noted, citations are to the amended regulations at 20 C.F.R. Parts 718 and 725, which became effective on January 19, 2001.  The Act and implementing regulations provide compensation and other benefits to:

    1.  Living coal miners who are totally disabled due to pneumoconiosis and their dependents;

    2.  Surviving dependents of coal miners whose death was due to pneumoconiosis; and,

    3.  Surviving dependents of coal miners who were totally disabled due to pneumoconiosis at the time of their death.

The Act and Regulations define pneumoconiosis ("black lung disease" or "coal worker's pneumoconiosis" ("CWP")) as a chronic dust disease of the lungs and its sequelae, including respiratory and pulmonary impairments arising out of coal mine employment.

## PROCEDURAL HISTORY

Claimant filed the present claim for benefits on February 5, 2018.  DX-2.[1]  The district director issued a Proposed Decision and Order Awarding Benefits on January 16, 2020.  DX-58. By letter dated January 28, 2020, Employer requested a formal hearing and the matter was referred to the Office of Administrative Law Judges, where the matter was then assigned to the undersigned.  DX-64, 67.

A telephonic hearing was conducted on September 10, 2021, at which Claimant and Employer were represented by counsel. The Regional Solicitor, via a letter dated August 24, 2021, entered a written appearance for the Director, but did not attend the hearing.  The parties were afforded the full opportunity to present evidence and argument.  The decision in this claim is based on the hearing testimony, evidence admitted into the record, and arguments of the parties.

The evidence admitted for consideration in this matter is comprised of Director's Exhibits 1-67, with the exception of DX 22, pages 15-16 (Dr. Kim's reading of the 2/21/17 x-ray) and DX 44, which were excluded at the hearing.[2]  Administrative Law Judge's Exhibits 1-3, Claimant's Exhibits 1-5, and Employer's Exhibits 1-7 were also admitted.  TR 6, 12-15.

---

[1] For purposes of this decision and order, Director's exhibits are annotated "DX"; Claimant's exhibits are annotated "CX"; Employer/Carrier's exhibits are annotated "EX"; Administrative Law Judge exhibits are annotated "ALJ"; and the Hearing Transcript is annotated "TR".

[2] At the hearing, the undersigned sustained Claimant's objection to the admission of Dr. Kim's reading of the 2/21/17 x-ray (DX-22, pp 15-16), on the grounds that it exceeded the limitation on evidence found at 20 C.F.R. § 725.414 and did not constitute a treatment record. TR 7-12.  The undersigned also sustained the objection made by both parties to the admission of DX 44 on the basis that it consisted of medical records developed in the miner's state claim which had not been designated as medical evidence in this claim, exceeded the limitations on evidence, and also did not constitute treatment records.  TR 8-9.

At the hearing, the undersigned set the deadline for the submission of closing briefs as December 17, 2021. TR 28. By Orders dated November 30, 2021 and January 20, 2022, the undersigned granted extensions of the briefing deadline to February 23, 2022. The undersigned received timely briefs from Claimant and Employer on February 22, 2022. Accordingly, this matter is ripe for adjudication.

## ISSUES

Because this claim was filed after April 1, 1980, it is governed by the regulations at 20 C.F.R. Part 718. Under these regulations, Claimant bears the burden of demonstrating each of the following elements by a preponderance of the evidence:

1.  The miner suffers from pneumoconiosis;

2.  The miner's pneumoconiosis arose from coal mine employment;

3.  The miner has a totally disabling respiratory impairment;

4.  The miner's totally disabling respiratory impairment is caused by pneumoconiosis.

20 C.F.R. §§ 718.202-718.204; *Baumgartner v. Director, OWCP*, 9 B.L.R. 1-65 (1986) (*en banc*); *Gee v. W.G. Moore & Sons*, 9 B.L.R. 1-4 (1986) (*en banc*). *See Dir., OWCP v. Mangifest*, 826 F.2d 1318, 1320 (3d Cir. 1987). Failure to establish any one of these elements precludes entitlement to benefits. 20 C.F.R. §§ 718.202-718.205; *Anderson v. Valley Camp of Utah, Inc.*, 12 B.L.R. 1-111, 1-112 (1989); *Trent v. Dir., OWCP*, 11 B.L.R. 1-26 (1987); *Perry v. Dir., OWCP*, 9 B.L.R. 1-1 (1986); *see Lane v. Union Carbide Corp.*, 105 F.3d 166, 170 (4th Cir. 1997). Moreover, "[T]he presence of evidence favorable to the claimant or even a tie in the proof will not suffice to meet that burden." *Eastover Mining Co. v. Dir., OWCP*, 338 F.3d 501, No. 01-4064 (6th Cir. 2003) (citing *Greenwich Collieries*, 512 U.S. at 281); *see also Peabody Coal Co. v. Odom*, 342 F.3d 486 (6th Cir. 2003).

In the present case, Employer contests each of the delineated issues. In addition, Employer contests timeliness, length of coal mine employment, the responsible operator issue and the number of dependents. ALJ-3, TR 5. Additional issues raised regarding the constitutionality of the Act and its amendments, are preserved for appeal purposes. *See e.g., Kosh v. Director, OWCP*, 8 B.L.R. 1-168, 1-169 (1985).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
*I. Preliminary Matters*

### A. **Coal Miner**

Claimant bears the burden of establishing the length of coal mine employment. *Shelesky v. Director, OWCP*, 7 B.L.R. 1-34 (1984); *Niccoli v. Director, OWCP*, 6 B.L.R. 1-910 (1984). Absent stipulation by the parties as to the length of coal mine employment, the fact-finder must make a specific, complete finding on this issue. *Boyd v. Director, OWCP*, 11 B.L.R. 1-39 (1988).

As an example, in *Gibson v. Director, OWCP*, 1 B.L.R. 1-1015 (1978), a finding of "approximately" 15 years is not specific and complete.  On the other hand, a finding of "well over the statutory 15 years" has been upheld.  *Dolzanie v. Director, OWCP*, 6 B.L.R. 1-865 (1984).

Calculating the length of coal mine work may be based on any reasonable method so long as it is supported by substantial evidence in the record considered as a whole.  *Clayton v. Pyro Mining Co.*, 7 B.L.R. 1-551 (1984); *Schmidt v. Amax Coal Co.*, 7 B.L.R. 1-489 (1984).  In determining length of employment in the coal mines, it is proper to consider evidence from a variety of sources, including affidavits of co-workers, Social Security records, sworn testimony, written statements of the miner (including the Form CM-911a), records of the employer, and pension records.  20 C.F.R. § 725.101(a)(32)(ii); *Muncy v. Elkay Mining Co.*, 25 B.L.R. 1-21 (2011) (the formula set forth at 20 C.F.R. § 725.101(a)(32)(iii) may be used, but it is not mandatory; it was proper to use the miner's Social Security records, employment history form, and records from former employers).  Further, the regulations provide:

> In determining whether a miner worked for one year, any day for which the miner received pay while on an approved absence, such as vacation or sick leave, may be counted as part of the calendar year and as partial periods totaling one year.

20 C.F.R. § 725.101(a)(32).

The length of coal mine employment can affect application of certain presumptions under the Regulations.  In order to establish application of the presumption at 20 C.F.R. §718.305, claimant must be able to show 15 years coal mine employment as a coal miner in underground mines or in conditions substantially similar thereto.  An "underground coal mine" is defined as "a coal mine in which the earth and other materials which lie above and around the natural deposit of coal (i.e., overburden) are not removed in mining; including all land, structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations, and other property, real or personal, appurtenant thereto." 20 C.F.R. § 725.101(a)(30).  Subsection 725.101(a)(12) further defines "coal mine." There is no presumption that a surface mine's conditions are "substantially similar" to an underground mine.  *Wagahoff v. Freeman United Coal Mining Co.*, 10 B.L.R. 1-100 (1987) (citing *McGinnis v. Freeman United Coal Mining Co.*, 10 B.L.R. 1-4 (1987)).  Amended Section 411(c)(4) has clarified that "[t]he conditions in a mine other than an underground mine will be considered 'substantially' similar to those in an underground mine if the claimant demonstrates that the miner was *regularly exposed* to coal-mine dust while working there."  78 Fed. Reg. at 59,114 codified at 20 C.F.R. §718.305(b)(2) (Emphasis added).[3]

---

[3] The comments accompanying the Department of Labor's regulations further clarify claimant's burden in establishing substantial similarity:

> The claimant need only focus on developing evidence addressing the dust conditions prevailing at the non-underground mine or mines at which the miner worked.  The objective of this evidence is to show that the miner's duties *regularly exposed him to coal mine dust*, and thus that the miner's work conditions approximated those at an underground mine.  The term "regularly" has been added to clarify that a demonstration of *sporadic or incidental exposure is not sufficient* to meet claimant's burden.  The fact-finder simply evaluates the evidence presented, and determines whether it credibly establishes that the miner's non-underground mine working conditions regularly exposed him to coal mine dust.  If that fact is established to the fact-finder's satisfaction, the claimant has met his burden of showing substantial similarity.

Claimant alleges approximately forty years of coal mine employment on his application for benefits. DX-2. The record includes Form CM-911a, which is Claimant's signed statement listing his coal mine employment. On this form Claimant lists coal mine employment with three coal mine employers between 1976 and 2017. The employers and specific dates of employment, including month and year, are noted as follows:

| | |
|---|---|
| T and T Coal<br>Bruceton Mills, WV | 11/76 – 12/98 |
| Kingwood Mining<br>Tunnelton, WV | 3/99 – 4/09 |
| Arch Coal[4]<br>Grafton, WV | 8/09 – 2/17 |

The dates listed on the signed Form CM-911a are consistent with, and corroborated by, the Social Security records and Claimant's testimony. DX-8-9; TR 17-19. As the dates listed above are supported by the record, including the Social Security records and Claimant's testimony, the undersigned credits the miner with 39 years and eleven months of coal mine employment, consistent with the listed dates. Claimant testified that all of his coal mine employment was in underground mines. TR 19.

**B. <u>Date of Filing</u>**

Claimant filed his claim for benefits under the Act, on February 5, 2018. DX-2. None of the Act's filing time limitations are applicable. *See* 20 C.F.R. § 725.308. Accordingly, the undersigned finds that the claim was timely filed.

**C. <u>Responsible Operator</u>**

Liability for payment of benefits to eligible miners and their survivors rests with the responsible operator, or if the responsible operator is unknown or is unable to pay benefits, with the Black Lung Disability Trust Fund. 20 C.F.R. § 725.495(a) defines responsible operator as the claimant's last coal mine employer with whom he had the most recent cumulative employment of not less than one year. *Snedecker v. Island Creek Coal Co.*, 5 B.L.R. 1-91 (1982). One year of coal mine employment may be established by accumulating intermittent periods of coal mine employment. 20 C.F.R. § 725.101(32). When the most recent coal mine employer does not meet the regulatory requirements for a potentially liable operator, the district director may name the next most recent operator. *See* 20 C.F.R. § 725.495.

---

78 Fed. Reg. 59,105 (Sept. 25, 2013

[4] The Social Security records and Claimant's testimony indicate that the specific names of the mines for which the Claimant was employed during this period are Wolf Run Mining Company and ICG Tygart Valley LLC. DX-9.

The named operator in this case is ICG Tygart Valley, LLC. The Social Security earnings record and Claimant's testimony support that Claimant worked for this employer between 2013 and 2017 and that this was his last coal mine employment. DX-9; TR 22.

Accordingly, the undersigned finds that ICG Tygart Valley, LLC is the properly designated responsible operator in this case.

## D. **Dependents**

Determining dependency for purposes of augmenting benefits is based upon a two-part test of relationship and dependency. *See* 20 C.F.R. § 725.204 *et seq*. At the hearing in this case, the Claimant testified that he is married and lives with his wife, Patricia. TR 17, DX 12. Accordingly, the undersigned finds that Claimant has one dependent for purposes of augmentation of benefits, his wife, Patricia.

## E. **Personal, Employment, and Smoking History**

Claimant was born on February 10, 1955. DX-2. Claimant testified that he is married and lives with his wife, Patricia. TR 17. Claimant testified that he worked steadily as a coal miner beginning in November 1976 for T & T Coal Company through February of 2017 when he ended his employment with Arch Coal Company [ICG Target LLC]. TR 17-19. All of his coal mine employment during this period was underground coal mine employment. TR 19. He stated that the last job he performed was as a "parts runner" which he began in 2015. This job required him to take parts to the mine sections when equipment was broken down and needed replacement parts. He testified that this job required heavy lifting on a daily basis. TR 19-20. He estimated that he lifted 50 pounds on a regular basis by himself. Larger parts weighing 300 to 400 pounds would require three men with each lifting about 75 to 100 pounds each. TR 20.

The undersigned finds that the Claimant's last job as a parts runner required heavy labor.

Claimant testified that prior to working as a parts runner he worked mainly as a roof bolter. TR 20-21. This job required lifting bundles of bolts and boxes of "load." He also testified that he would do what is referred to as "dead work" which included rock dusting, timbering, building brattices, helping with belt structuring and other various mining jobs. TR 21. Timbers were six to eight feet, and bags of rock dust weighed forty to fifty pounds. TR 22. He would lift about 75 pounds when lifting timbers and thirty pounds when lifting concrete blocks to build brattices. When he would help with belt and power moves, he would lift approximately 100 pounds. *Id.*

Claimant testified that he did not work anywhere for wages after leaving his coal mine employment with ICG Tygart which was his last coal mine employer that employed him for over one year. *Id.*

Claimant testified that his breathing problems prevent him from going outside when it is hot and humid. He stated that he has trouble breathing and difficulty walking on both flat ground as well as up hills or steps. He uses an inhaler "a lot" in the morning and night, and as needed every six hours. He also takes Symbicort, and he has a rescue inhaler. TR 23. He stated that he sometimes wakes up during the night due to coughing. TR 25. Other health problems include

high blood pressure and Type 2 diabetes, both of which are controlled with medication.  TR 23-24.  Claimant also testified that he has never smoked cigarettes.  TR 24.  Claimant confirmed that Amy Livengood was his representative in his state black lung claim.  TR 26.  Claimant testified that Dr. Celko was the first physician who told him he was totally disabled due to pneumoconiosis. TR 27.

## F.  Appellate Jurisdiction

The evidence indicates that Claimant last engaged in coal mine employment in West Virginia.  Thus, appellate jurisdiction of this matter lies with the Fourth Circuit Court of Appeals. *See Shupe v. Director, OWCP*, 12 B.L.R. 1-200, 1-202 (1989) (*en banc*).

*II. Elements of Entitlement*

Claimant bears the burden of proving each element of the claim by a preponderance of the evidence, except insofar as a presumption may apply.  *See Dir., OWCP v. Mangifest*, 826 F.2d 1318, 1320 (3d Cir. 1987).  Failure to establish any one of these elements precludes entitlement to benefits.  20 C.F.R. §§ 718.202-718.205; *Anderson v. Valley Camp of Utah, Inc.*, 12 B.L.R. 1-111, 1-112 (1989); *Trent v. Dir., OWCP*, 11 B.L.R. 1-26 (1987); *Perry v. Dir., OWCP*, 9 B.L.R. 1-1 (1986); *see Lane v. Union Carbide Corp.*, 105 F.3d 166, 170 (4th Cir. 1997).  Moreover, "[T]he presence of evidence favorable to the claimant or even a tie in the proof will not suffice to meet that burden."  *Eastover Mining Co. v. Dir., OWCP [Williams]*, 338 F.3d 501, No. 01-4064 (6th Cir. 2003) (citing *Greenwich Collieries [Ondecko]*, 512 U.S. at 281); *see also Peabody Coal Co. v. Odom*, 342 F.3d 486 (6th Cir. 2003).  The issues of pneumoconiosis, total respiratory or pulmonary disability, and disability causation must be considered separately, and a finding that a physician's opinion is not well-reasoned on one issue does not necessarily indicate it may not be credited on a separate issue.  *See Luketich v. Director, OWCP*, 8 B.L.R. 1-477 (1986).

## A.  PPACA Presumption

On March 23, 2010, the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1556 (2010) (PPACA) was signed into law.  Section 1556 of the PPACA revives the 15-year presumption at 30 U.S.C. § 921(c)(4), as implemented at 20 C.F.R. § 718.305 (2013).[5]  Since the miner's claim was filed after January 1, 2005, the 15-year presumption may be applicable if its conditions are met.  Section 718.305 (2013) provides as follows:

(a) *Applicability.* This section applies to all claims filed after January 1, 2005 and pending on or after March 23, 2010.

(b) *Invocation.* (1) The claimant may invoke the presumption by establishing that—

(i) The miner engaged in coal-mine employment for **fifteen years**, either in one or more underground coal mines, or in coal mines other than

---

[5] Revival of the presumption is was found to be constitutional.  *Muncy v. Elkay Mining Co.*, 25 B.L.R. 1-21, BRB No. 11-0187 BLA (Nov. 30, 2011); *Owens v. Mingo Logan Coal Co.*, 25 B.L.R. 1-1, BRB No. 11-0154 BLA, 25 B.L.R. 1-1 (Oct. 28, 2011) *aff'd* 724 F.3d 550, 25 B.L.R. 2-339 (CA 4, 2013).

underground mines in conditions substantially similar to those in underground mines, or in any combination thereof; **and**

(ii) The miner or survivor **cannot establish entitlement under § 718.304** by means of chest X-ray evidence; **and**

(iii) The miner has, or had at the time of his death, **a totally disabling respiratory or pulmonary impairment** established pursuant to § 718.204, except that § 718.204(d) does not apply.

(2) The conditions in a mine other than an underground mine will be considered "substantially similar" to those in an underground mine if the claimant demonstrates that the miner was regularly exposed to coal-mine dust while working there.

(3) In a claim involving a living miner, a miner's affidavit or testimony, or a spouse's affidavit or testimony, may not be used by itself to establish the existence of a totally disabling respiratory or pulmonary impairment.

[…]

(c) *Facts presumed.* Once invoked, there will be rebuttable presumption— (1) In a miner's claim, that the miner is totally disabled due to pneumoconiosis, or was totally disabled due to pneumoconiosis at the time of death; or (2) In a survivor's claim, that the miner's death was due to pneumoconiosis.

20 C.F.R. § 718.305 (emphasis added).

Thus, to invoke the rebuttable presumption Claimant must demonstrate that: (1) he was employed for fifteen years or more in one or more underground coal mines (or in conditions substantially similar to an underground mine); (2) a chest X-ray submitted in connection with the claim is interpreted as negative with respect to the requirements of 20 C.F.R. § 718.304 (complicated pneumoconiosis);[6] and, (3) other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment as determined under 20 C.F.R. § 718.204 except by means of lay evidence under §718.204(d).

In this case, the claim was filed after January 1, 2005 and Claimant has established over fifteen years of underground coal mine employment. However, as discussed below there is evidence of complicated pneumoconiosis. *See* Section (II)(B). *Copley v. Buffalo Mining Co.*, 25 B.L.R. 1-81 (2012). Accordingly, the evidence regarding pneumoconiosis will be addressed first to determine whether Claimant has established that he suffers from complicated pneumoconiosis.

---

[6] "The introduction of legally sufficient evidence of complicated pneumoconiosis does not automatically qualify a claimant for the irrebuttable presumption found at 20 C.F.R. section718.304." *Walls v. Mingo Logan Coal Co.,* BRB No. 11-0773 BLA (Aug. 29, 2012) (unpub.).

## B. **Existence of Pneumoconiosis**

Pneumoconiosis is defined as a "chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment."[7]  30 U.S.C. § 902(b); 20 C.F.R. § 718.201.  The definition is not confined to "coal workers' pneumoconiosis," but also includes other diseases arising out of coal mine employment, such as anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, progressive massive fibrosis, silicosis, or silicotuberculosis.  20 C.F.R. § 718.201(a)(2).[8]

Claimant has the burden of proving the existence of pneumoconiosis, absent application of 30 U.S.C. § 921(c)(4).  The Regulations provide the means of establishing the existence of pneumoconiosis by: (1) a chest X-ray meeting the criteria set forth in 20 C.F.R. § 718.102; (2) a biopsy or autopsy conducted and reported in compliance with 20 C.F.R. § 718.106; (3) application of the irrebuttable presumption for "complicated pneumoconiosis" found in 20 C.F.R. § 718.304;

---

[7] Pneumoconiosis is a progressive and irreversible disease; once present, it does not go away.  *Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 151 (1987); *Lisa Lee Mines v. Director*, 86 F.3d 1358 (4th Cir. 1996) (en banc) at 1362; *LaBelle Processing Co. v. Swarrow*, 72 F.3d 308, 314-15 (3d Cir. 1995).  In *Workman v. Eastern Associated Coal Corp.*, 23 B.L.R. 1-22, BRB No. 02-0727 BLA (Aug. 19, 2004)(order on recon) (en banc) the Board ruled that because the potential for progressivity and latency is inherent in every case, a miner who proves the presence of pneumoconiosis that was not manifest at the cessation of his coal mine employment, or who proves that his pneumoconiosis is currently disabling when it was previously not, has demonstrated that the disease from which he suffers is of a progressive nature. In amending § 718.201, DOL concluded chronic dust diseases of the lung and its sequelae arising out of coal mine employment "may be latent and progressive, albeit in a minority of cases."  *See* 64 Fed. Reg. 54978-79 (Oct. 8, 1999); 65 Fed. Reg. 79937-44, 79968-72 (Dec. 20, 2000); 68 Fed. Reg. 69930-31 (Dec. 15, 2003). "Although every case of pneumoconiosis does not possess these characteristics, the regulation was designed to prevent operators from asserting that pneumoconiosis is never latent and progressive.  20 C.F.R. § 718.201(c); *see National Mining Association, et al, v. Chao, Sec. of Labor*, 160 F. Supp. 2d 47 (D.D.C. Aug. 9, 2001) *aff'd*, 292 F.3d 849 (D.C. Cir. 2002)("*NMA*"), 292 F.3d at 863."

[8] Regulatory amendments, 20 C.F.R. § 718.201, effective January 19, 2001, state:

(a) For the purpose of the Act, "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition includes both medical, or '<u>clinical</u>', pneumoconiosis and statutory, or "<u>legal</u>," pneumoconiosis.

(1) <u>Clinical Pneumoconiosis</u>. '<u>Clinical pneumoconiosis</u>' consists of those diseases recognized by the medical community as pneumoconiosis, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment. This definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, silicosis or silicotuberculosis, arising out of coal mine employment.

(2) <u>Legal Pneumoconiosis</u>. '<u>Legal pneumoconiosis</u>' includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment. This definition includes, but is not limited to, <u>any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment</u>.

(b) For purposes of this section, a disease 'arising out of coal mine employment' includes any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment.

(c) For purposes of this definition, 'pneumoconiosis' is recognized as a latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure.

*Id.* (Emphasis added).

or (4) a determination of the existence of pneumoconiosis made by a physician exercising sound judgment, based upon certain clinical data and medical and work histories, and supported by a reasoned medical opinion.[9]  20 C.F.R. § 718.202(a)(4).

The Board has held that complicated pneumoconiosis is a form of clinical pneumoconiosis. *Gollie v. Elkay Mining Co*., BRB No. 09-0117 BLA (Oct. 28, 2009) (*Gollie* II)(Unpub.).  If a claimant is suffering from complicated pneumoconiosis, then there is an irrebuttable presumption that he is totally disabled due to pneumoconiosis.  20 C.F.R. § 718.304.  In *Lester v. Director, OWCP*, 993 F.2d 1143, 1146 (4th Cir. 1993), the Court held that "[t]he claimant has the burden of proof in establishing the existence of complicated pneumoconiosis and thereby invoking the irrebuttable presumption of total disability, under 20 C.F.R. § 718.304."[10] 30 U.S.C. § 921(c)(3); *See generally Usery v. Turner Elkhorn Mining Co.* 428 U.S. 1 (1976) (Upholding constitutionality of presumption).  Claimants bear the burden of establishing that the large opacities are caused by dust exposure in coal mine employment rather than the employer being required to prove that the opacities are due to a specific non-coal dust related source.[11]  *Lester*, 993 F.2d 1143.

A claimant may establish entitlement to the irrebuttable presumption three ways: first, under paragraph (a), based upon a chest X-ray finding of one or more large opacities (i.e., greater than 1 centimeter in diameter) which would be classified as Category A, B, or C under the applicable classification requirements (such as ILO and UICC); under paragraph (b), based upon a biopsy or autopsy yielding "massive lesions in the lung"; or, under paragraph (c), based upon a condition which "when diagnosed by means other than those specified in paragraphs (a) and (b) […] could reasonably be expected to yield the results described in paragraph (a) or (b) […] had diagnosis been made as therein described: provided, however, that any diagnosis made under this paragraph shall accord with acceptable medical procedures."[12] 20 C.F.R. §718.304 (2010). The

---

[9] In accordance with the Board's guidance, the undersigned finds each medical opinion documented and reasoned, unless otherwise noted.  *Collins v. J & L Steel*, 21 B.L.R. 1-182 (1999) *citing Trumbo v. Reading Anthracite Co.*, 17 B.L.R. 1-85 (1993); *Fields v. Island Creek Coal Co.*, 10 B.L.R. 1-19 (1987); and, *Sterling Smokeless Coal Co. v. Akers*, 121 F.3d 438, 21 B.L.R. 2-269 (4th Cir. 1997). This is the case, because except as otherwise noted, they are "documented" (medical), i.e., the reports set forth the clinical findings, observations, facts, etc., on which the doctor has based his diagnosis and "reasoned" since the documentation supports the doctor's assessment of the miner's health.

[10] In *Lester v. Director, OWCP*, 993 F.2d 1143, 17 B.L.R. at 2-117-118 (4th Cir. 1993), the Court held the Claimant bears the burden of establishing that the large opacities are caused by dust exposure in coal mine employment rather than the employer being required to prove that the opacities are due to a specific non-coal dust related source.  The Fourth Circuit has explained that because Section 921(c)(3) provides an irrebuttable presumption only if "a chronic disease of the lung" is established, the totality of the evidence must be considered.

[11] In *Looney v. Shady Lane Coal Corp*., BRB No. 06-0508 (Feb. 28, 2007) (unpublished) (Arising in 4th Cir.), the Board wrote that, "In determining whether claimant has established invocation of the irrebuttable presumption of total disability due to pneumoconiosis pursuant to Section 718.304, the Administrative Law Judge must weigh together all the evidence relevant to the presence or absence of complicated pneumoconiosis, including evidence of simple pneumoconiosis and of no pneumoconiosis."  The "relevant" question is "not whether (the physicians) definitively found the changes in the claimant's lungs to be due to other diseases, but whether these physicians definitively excluded complicated pneumoconiosis as a diagnosis."

[12] The irrebuttable presumption at 20 C.F.R. § 718.304 cannot be invoked under subsection (c) using medical opinions that are based solely on chest X-ray interpretations. In *S.P.W. v. Peabody Coal Co.*, BRB No. 07-0278 BLA (Dec. 27, 2007) (unpublished). Specifically, the Board noted that § 718.304(c) permits invocation of the presumption "*by means*

regulations incorporate the standards of the International Labor Organization for the International Classification of the Radiographs of Pneumoconioses, which defines "large opacity" as an opacity with the longest dimension measuring more than 10 mm. A Category "A" large opacity measures between 10 mm and 50 mm according to the longest dimension of the opacity. A Category "B" large opacity measures greater than 50 mm but is smaller in total area than the right upper lung zone. A Category "C" large opacity or coalescence of opacities exceeds the equivalent area of the right upper lung zone. International Labor Organization, International Classification of the Radiographs of Pneumoconioses (1980 revised ed.); Department of Labor Form CM-933, "Roentgenographic Interpretation."

These clauses are intended to describe a single, objective condition, and subsection (a) provides an objective standard against which the other subsections can be measured. *See Eastern Associated Coal Corporation v. Director, OWCP [Scarbro],* 220 F.3d 250, 255-57 (4th Cir. 2000). The statutory definition of complicated pneumoconiosis need not be congruent with a medical or pathological diagnosis. *Id.* at 257. The statutory definition of complicated pneumoconiosis "betrays no intent to incorporate a purely medical definition." *Scarbro*, 220 F.3d 250. Thus, the Fourth Circuit has held, the "complicated pneumoconiosis" condition referred to in the regulations is a statutory creation (rather than a medical condition).

Subsection (a)(opacity greater than 1.0 cm on X-ray) provides the objective standard against which the other subsections can be measured. *Eastern Associated Coal Corp. v. Director, OWCP [Scarbro]*, 220 F.3d 250 (4th Cir. 2000). In *Scarbro*, the Court affirmed a judge's finding that the X-ray and autopsy evidence supported invocation of the presumption at 20 C.F.R. § 718.304.[13] Prongs (A), (B), and (C), under § 718.304 are written in the disjunctive such that a finding of complicated pneumoconiosis may be established based upon evidence presented under one of the prongs "[b]ut the ALJ must in every case review the evidence under each prong of § 921(c)(3) for which relevant evidence is presented to determine whether complicated pneumoconiosis is present." Complicated pneumoconiosis is established through application of "congressionally defined criteria" and the most objective measure of the condition is obtained through chest X-rays. Thus, the Court rejected the employer's argument that the X-ray findings of complicated pneumoconiosis were contradicted by the autopsy evidence.

*1.* Chest X-rays

---

*other than*" interpretations of chest X-rays at § 718.304(a) of the regulations. Therefore, while medical opinions may be considered under § 718.304(c) to invoke the irrebuttable presumption, such opinions cannot be based solely on X-ray interpretations.

[13] In *Clinchfield Coal Co. v. Lambert*, 2006 W.L. 3344010, *2 (4th Cir. 2006) (Unpublished), the Court held that the Administrative Law Judge ("ALJ") had misstated its *Scarbro* holding. She had held that once a claimant establishes complicated pneumoconiosis by X-ray, he is entitled to the rebuttable presumption of total disability, under 20 C.F.R. § 718.304, unless there is affirmative evidence under prong A (X-ray), B (autopsy/biopsy/massive lesions), or C (other means with equivalent results)(of § 718.304) that the opacities do not exist or are the result of a disease process unrelated to coal mine dust exposure. Rather, *Scarbro* holds "only that once the claimant presents legally sufficient evidence . . . he is likely to win unless there is <u>contrary evidence</u> (typically, but not necessarily, offered by the employer) in the record. The burden of proof remains at all times with the claimant." *Id.* The Court found the ALJ and, the Benefits Review Board, in affirming the award, had improperly shifted the burden of proof and remanded. The Court did not explicitly limit the "contrary evidence" to that under the three prongs of § 718.304.

A finding of the existence of complicated pneumoconiosis may be made with chest X-ray evidence showing one or more large opacities which would be classified as Category A, B, or C under the applicable classification systems.[14] 20 C.F.R. § 718.304(a). Section 718.102 describes the standards for X-rays and the effect of physicians' interpretations.[15]

When weighing chest X-ray evidence, the provisions at 20 C.F.R. § 718.202(a)(1) require that "where two or more X-ray reports are in conflict, in evaluating such X-ray reports consideration shall be given to the radiological qualifications of the physicians interpreting such X-rays." 20 C.F.R. § 718.202(a)(1). Radiological qualifications of physicians include designations as being a "B-reader" and "Board-certified." A "B-reader" (B) is a physician, but not necessarily a radiologist, who successfully completed an examination in interpreting X-ray studies conducted by, or on behalf of, the Appalachian Laboratory for Occupational Safety and Health (ALOSH).[16] A designation of "Board-certified" (BCR) denotes a physician who has been certified in radiology or diagnostic roentgenology by the American Board of Radiology or the American Osteopathic Association. The Board has held that an interpretation by a dually-qualified B-reader and Board-certified radiologist may be accorded greater weight than a B-reader's interpretation. *Roberts v. Bethlehem Mines Corp.*, 8 B.L.R. 1-211 (1985); *Sheckler v. Clinchfield Coal Co.*, 7 B.L.R. 1-128 (1984); *Cannelton Indus., Inc. v. Dir., OWCP[Frye]*, Case No. 03-1232 (4th Cir. April 5, 2004) (proclaiming it's proper to accord more weight to radiologists' readings over non-radiologists); *see also Bethenergy Mines, Inc. v. Cunningham*, Case No. 03-1561 (4th Cir. July 20, 2004) (unpublished) (finding it's appropriate to accord greater weight to the X-ray interpretation of a dually-qualified reader over a B-reader). With regard to the professional qualifications of the physicians who read the chest X-rays of record, they are as follows:

Dr. Kim A. Adcock is a B-reader and Board-certified in radiology. He was a staff radiologist at Colorado Permanente Medical Group from 2006 until 2013, was previously a Regional Departmental Chief with the same organization and was an assistant professor at the department of radiology at University of Colorado Health sciences Center from 1983 until 1990. He has published several articles on radiology, cancer and cardiovascular topics.

Dr. Michael S. Alexander is a B-reader and Board-certified in radiology. He was formerly a staff radiologist in Bluefield, West Virginia, a diagnostic radiologist, and had been an assistant professor of radiology for the University of Maryland Medical System. He has been an independent consultant since 2001.

---

[14] "There are twelve levels of profusion classification for the radiographic interpretation of simple pneumoconiosis." *Lisa Lee Mines v. Dir.*, 86 F.3d 1358, 1359 n.1 (4th Cir. 1996) (*en banc*) (quoting N. LeRoy Lapp, *A Lawyer's Medical Guide to Black Lung Litigation*, 83 W.Va. Law Rev. 721 729-731 (1981)).

[15] On April 17, 2014, the Labor Department published revised regulations at 79 Fed. Reg. 21606 (Apr. 17, 2014). These amendments address quality standards for, and consideration of, digital X-ray interpretations in black lung claims. The effective date of the amendments is May 19, 2014. Because this claim was filed after the regulatory effective date of the digital X-ray regulations, i.e. May 19, 2014, the new regulations apply.

[16] A 'B-reader' is a physician, often a radiologist, who has demonstrated proficiency in reading X-rays for pneumoconiosis by passing annually an examination established by the National Institute of Safety and Health and administered by the U.S. Department of Health and Human Services. *LaBelle Processing Co. v. Swarrow*, 72 F.3d 308, 310 n. 3 (3d Cir. 1995). *See* 20 C.F.R. § 718.202(a)(1)(ii)(E); 42 C.F.R. § 37.51.

Dr. Kathleen A. DePonte is a B-reader and Board-certified in radiology. She is engaged in private practice with Diagnostic Imaging Associates, PC, in Norton, Virginia, and is affiliated with the Mountain View Regional Medical Center. She serves as an adjunct clinical faculty with the DeBusk College of Osteopathic Medicine and has published several articles unrelated to CWP. She is currently appointed as an ACR Pneumoconiosis Certification Program Task Force Member and as a NIOSH Coal Workers' Health Surveillance Program reader.  CX-2.

Dr. Robert D. Tarver is a B-reader and Board-certified radiologist. He is a professor of radiology at the Indiana University School of Medicine in Indianapolis, Indiana. Dr. Tarver is the chest section editor for "The Radiologist" and is well-published.

As all of the readers are both Board Certified radiologists and B readers, the undersigned finds them to be similarly qualified.

In the present case, there are seven readings of three X-rays, taken between May 15, 2018 and April 9, 2019.[17]  All seven of the readings are properly classified for pneumoconiosis, pursuant to 20 C.F.R. § 718.102(b).[18]  The X-ray evidence is summarized in the chart below.

| Ex. # | Dates: 1. X-ray Read 2. | Reading Physician | Qualifi-cations* | Film Quality | ILO Classification** | Interpretation or Impression |
|-------|------|------|------|------|------|------|
| DX-23 | 05/15/18 05/31/18 | DePonte | B/BCR | Under-exposed | 2/2, q/q, 6 zones | At least Category A density right lung apex |
| DX-18 | 05/15/18 05/02/19 | Alexander | B/BCR | 1 | 1/2, p/q, 6 zones, A | Area of coalescence in right upper lobe; opacity measuring approximately 12 x 5 mm that is located above the area of coalescence, and would be consistent with category A complicated pneumoconiosis |
| DX-21 | 05/15/18 03/08/19 | Tarver | B/BCR | 1 | 1/1, q/q, 6 zones | Findings consistent with simple coal |

[17] One additional reading of the May 15, 2018 x-ray was performed by Dr. Gaziano for quality purposes only.  He found the technical quality to be "1."  DX-34.

[18] ILO-UICC/Cincinnati Classification of Pneumoconiosis - The most widely used system for the classification and interpretation of X-rays for the disease pneumoconiosis.  This classification scheme was originally devised by the International Labor Organization (ILO) in 1958 and refined by the International Union Against Cancer (UICQ) in 1964.  The scheme identifies six categories of pneumoconiosis based on type, profusion, and extent of opacities in the lungs.  The existence of pneumoconiosis may be established by chest X-rays classified as category 1, 2, 3, A, B, or C.  A chest X-ray classified as category "0," including subcategories "0/-, 0/0, 0/1," does not constitute evidence of pneumoconiosis.  20 C.F.R. § 718.102(b).  In some instances, it is proper for the judge to infer a negative interpretation where the reading does not mention the presence of pneumoconiosis.  *Yeager v. Bethlehem Mines Corp.*, 6 B.L.R. 1-307 (1983) (Under Part 727 of the Regulations); *Billings v. Harlan #4 Coal Co.*, BRB No. 94-3721 (June 19, 1997) (*en banc*) (unpublished).  If no categories are chosen, in box 2B(c) of the X-ray form, then the X-ray report is not classified according to the standards adopted by the regulations and cannot, therefore, support a finding of pneumoconiosis.

| Ex. # | Dates:  1. X-ray  2. Read | Reading Physician | Qualifi-cations* | Film Quality | ILO Classification** | Interpretation or Impression |
|-------|------------|-----------|------------|---------|---------------------|------------------------------|
| | | | | | | worker's pneumoconiosis |
| EX-6 | 03/27/19 08/19/21 | Tarver | B/BCR | 1 | 1/1, q/q, 6 zones | Consistent with simple coal workers' pneumoconiosis, no large opacities. |
| CX-5 | 03/27/19 10/22/21 | DePonte | B/BCR | 2 | 2/2, q/p, 6 zones; A | Simple and complicated coal workers' pneumoconiosis; Coalescence is present in the right upper lung zone with Category A large opacites. |
| EX-2 | 04/09/19 04/26/21 | Adcock | B/BCR | 2 | 2/2, q/r, 6 zones | |
| DX-20 | 04/09/19 06/28/19 | DePonte | B/BCR | 2 | 2/2, q/p, 6 zones, A | Category A opacity right lung apex |

* B – B-reader; BCR – Board-certified Radiologist.

All of the readers in this case are Board Certified radiologists and B-readers and thus are similarly qualified. The earliest x-ray taken on May 15, 2018 was read by Dr. DePonte and Dr. Alexander as positive for both simple and complicated pneumoconiosis. Dr. DePonte noted a large opacity in the right apex of at least Category A size. Dr. Alexander, who also found complicated pneumoconiosis, specified on the x-ray report that there was an area of coalescence in the right upper lobe and an opacity measuring approximately 12 x 5 mm that is located above the area of coalescence and would be consistent with category A complicated pneumoconiosis. Dr. Tarver read the May 15, 2018 x-ray as positive for simple pneumoconiosis, 1/1 profusion, q/q in 6 lung zones. He did not note a large opacity. Considering the three readings and that all of these readers are dually qualified, the undersigned finds this x-ray to be positive for simple and complicated pneumoconiosis.

The March 27, 2019 x-ray was read as showing simple pneumoconiosis by Dr. Tarver. The same x-ray was read by Dr. DePonte as showing simple and complicated pneumoconiosis. Dr. DePonte noted that coalescence is present in the right upper lung zone along with a Category A large opacity. As this x-ray was read by one dually qualified radiologist as showing simple pneumoconiosis and the other dually qualified radiologist as showing both simple and complicated pneumoconiosis, the undersigned finds this x-ray to be in equipoise.

Similarly, the April 9, 2019 x-ray was also read by two dually qualified radiologists. Dr. Kim Adcock found simple pneumoconiosis of 2/2 profusion in 6 lung zones. He did not note any large opacities. Dr. DePonte also read this x-ray and found it to be positive for both simple and complicated pneumoconiosis. She again noted a Category A opacity in the right lung apex. As this x-ray was read by one dually qualified radiologist as showing simple pneumoconiosis and the other dually qualified radiologist as showing both simple and complicated pneumoconiosis, the undersigned finds this x-ray also to be in equipoise.

In a rehabilitative report dated February 1, 2022, Dr. Tarver confirmed his opinion that the March 27, 2019 x-ray showed simple pneumoconiosis. EX-7. He also opined that there is minimal right apical scarring versus pseudoplaque seen on the October 1, 2013 CT scan. He noted that he disagreed with Dr. DePonte who described the abnormality in the right apex as large opacities as opposed to a pseudoplaque. He also stated his disagreement with Dr. DePonte regarding whether a pseudoplaque would qualify as a large opacity.

Dr. DePonte also issued a rehabilitative report regarding her interpretation of the March 27, 2019 x-ray and the October 1, 2013 CT scan. She noted that she had reviewed her interpretations as well as those of Dr. Tarver and that they were in agreement regarding the presence of simple coal workers' pneumoconiosis. She confirmed her opinion that complicated pneumoconiosis was also present. In support of the presence of complicated pneumoconiosis she attached multiple images of both the March 27, 2019 x-ray and the October 1, 2013 CT scan in which she marked the location of the large opacities. She noted that the large opacities were "quite subtle" on the X-ray, due to underexposure of the radiographic image and the location of the opacities in the right lung apex. She explained that the lung apices are the classic location of large opacities of complicated coal workers' pneumoconiosis but "visualization can be limited due to the overlying bony structures of anterior and posterior ribs as well as the clavicle." She found however, that careful observation revealed the presence of at least one large opacity. She compared the x-ray to the October 1, 2013 CT which she stated was a more sensitive and specific exam for coal workers' pneumoconiosis for the detection of both small and large opacities. She found that in this case, the large opacities were more clearly visible on the CT as she noted in attached photos where she marked the location of the large opacities on photographs of the CT films. She specifically noted that the "11mm opacity is clearly separate from the pleura and within a region of coalescence, a classic location of progressive massive fibrosis." She also explained that some of the large opacities form peripherally, adjacent to the pleura and that the term pseudoplaque has been applied to these opacities as a descriptive term. However, she determined that these are parenchymal opacities like those that occur more centrally.

When the x-ray evidence is considered as a whole the undersigned finds it is positive for both simple and complicated pneumoconiosis. Although the March 27, 2019 and April 9, 2019 x-rays are in equipoise regarding complicated pneumoconiosis, a preponderance of the May 15, 2018 x-ray readings are positive for complicated pneumoconiosis as well as simple pneumoconiosis. In reaching this conclusion I have also considered the rehabilitative reports that were offered by Dr. DePonte and Dr. Tarver regarding their readings of the March 27, 2019 x-ray. Dr. DePonte's explanations regarding the appearance of the large opacities on the x-ray are clear and persuasive. She supports her opinion that a large opacity consistent with complicated pneumoconiosis is present by pointing out the location and size of the opacity on photographs of the x-ray films. She also compares the x-ray to the October 1, 2013 CT scan and confirms her opinion that the large opacity is present and that it is appearing in a very typical region of the lung for complicated pneumoconiosis, on a background where coalescence of small opacities is also noted. The undersigned also finds that Dr. DePonte's finding of complicated pneumoconiosis is also bolstered by the fact that she read all three of the x-rays in the record, as well as the October 1, 2013 CT, scan and was able to confirm her opinion regarding complicated pneumoconiosis by comparing and contrasting the March 27, 2019 x-ray to the October 2, 2013 CT scan films.

The undersigned has also considered the chest x-ray reports in the treatment records. Treatment records from Bruceton Family Medicine, LLC include a reading by Dr. Hirsch of a March 27, 2019 x-ray which showed small nodular densities at both lung apices, less than 5mm which were stable from February 21, 2017. DX-23.

Treatment records from Preston Memorial Hospital include a reading by Dr. Garrett Stover of a February 21, 2017 x-ray which noted a nodular interstitial pattern in the lung apices. He noted that differential considerations include granulomatous processes such as sarcoidosis or pneumoconiosis. A February 18, 2019 x-ray was read by Dr. Laplante as showing some subtle interstitial nodular changes in both lung fields predominantly in the upper lobes, noting that chronic lung changes were suspected. Dr. Stover read a March 30, 2019 x-ray which noted no acute process. DX-26.

Although I have considered these treatment record x-ray readings, I give them less weight than the other x-rays offered into the record because there is no indication in the record that the physicians reading these x-rays have any specific expertise in the interpretation of x-rays for the presence of simple or complicated pneumoconiosis, nor were these x-rays read specifically for the purpose of diagnosing pneumoconiosis. However, it is noted that the findings are consistent with a nodular lung process which is consistent with the presence of pneumoconiosis although a large opacity was not noted.

For the reasons noted above, and giving greater weight to the dually qualified radiologists, the undersigned finds the totality of the x-ray evidence is positive for both simple and complicated pneumoconiosis.

### 2. Autopsy or Biopsy

The second way in which a finding of the existence of complicated pneumoconiosis may be made is through the results of a biopsy – or in the case of a deceased miner, an autopsy – showing "massive lesions in the lung." 20 C.F.R. § 718.304(b). In this case there is neither biopsy or autopsy evidence to consider.

### 3. Other Means

Finally, a determination of the existence of complicated pneumoconiosis may be made by means other than chest X-rays or pathological findings if the resultant diagnosis "could reasonably be expected to yield" opacities measuring greater than 1 centimeter if viewed on X-ray or "massive lesions" if seen pathologically. 20 C.F.R. § 718.304(c). The Regulations further provide that "any diagnosis made under this paragraph shall accord with acceptable medical procedures." *Id.*

A CT scan falls into the "other means" category of 20 C.F.R. § 718.304(c) rather than being considered an X-ray under § 718.304(a). The record contains three readings of the October 1, 2013 chest CT scan. All three of the radiologists noted that CT scans may be useful in diagnosing the presence of pneumoconiosis.

Dr. Henry K. Smith, a Board certified radiologist and B-reader, read the October 1, 2013 CT as showing simple coal workers' pneumoconiosis of ½ profusion, p/q opacities and no large

opacity.  He noted small nodular opacities throughout the upper, mid and lower zones bilaterally, consistent with radiographic type P pneumoconiosis.  DX-22.

Dr. Robert D. Tarver read the October 1, 2013 CT scan as showing small 1-2mm nodules predominantly in the upper lobes. EX-5.  He found no large masses but did note minimal right apical scarring versus pseudoplaque. He concluded these findings were consistent with simple coal workers' pneumoconiosis.

Dr. Kathleen DePonte also read the October 1, 2013 CT scan.  CX-1.  She noted that the lung parenchyma shows interstitial nodularity in all lung zones predominating in the upper lobes and superior segments of the lower lobes bilaterally.  She noted that the nodules were mostly 2-3 mm in diameter which correspond with "q" type opacities.  She found the highest profusion to be in the right upper lung zone, with coalescence, which she indicated is a classic pattern for simple coal worker's pneumoconiosis.  She also noted a 17 mm peripheral large opacity consistent with a Category A large opacity of progressive massive fibrosis and complicated coal workers' pneumoconiosis, which is located in a region of coalescence, in the apical posterior segment of the right upper lobe.  She stated that the apical posterior segment is the classic location of the most severe findings of coal workers' pneumoconiosis which is attributed to diminished lymph flow and therefore decreased clearance of dust particles in this segment of the lung.  She also noted an 11mm large opacity more centrally in the right lung apex, which is also in a region of coalescence, as well as a peripheral 14mm large opacity in the left lung apex.  She found no significant emphysema, pleural plaques, or diffuse pleural thickening.  She concluded that her findings were classic findings of simple coal workers' pneumoconiosis, as well as progressive massive fibrosis indicating complicated coal workers' pneumoconiosis.  She also noted that the large opacities would measure similar in size, and greater than one centimeter, on a standard chest radiograph (x-ray).

As mentioned in the x-ray discussion above, both Dr. Tarver and Dr. DePonte also authored rehabilitative reports confirming their readings of the March 27, 2019 x-ray and the October 1, 2013 CT scan.  EX-7, CX-3.  In his February 1, 2022 report Dr. Tarver confirmed his opinion that the CT showed simple but not complicated coal workers' pneumoconiosis.  EX-7.  He also noted his disagreement with Dr. DePonte on whether the opacities seen in the right apex are small peripheral pseudoplaques, as he determined, or large opacities as described by Dr. DePonte.  Other than stating his disagreement with Dr. DePonte, he did not elaborate on his finding regarding pseudoplaques in the right apex.

In her December 23, 2021 rehabilitative report Dr. DePonte confirmed her finding of simple and complicated pneumoconiosis.  She compared the March 27, 2019 x-ray to the October 1, 2013 CT which she stated was a more sensitive and specific exam for coal workers' pneumoconiosis for the detection of both small and large opacities.  She found that in this case, the large opacities were more clearly visible on the CT as she noted in attached photos where she marked the location of the large opacities on photographs of the CT films.  She specifically noted that the "11mm opacity is clearly separate from the pleura and within a region of coalescence, a classic location of progressive massive fibrosis."  She also explained that some of the large opacities form peripherally, adjacent to the pleura and that the term pseudoplaque has been applied to these opacities as a descriptive term.  However, she determined that these are parenchymal

opacities like those that occur more centrally. She also attached photographs of the films in which she identified the location and size of the opacities.

After reviewing the three CT scan readings the undersigned finds Dr. DePonte's reading and explanation of her finding of complicated pneumoconiosis to be most persuasive. Her explanation of her findings, which was accompanied by photographs of the films pointing out the location of the large opacities, was very specific and thorough. Dr. Smith did not discuss the abnormalities in the right apex that were observed by the other radiologists who read the CT scans and x-rays. Dr. Tarver also failed to explain his finding of pseduoplaques in the right apex and the causes of this type of abnormality. Dr. DePonte explained that the large opacities she noted were visible on a background of coalescence and that her observation of the large opacities appeared in a location that is very typical for pulmonary massive fibrosis and specifically complicated pneumoconiosis. In her CT reading she also made an equivalency determination finding that the large opacities would appear similarly and over one centimeter on chest x-ray. The thoroughness of her findings and explanations is also bolstered by the fact that she had the opportunity to read all three of the offered x-rays and the October 1, 2013 CT scan, and was able to specifically compare the CT scan with the March 27, 2019 x-ray.

The undersigned has also considered the CT scan readings found in the treatment records. The records include a reading by Dr. Stephany Swart of the October 1, 2013 CT which noted multiple small pulmonary nodules measuring less than 5mm through both upper lung zones. DX-22. Less weight is given to this interpretation as there is no indication in the record that Dr. Swart has any special expertise in the interpretation of x-rays for the presence of simple and complicated pneumoconiosis nor that the x-ray was interpreted specifically for diagnosing pneumoconiosis. It is noted however, that her reading would be consistent with a diagnosis of simple pneumoconiosis.

After considering all of the CT scan evidence the undersigned finds the opinion of Dr. DePonte is entitled to the greatest weight. Her explanation of her findings, which was accompanied by photographs of the films pointing out the location of the large opacities, was very specific and thorough. She also compared her CT findings to the March 27, 2019 chest x-ray and made an equivalency determination regarding the CT findings, concluding that the CT opacities would appear greater than one centimeter on chest x-ray. Her thorough explanation which is accompanied by photographs identifying the large opacities is persuasive. Accordingly, the undersigned finds that the CT scan evidence supports a finding of complicated pneumoconiosis. The CT scan evidence, and specifically the reading of Dr. DePonte, which is given the most weight, supports the finding of complicated pneumoconiosis which is established by chest x-ray as noted above.

The medical opinions in the record have also been considered. Dr. David A. Celko performed the Department of Labor examination of the Claimant on June 21, 2018 as noted in his August 20, 2018 report. DX-32. Dr. Celko is Board-certified in Internal Medicine. He is licensed in the Commonwealth of Pennsylvania. According to his *curriculum vitae*, he has contributed to three publications and previously taught at the Community College of Allegheny County. Dr. Celko reviewed the miner's occupational history including his history of underground coal mine employment between November 1976 and February 2017 as well as Claimant's history of never smoking.

Dr. Celko considered the chest x-ray reading by Dr. DePonte showing simple coal workers' pneumoconiosis of 2/2 profusion and a Category A opacity of at least 17mm in the right lung apex, indicating complicated pneumoconiosis. He also considered a non-qualifying pulmonary function study and a non-qualifying blood gas test.

Dr. Celko diagnosed complicated coal worker's pneumoconiosis on the basis of the chest x-ray reading of Dr. DePonte which he noted showed q/q, 2/2 bilaterally in all zones and at least a 17mm Category A opacity in the right lung apex. He noted that the miner's pulmonary function studies were normal, and that arterial blood gas testing did not meet disability standards. He also diagnosed chronic bronchitis on the basis of the miner's reporting of a productive cough daily for the past 20 years and daily wheezing for the past several years. He concluded that the miner suffers from complicated coal workers' pneumoconiosis and is totally disabled from continuing his last coal mine job or equivalent employment, based on his diagnosis of complicated pneumoconiosis. He also determined that coal mine dust exposure is the major contributor to his pulmonary disability, noting that the miner never smoked cigarettes and had no other exposures that would cause complicated coal workers' pneumoconiosis.

In a supplemental report dated December 19, 2019, Dr. Celko responded to the Department of Labor claims examiner's request that he supplement his report after he reviewed the report and testing of Dr. Fino, as well as his review of additional evidence including x-ray readings of Dr. DePonte, Dr. Alexander and Dr. Fino, that had been offered into evidence. DX-28. Dr. Celko noted that he continued to believe that the Claimant's 39 years of coal mine employment had directly led to his development of complicated coal workers' pneumoconiosis. He stated that a preponderance of the most qualified chest x-ray interpretations that he considered were positive for complicated coal workers' pneumoconiosis and that the treatment records document the presence of pulmonary nodules.

Dr. Celko was deposed on May 28, 2021, at which time he elaborated on his credentials and confirmed the opinions as stated in his reports. EX-3. He acknowledged Dr. DePonte's initial x-ray reading which noted "chest x-ray to exclude malignancy." *Id.* at 10. He noted that radiologists often consider differential diagnoses to make sure they are not missing anything when reading a chest x-ray. He also stated that the apex of the lung is the area that you typically see complicated coal workers' pneumoconiosis. *Id.* at 12-13. Dr. Celko testified that Claimant's spirometry was within normal limits and that the arterial blood gas testing showed a normal response to exercise. *Id.* at 16-17. Accordingly, these tests did not show pulmonary limitations to perform manual labor. *Id.* at 17. However, in this case he noted that complicated pneumoconiosis was present, and he stated that it was his understanding that this diagnosis carried a presumption of disability. *Id.* at 17-18. He agreed that it is unusual to have complicated pneumoconiosis with normal testing but noted "we're starting to see more of that happen." *Id.* at 18. He explained that his diagnosis of complicated pneumoconiosis was based on Dr. DePonte's finding that large opacities were present on the chest x-ray. *Id.* at 22-23.

Dr. Gregory J. Fino examined the Claimant on April 9, 2019, as stated in his May 30, 2019 report. DX-24. Dr. Fino is a B-reader and is Board-certified in internal medicine with a subspecialty in pulmonary diseases. He is presently employed by the Clinical and Occupational Pulmonary Associates, LLC, and at Critical Care and Pulmonary Associates, PC, in St. Clair Hospital in Pittsburgh, Pennsylvania. He is also the Director of the Critical Medicine Section at

St. Clair Hospital. He was appointed a Teaching Instructor in the Division of Pulmonary Disease at the University of Pittsburgh and has published several articles on pulmonary topics. Dr. Fino reviewed the Claimant's occupational history which included underground coal mine employment for 39 years, with most of his work as a roof bolter. He also noted that his last year of coal mine employment was as a "parts runner." He noted that the miner's last job as a parts runner required very heavy labor about 50% of the time, heavy labor, 25% of the time and moderate labor, 25% of the time. Dr. Fino also noted that the miner never smoked but did chew snuff for about 10 years.

Dr. Fino recorded that the miner has had breathing problems for about ten years which are getting progressively worse, but which do not interfere with his usual daily activities. He considered a chest x-ray which he interpreted as positive for simple clinical pneumoconiosis of 1/0, q/q opacities in the upper 4 lung zones. He also stated that he noted a coalescence of small opacities with margins remaining visible at the right apex. He also considered a non-qualifying pulmonary function study and a non-qualifying arterial blood gas study.

Dr. Fino also reviewed certain medical records as noted in his report. He concluded that simple coal workers' pneumoconiosis is present and that there is coalescence at the right apex but he indicated that he did not see evidence of complicated pneumoconiosis. He also determined that the spirometry and lung volumes as well as oxygenation studies were normal. He concluded that there is no evidence of pulmonary impairment or disability.

Dr. Fino was deposed on September 7, 2021. EX-4. He elaborated on his credentials as a pulmonologist and confirmed the opinions stated in his report. He noted that he has seen the number of cases of both simple and complicated pneumoconiosis significantly increase in the last ten years. *Id*. at 6. Regarding the testing done on Claimant in 2013, 2017 and 2018 he noted that all of the studies were normal, without obstruction or restriction and therefore the studies did not reveal any ventilatory impairment. *Id.* at 9. He stated that arterial blood gas testing performed by Dr. Celko was also normal. Therefore, he opined that there was no impairment in oxygen transfer. *Id.* He acknowledged that the miner had a history of sinus surgery, as well as hospitalization for COPD and asthma, however he noted that there was no obstruction seen on pulmonary testing. *Id*. at 9-10. He reviewed the x-ray readings of Drs. DePonte, Tarver and Adcock. He stated that if he considered Dr. Adcock's reading of the April 9, 2019 x-ray rather than his own, he would still diagnose simple, rather than complicated, pneumoconiosis. *Id*. at 13. Dr. Fino testified that the miner's reported shortness of breath could be related to different causes, but in this case the pulmonary testing was normal. *Id*. at 14. Dr. Fino admitted that he did not believe the miner has lung cancer, despite the fact that Dr. DePonte had raised the question of malignancy. *Id*. at 17. Dr. Fino also confirmed that his opinion on whether the miner had complicated pneumoconiosis is based primarily on the radiographic evidence*. Id*. He also admitted that even if the miner had simple pneumoconiosis in 2013 at the time the CT scan was taken, it could have progressed to complicated pneumoconiosis by 2018. *Id*. at 18.

After reviewing all of the medical opinion evidence in the record the undersigned finds that the most well-reasoned and documented opinion is that of Dr. Celko which supports the presence of complicated coal workers' pneumoconiosis. Dr. Celko's diagnosis of complicated pneumoconiosis is documented by the positive x-ray reading of Dr. DePonte, who interpreted the May 15, 2018 x-ray as positive for complicated pneumoconiosis. Dr. Celko also considered the

positive reading finding complicated pneumoconiosis performed by Dr. Alexander, as well as Dr. Tarver's reading of simple, but not complicated pneumoconiosis. Dr. Celko's diagnosis of complicated pneumoconiosis on the basis of his consideration of the x-ray readings of the May 15, 2018 x-ray is also consistent with the undersigned's finding that the totality of the x-ray evidence supports the presence of complicated pneumoconiosis. Dr. Celko also had the opportunity to examine the Claimant and considered a thorough occupational and smoking history. He considered the miner's normal pulmonary function testing, but determined he was disabled on the basis of his diagnosis of complicated coal workers' pneumoconiosis. Less weight is given to the opinion of Dr. Fino who found simple but not complicated pneumoconiosis, primarily on his consideration of the radiographic evidence, as his opinion is inconsistent with my finding regarding the totality of the x-ray evidence.

After considering all the evidence of record, the undersigned finds that Claimant has established the existence of complicated coal workers' pneumoconiosis. As discussed above great weight is given to the x-ray readings of the dually qualified radiologist, Dr. DePonte who had the opportunity to interpret all three of the x-rays offered into evidence, as well as the October 1, 2013 CT scan. She explained her findings of complicated pneumoconiosis in a thorough and well-reasoned report, and specifically compared and contrasted her findings on the March 27, 2019 x-ray with the October 1, 2013 CT scan. Her finding of complicated pneumoconiosis is also supported by the reading of the dually qualified radiologist, Dr. Alexander regarding the May 15, 2018 x-ray and the medical opinion of Dr. Celko based on his examination of the Claimant and his consideration of the readings of the May 15, 2018 x-ray. The treatment records, including readings of x-rays and a CT scan, have also been considered but greater weight is given to the readings of the dually qualified radiologists. Based on the totality of the evidence the undersigned finds that the Claimant has established the presence of complicated coal workers' pneumoconiosis.

## C. Cause of Pneumoconiosis

Once the miner is found to have pneumoconiosis, he must show that it arose, at least in part, out of coal mine employment. 20 C.F.R. § 718.203(a) (2001). If a miner who is suffering from pneumoconiosis was employed for ten years or more in the coal mines, there is a rebuttable presumption that the pneumoconiosis arose out of such employment. 20 C.F.R. § 718.203(b) (2001). If a miner who is suffering from pneumoconiosis was employed less than ten years in the nation's coal mines, it shall be determined that such pneumoconiosis arose out of coal mine employment only if competent evidence establishes such a relationship. 20 C.F.R. § 718.203(c) (2001).[19]

In *W.L.C. v. Westmoreland Coal Co.*, BRB No. 06-0927 BLA (June 26, 2007) (unpub.), the Board cited to *The Daniels Co. v. Mitchell*, 479 F.3d 321, 337 (4th Cir. 2007) stating that, if it is determined that the miner suffers from complicated pneumoconiosis under 20 C.F.R. § 718.304, then the fact-finder must assess whether the large opacities were caused by exposure to coal dust. In this vein, the Board held that the provisions at 20 C.F.R. § 718.203 apply and a miner with ten

---

[19] Specifically, the burden of proof is met under § 718.203(c) when "competent evidence establish[es] that his pneumoconiosis is significantly related to or substantially aggravated by the dust exposure of his coal mine employment." *Shoup v. Director, OWCP*, 11 B.L.R. 1-110, 1-112 (1987).

or more years of coal mine employment is entitled to a rebuttable presumption that his complicated pneumoconiosis arose from such employment.

As discussed above, the undersigned finds Claimant had more than ten years of coal mine employment, and therefore receives the rebuttable presumption that his pneumoconiosis arose out of coal mine employment. *See* Section I(A), *supra.* The record does not contain any credible contrary evidence that establishes Claimant's complicated pneumoconiosis did not arise at least in part out of his coal mine employment. Accordingly, the undersigned finds Claimant has met his burden of proof in establishing that his complicated pneumoconiosis arose from coal mine employment.

As Claimant has established the presence of complicated pneumoconiosis arising out of his coal mine employment, he is therefore entitled to the irrebuttable presumption under 20 C.F.R. §718.304 that he is totally disabled due to pneumoconiosis.

## ONSET DATE

If a claimant establishes that he has complicated pneumoconiosis according to 30 U.S.C. § 921(c)(3), the onset date is the month during which complicated pneumoconiosis was first diagnosed. *Truitt v. North American Coal* Corp., 2 B.L.R. 1 199, 1 203 (1979). In the present case, the undersigned has given the greatest weight to the opinion of the dually qualified radiologist, Dr. DePonte, who interpreted all three of the x-rays and the October 1, 2013 CT scan as positive for complicated pneumoconiosis. The earliest of her readings finding complicated pneumoconiosis is the October 1, 2013 CT scan. Her reading of this CT scan notes a 17 mm peripheral large opacity consistent with a Category A large opacity of progressive massive fibrosis and complicated coal workers' pneumoconiosis, which is located in a region of coalescence, in the apical posterior segment of the right upper lobe. She stated that the apical posterior segment is the classic location of the most severe findings of coal workers' pneumoconiosis which is attributed to diminished lymph flow and therefore decreased clearance of dust particles in this segment of the lung. She also noted an 11mm large opacity more centrally in the right lung apex, which is also in a region of coalescence, as well as a peripheral 14mm large opacity in the left lung apex. She concluded that her findings were classic findings of simple coal workers' pneumoconiosis, as well as progressive massive fibrosis indicating complicated coal workers' pneumoconiosis. She also noted that the large opacities would measure similar in size, and greater than one centimeter, on a standard chest radiograph (x-ray).

In *Truitt*, the miner was entitled to benefits from the first month the evidence established the presence of complicated pneumoconiosis, notwithstanding the fact that the study was interpreted as positive two years after it was taken. Accordingly, the undersigned finds that Claimant is entitled to benefits as of October 2013, on the basis of Dr. DePonte's interpretation of the October 1, 2013 CT scan which is consistent with the x-ray interpretations of Dr. DePonte and also the undersigned's finding that the totality of the evidence is positive for complicated coal workers' pneumoconiosis.

**ATTORNEY FEES**

The award of legal fees, under the Act, is permitted only in cases in which the claimant is found to be entitled to the receipt of benefits. 33 U.S.C. §§ 928, 932. As benefits are awarded in this case, the Act permits the awarding of legal fees for the representation services rendered to Claimant in pursuit of his claim.

**CONCLUSION**

In conclusion, Claimant has established the presence of complicated pneumoconiosis arising out of his coal mine employment. Therefore, he is entitled to the irrebuttable presumption of total disability due to pneumoconiosis under 20 C.F.R. § 718.304. Claimant is therefore entitled to benefits.

**DREW A. SWANK**
Administrative Law Judge

**IMPORTANT NOTICE ABOUT FILING APPEALS**

**The Notice of Appeal Rights has changed because the Department of Labor launched an upgraded system for online filing on Monday, December 7, 2020. The previous online filing system permanently shut down at 5:00 pm Eastern Standard Time (EST) on Thursday, December 3, 2020.**

**If you plan to electronically file your appeal online on or after December 7, 2020, allow extra time to register and learn how to file an appeal under the upgraded system.**

**NOTICE OF APPEAL RIGHTS**

If you are dissatisfied with the Administrative Law Judge's decision, you may file an appeal with the Benefits Review Board ("Board"). To be timely, your appeal must be filed with the Board within thirty (30) days from the date on which the Administrative Law Judge's decision is filed with the district director's office. *See* 20 C.F.R. §§ 725.478 and 725.479.

*Filing Your Appeal Online*

The U.S. Department of Labor began using an upgraded eFile/eServe system (EFS) at https://efile.dol.gov on Monday, December 7, 2020. If you use the website link https://dol-appeals.entellitrak.com to access the Board's previous Electronic File and Service Request (EFSR) system, you will be directed to EFS. Information on how to register for EFS, as well as

user guides, video tutorials, and FAQs, is available at https://efile.dol.gov/support.

Registration with EFS is a two-step process. First, all users, including those who were registered users of the previous EFSR system, will need to create an account at login.gov (if they do not have one already). Second, users who were not registered with the EFSR system will then have to create a profile with EFS using their login.gov username and password. If you were a registered EFSR system user you will not have to create a new profile for EFS. All users can learn how to file an appeal to the Board using EFS by consulting the written guide at https://efile.dol.gov/system/files/2020-11/file-new-appeal-brb.pdf and the video tutorial at https://efile.dol.gov/support/boards/new-appeal-brb.

**BE SURE TO REGISTER IN ADVANCE!** *The deadline for filing an appeal in a Black Lung Benefits Act case is jurisdictional and cannot be waived.* We recommend that you set up your EFS profile before you need to file so you will be able to file your appeal on time. It should take you less than an hour to set up your EFS profile, but you should allow more time to review the user guides and training materials. If you have trouble setting up your profile, you can find contact information for login.gov and EFS at https://efile.dol.gov/contact.

If you file your appeal online, you do not need to also file paper copies. The Board will electronically serve a copy of the notice of appeal on the district director who filed the decision or order being appealed and the Associate Solicitor for Black Lung and Longshore Legal Services. **You are still responsible for serving the notice of appeal on the other parties to the case.** Proof of service of the notice of appeal on the other parties must be included with the notice of appeal. *See* 20 C.F.R. § 802.204.

*Filing Your Appeal by Mail*

You may, in the alternative, file your appeal using regular mail to this address:

U.S. Department of Labor
Benefits Review Board
ATTN: Office of the Clerk of the Appellate Boards
200 Constitution Ave. NW
Washington, DC 20210-0001

If filing your appeal by regular mail, you must serve a copy of the appeal letter on the district director who filed the decision or order being appealed and on all other parties. Proof of service of the notice of appeal on the district director and other parties must be included with the notice of appeal. *See* 20 C.F.R. § 802.204.

You must also send a copy of the appeal letter to:

Associate Solicitor
Black Lung and Longshore Legal Services
U.S. Department of Labor
200 Constitution Ave. NW

Room N-2119
Washington, DC 20210
*See* 20 C.F.R. § 725.481.

*Access to EFS for Non-Appealing Parties in a Case*

If you are a party other than the party that is appealing, you may request access to the appeal by obtaining a login.gov account and creating an EFS profile. Written directions and a video tutorial on how to request access to an appeal are located at https://efile.dol.gov/support/boards/request-access-an-appeal.

*Filing Date*

Your appeal is considered filed on the date the Office of the Clerk of the Board receives it, unless you send the appeal by mail and the Board determines that the U.S. Postal Service postmark, or other reliable evidence establishing the mailing date, may be used. *See* 20 C.F.R. § 802.207.

If an appeal is not timely filed with the Board, the Administrative Law Judge's decision becomes the final order of the Secretary of Labor pursuant to 20 C.F.R. § 725.479.

*After An Appeal Is Filed*

After an appeal is filed, the Board will issue a notice to all parties acknowledging receipt of the appeal and advising them as to any further action needed. Once an appeal is filed, all inquiries and correspondence should be directed to the Board.

*Service by the Board*

Registered users of EFS will be electronically served with Board-issued documents via EFS; they will not be served by regular mail. If you file your appeal by regular mail, you will be served with Board-issued documents by regular mail; however, on or after December 7, 2020, you may opt into electronic service by establishing an EFS account, even if you initially filed your appeal by regular mail.

**SERVICE SHEET**

Case Name: **BRAHAM_JAMES_ALLEN_v_ICG_TYGART_VALLEY_LL_**

Case Number: **2020BLA05528**

Document Title: **Decision and Order Awarding Benefits**

I hereby certify that a copy of the above-referenced document was sent to the following this 18th day of April, 2022:

**Jami Q. Tanski**
Paralegal Specialist

Associate Solicitor
U. S. Department of Labor
Division of Black Lung Benefits
Suite N-2117, FPB
200 Constitution Ave., N.W.
WASHINGTON DC 20210
*{Electronic - Regular Email}*

Karen M Barefield, Esq.
barefield.karen@dol.gov
U.S. Department of Labor
Office of the Regional Solicitor
201 12th Street, South - Suite 401
ARLINGTON VA 22202
*{Electronic - Regular Email}*

Associate Regional Solicitor
U.S. Department of Labor
201 12th Street South Suite 401
ARLINGTON VA 22202-5450
*{Electronic - Regular Email}*

William S Mattingly, Esq.
wmattingly@jacksonkelly.com
JACKSON KELLY, PLLC
100 West Main Street - Suite 700
LEXINGTON KY 40507
*{Electronic - Regular Email}*

OWCP Director
District Director
United States Department of Labor
OWCP_DCMWC
200 Constitution Ave., NW
RM N3464
WASHINGTON DC 20210
*{Hard Copy - Regular Mail}*

Lynda S Glagola
lynda@lungsatworkpa.org
LUNGS AT WORK
4000 Waterdam Plaza - Suite 240
MCMURRAY PA 15317
*{Electronic - Regular Email}*

**U.S. Department of Labor**    Benefits Review Board
200 Constitution Ave. NW
Washington, DC 20210-0001



BRB Nos. 22-0328 BLA
and 22-0328 BLA-A

JAMES ALLEN BRAHAM )
)
    Claimant-Respondent )
    Cross-Petitioner )
)
  v. )
)
ICG TYGART VALLEY, LLC )
)
  and )
)
ARCH COAL INCORPORATED )
)
    Employer/Carrier- )
    Petitioners )
    Cross-Respondents )
)
DIRECTOR, OFFICE OF WORKERS' )
COMPENSATION PROGRAMS, UNITED )
STATES DEPARTMENT OF LABOR )
)
    Party-in-Interest )

**NOT-PUBLISHED**

DATE ISSUED: 09/21/2023

DECISION and ORDER

Appeal and Cross-Appeal of the Decision and Order Awarding Benefits of Drew A. Swank, Administrative Law Judge, United States Department of Labor.

Leonard Stayton, Inez, Kentucky, for Claimant.

William S. Mattingly (Jackson Kelly PLLC), Lexington, Kentucky, for Employer.

Jessica E. Mathis (Seema Nanda, Solicitor of Labor; Barry H. Joyner, Associate Solicitor; Andrea J. Appel, Counsel for Administrative Appeals), Washington, D.C., for the Director, Office of Workers' Compensation Programs, United States Department of Labor.

Before: GRESH, Chief Administrative Appeals Judge, BOGGS and ROLFE, Administrative Appeals Judges.

PER CURIAM:

Employer appeals, and Claimant cross-appeals, Administrative Law Judge (ALJ) Drew A. Swank's Decision and Order Awarding Benefits (2020-BLA-05528) rendered on a claim filed on February 5, 2018, pursuant to the Black Lung Benefits Act, as amended, 30 U.S.C. §§901-944 (2018) (Act).

The ALJ credited Claimant with thirty-nine years and eleven months of underground coal mine employment. He found Claimant established complicated pneumoconiosis and therefore invoked the irrebuttable presumption of total disability due to pneumoconiosis at Section 411(c)(3) of the Act, 30 U.S.C. §921(c)(3); 20 C.F.R. §718.304. Further, he found Claimant's complicated pneumoconiosis arose out of his coal mine employment and awarded benefits. 20 C.F.R. §718.203(b).

On appeal, Employer argues the ALJ erred in excluding Dr. Kim's negative reading of a February 21, 2017 x-ray. It further argues the ALJ erred in finding Claimant established complicated pneumoconiosis. Claimant responds in support of the award of benefits. The Director, Office of Workers' Compensation Programs (the Director), has filed a limited response urging rejection of Employer's evidentiary argument. On cross-appeal, Claimant argues the ALJ erred by admitting Dr. Smith's negative interpretation of an October 1, 2013 computed tomography (CT) scan. Neither Employer nor the Director have filed a response to Claimant's cross-appeal.[1]

The Benefits Review Board's scope of review is defined by statute. We must affirm the ALJ's Decision and Order if it is rational, supported by substantial evidence, and in

---

[1] We affirm, as unchallenged on appeal, the ALJ's finding Claimant established thirty-nine years and eleven months of underground coal mine employment. *See Skrack v. Island Creek Coal Co.*, 6 BLR 1-710, 1-711 (1983); Decision and Order at 5.

accordance with applicable law.[2]  33 U.S.C. §921(b)(3), as incorporated by 30 U.S.C. §932(a); *O'Keeffe v. Smith, Hinchman & Grylls Assocs., Inc.*, 380 U.S. 359, 361-62 (1965).

## Evidentiary Issue

Employer argues the ALJ erred in excluding Dr. Kim's interpretation of a February 21, 2017 x-ray as being submitted in excess of the evidentiary limitations.  Employer's Brief at 17-18.

An ALJ exercises broad discretion in resolving procedural and evidentiary matters. *See Dempsey v. Sewell Coal Corp.*, 23 BLR 1-47, 1-63 (2004) (en banc); *Clark v. Karst-Robbins Coal Co*., 12 BLR 1-149, 1-153 (1989) (en banc).  Thus a party seeking to overturn an ALJ's disposition of a procedural or evidentiary issue must establish the ALJ's action represented an abuse of discretion.  *V.B.* [*Blake*] *v. Elm Grove Coal Co.*, 24 BLR 1-109, 1-113 (2009).

The regulations set limits on the amount of specific types of medical evidence the parties can submit into the record.  20 C.F.R. §725.414.  In support of their affirmative cases, each party may submit no more than two chest x-ray interpretations and, in rebuttal of the case presented by the opposing party, no more than one interpretation of each x-ray submitted by the opposing party and the Director.  20 C.F.R. §725.414(a)(2), (3).  Medical evidence submitted in excess of the limitations "shall not be admitted into the hearing record in the absence of good cause."  20 C.F.R. §725.456(b)(1).  However, the regulations further provide that "[n]otwithstanding the limitations" set forth under 20 C.F.R. §725.414(a)(2), (3), "any record of a miner's hospitalization for a respiratory or pulmonary or related disease, or medical treatment for a respiratory or pulmonary or related disease, may be received into evidence."  20 C.F.R. §725.414(a)(4).

Employer designated Dr. Adcock's interpretation of an April 9, 2019 x-ray and Dr. Tarver's interpretation of a March 2, 2019 x-ray as its affirmative evidence.  Employer's Evidence Summary Form.  It further designated Director's Exhibit 22, which contains Dr. Kim's interpretation of a February 21, 2017 x-ray, as a treatment record under 20 C.F.R. §725.414(a)(4).  *Id*.  Because Claimant did not submit a reading of the February 21, 2017

---

[2] This case arises within the jurisdiction of the United States Court of Appeals for the Fourth Circuit because Claimant performed his coal mine employment in West Virginia.  *See Shupe v. Director, OWCP*, 12 BLR 1-200, 1-202 (1989) (en banc); Director's Exhibit 3.

x-ray, Employer could not submit Dr. Kim's interpretation as rebuttal evidence.[3]  20 C.F.R. §725.414(a)(3)(ii); Claimant's Evidence Summary Form.

At the September 10, 2021 hearing, Claimant objected to the admission of Dr. Kim's February 21, 2017 x-ray reading because it was created for purposes of the litigation of Claimant's state workers' compensation claim and thus, he asserted, it is not a treatment record and is subject to the evidentiary limitations at 20 C.F.R. §725.414(a)(3).  Hearing Tr. at 7.  Because Employer had already designated its full complement of affirmative x-ray evidence and it could not designate the interpretation as rebuttal evidence, Claimant argued submitting the reading exceeds the evidentiary limitations.  *Id.* at 7-8.  In support of this argument, Claimant proffered an affidavit from Amy Livengood, Program Coordinator of the North Central West Virginia Black Lung Program, the organization that performed the x-ray.  Claimant's Exhibit 4 at 1; Hearing Tr. at 7.  She stated the x-ray was developed "for the purpose of litigating [Claimant's] state occupational disease claims, not for treatment purposes."  *Id.*  Employer acknowledged the evidence was initially developed as part of Claimant's state workers' compensation claim, but argued it nonetheless constitutes a treatment record because it was referenced in Claimant's other treatment records.  Hearing Tr. at 9-10.

The ALJ sustained Claimant's objection and excluded Dr. Kim's x-ray interpretation because it is not a record of Claimant's hospitalization or medical treatment, but rather was prepared specifically for purposes of the litigation of his state claim.  20 C.F.R. §725.414(a)(4); Decision and Order at 2 n.2; Hearing Transcript at 11-12.

In challenging this ruling, Employer asserts the reading converted to a treatment record because it was later considered by other physicians in the course of Claimant's treatment.  Employer's Brief at 17-18.  We are not persuaded by Employer's argument and hold the ALJ did not abuse his discretion in finding Dr. Kim's x-ray interpretation is not a treatment record because Dr. Kim did not interpret the x-ray for the purpose of treating Claimant or during a hospitalization.  *See Woodward v. Director, OWCP*, 991 F.2d 314, 321 (6th Cir. 1993); *Dempsey*, 23 BLR at 1-61 (pulmonary function and blood gas studies administered for purposes of litigation of a state claim "do not fall within the exception for hospitalization or treatment records"); 20 C.F.R. §725.414(a)(4); Director's Reply at 4.

Further, Employer does not dispute that it submitted its full complement of x-ray interpretations under 20 C.F.R. §725.414(a)(3) and does not allege good cause exists for

---

[3] Employer designated Dr. Tarver's reading of a May 15, 2018 x-ray in rebuttal of Dr. DePonte's reading of that x-ray from the Department of Labor-sponsored pulmonary evaluation of Claimant.  Employer's Evidence Summary Form.

4

the admission of Dr. Kim's x-ray interpretation in excess of the evidentiary limitations.  20 C.F.R. §725.456(b)(1).  Thus, we discern no abuse of discretion in the ALJ's decision to exclude Dr. Kim's x-ray interpretation.  *See Blake*, 24 BLR at 1-113; *Dempsey*, 23 BLR at 1-61; Decision and Order at 2 n.2; Hearing Transcript at 11-12.

### Complicated Pneumoconiosis

Section 411(c)(3) of the Act, 30 U.S.C. §921(c)(3), provides an irrebuttable presumption that a miner is totally disabled due to pneumoconiosis if he suffers from a chronic dust disease of the lung which: (a) when diagnosed by x-ray, yields one or more opacities greater than one centimeter in diameter that would be classified as Category A, B, or C; (b) when diagnosed by biopsy or autopsy, yields massive lesions in the lung; or (c) when diagnosed by other means, would be a condition that could reasonably be expected to yield a result equivalent to (a) or (b).  *See* 20 C.F.R. §718.304.  In determining whether Claimant has invoked the irrebuttable presumption, the ALJ must weigh all evidence relevant to the presence or absence of complicated pneumoconiosis.  *See Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 283 (4th Cir. 2010); *E. Assoc. Coal Corp. v. Director, OWCP* [*Scarbro*], 220 F.3d 250, 255-56 (4th Cir. 2000); *Melnick v. Consolidation Coal Co.*, 16 BLR 1-31, 1-33 (1991) (en banc).

The ALJ found the x-ray, CT scan, and medical opinion evidence supports a finding of complicated pneumoconiosis, and when weighed together the evidence establishes the disease.[4]  20 C.F.R. §718.304(a), (c); Decision and Order at 16, 18, 20-21.

### 20 C.F.R. §718.304(a) – X-Rays

The ALJ considered seven interpretations of three x-rays dated May 15, 2018, March 27, 2019, and April 9, 2019.  Decision and Order at 12-16; Director's Exhibits 18, 20, 21, 23 at 126; Claimant's Exhibit 5; Employer's Exhibits 2, 6.  He found all the physicians who interpreted the x-rays are dually-qualified as B readers and Board-certified radiologists.  Decision and Order at 14.

Drs. DePonte and Alexander read the May 15, 2018 x-ray as positive for complicated pneumoconiosis with Category A large opacities, while Dr. Tarver read it as negative for the disease.  Director's Exhibits 18, 21, 23 at 126.  Dr. DePonte read the March 27, 2019 x-ray as positive for complicated pneumoconiosis with Category A large opacities, while Dr. Tarver read it as negative for the disease.  Claimant's Exhibit 5; Employer's Exhibit 6.  Dr. DePonte further read the April 9, 2019 x-ray as positive for

---

[4] The ALJ found there is no biopsy evidence of record.  20 C.F.R. §718.304(b); Decision and Order at 16.

complicated pneumoconiosis, Category A, while Dr. Adcock read it as negative for the disease.  Director's Exhibit 20; Employer's Exhibit 2.

The ALJ found the May 15, 2018 x-ray positive for complicated pneumoconiosis because a greater number of dually-qualified radiologists read it as positive than negative. Decision and Order at 14.  He further found the respective readings of March 27, 2019 and April 9, 2019 x-rays in equipoise because an equal number of dually-qualified radiologists read each x-ray as positive compared to negative for the disease.  *Id.*  Because one x-ray is positive for complicated pneumoconiosis and the readings of the remaining x-rays are in equipoise, he found the preponderance of the x-ray evidence supports a finding of complicated pneumoconiosis.  *Id.* at 15.

Employer argues the ALJ erred in finding the May 15, 2018 x-ray positive for complicated pneumoconiosis because he performed a "head-count" to resolve the conflict in the evidence.  Employer's Brief at 17.  We disagree.  The ALJ did not merely count heads, but conducted both a qualitative and quantitative analysis of each x-ray, taking into consideration the physicians' radiological qualifications.  *See Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 256 (4th Cir. 2016); Decision and Order at 14.  He then weighed all the x-rays together to conclude that a preponderance establishes complicated pneumoconiosis, as one is positive and the readings of two are in equipoise.[5]  Decision and Order at 14.

Additionally, Employer argues the ALJ erred by failing to assign greater weight to Dr. Tarver's readings due to his academic credentials.  Employer's Brief at 7-8.  Contrary to Employer's contention, while an ALJ may rely on a physician's additional qualifications when considering their readings, the ALJ is not required to do so.  *See Harris v. Old Ben Coal Co.*, 23 BLR 1-98, 1-114 (2006) (en banc), *aff'd on recon.*, 24 BLR 1-13 (2007) (en banc); *Worhach v. Director, OWCP*, 17 BLR 1-105, 1-108 (1993).  The ALJ summarized the non-radiological qualifications of all the physicians and permissibly found they are equally qualified.  *Worhach*, 17 BLR at 1-108; Decision and Order at 12-13.

Employer also challenges the ALJ's consideration of Claimant's treatment record x-rays.  Employer's Brief at 8-13.  The ALJ weighed Dr. Stover's readings of the February 21, 2017 and March 30, 2019 x-rays, Dr. Laplante's reading of the February 18, 2019 x-

---

[5] Employer argues the ALJ erred by considering Dr. DePonte's supplemental report and CT scan reading in conjunction with her x-ray readings.  Employer's Brief at 11-12. Because the ALJ found the x-rays establish complicated pneumoconiosis based on the physicians' qualifications, we need not address this argument.  *Larioni v. Director, OWCP*, 6 BLR 1-1276, 1-1278 (1984).

ray, and Dr. Hirsch's reading of the March 27, 2019 x-ray. Decision and Order at 16. None contain a diagnosis of complicated pneumoconiosis. Director's Exhibits 23 at 123; 26 at 10, 45, 54. Contrary to Employer's argument, the ALJ permissibly[6] found these readings entitled to less weight[7] because "there is no indication in the record that the physicians reading these x-rays have any specific expertise in the interpretation of x-rays for the presence of simple or complicated pneumoconiosis."[8] Decision and Order at 16; *see Addison*, 831 F.3d at 256; *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998); *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 441 (4th Cir. 1997); *Marra v.*

---

[6] Because the ALJ provided a valid reason for giving less weight to Claimant's treatment record x-ray interpretations, we need not address Employer's remaining arguments regarding the weight accorded to this evidence. *See Kozele v. Rochester & Pittsburgh Coal Co.*, 6 BLR 1-378, 1-382 n.4 (1983); Employer's Brief at 12-13. We note that the physicians who provided the treatment x-ray readings were radiologists while the physicians to whom the ALJ gave greater credit were dually-qualified (i.e., they were Board-certified radiologists and B-readers, so in addition to being radiologists, they had specific qualifications with respect to reading x-rays for pneumoconiosis). Employer's Brief at 11. Moreover, the ALJ did not find the interpretations in Claimant's treatment records were not credible; rather he gave them less weight than the dually-qualified physicians' interpretations. Decision and Order at 16.

[7] Contrary to Employer's argument, the ALJ was not required to credit the treatment record x-ray interpretations because the physicians who read the x-rays are Claimant's treating physicians. Employer's Brief at 13-14. An ALJ may assign controlling weight to a treating physician's opinion based on the nature and duration of the physician's relationship with the miner and the frequency and extent of the treatment. 20 C.F.R. §718.104(d); *see Soubik v. Director, OWCP*, 366 F.3d 226, 235 (3d Cir. 2004). The weight given to a treating physician's opinion, however, "shall also be based on the credibility of the physician's opinion in light of its reasoning and documentation, other relevant evidence, and the record as a whole." 20 C.F.R. §718.104(d)(5); *see Eastover Mining Co. v. Williams*, 338 F.3d 501, 513 (6th Cir. 2002) (treating physicians get "the deference they deserve based on their power to persuade").

[8] It is unclear whether the ALJ took judicial notice of the treating physicians' credentials as radiologists. However, any error is harmless as, within his discretion, he permissibly gave greater weight to the *dually-qualified* readers specifically because they possessed greater relevant qualifications. *See Adkins v. Director, OWCP*, 958 F.2d 49, 52 (4th Cir. 1992); *Larioni*, 6 BLR at 1-1278. This would remain the case whether or not he took specific notice that, as Employer contends, the treating physicians were Board-certified radiologists. Employer's Brief at 11.

7

*Consolidation Coal Co.*, 7 BLR 1-216, 1-218-19 (1984) (ALJ has discretion to determine the weight to accord diagnostic testing that is silent on the existence of pneumoconiosis).

As Employer raises no further argument regarding the ALJ's weighing of the x-ray evidence and it is supported by substantial evidence, we affirm the ALJ's finding the x-ray evidence supports a finding of complicated pneumoconiosis.[9]  20 C.F.R. §718.304(a); Decision and Order at 16.

### 20 C.F.R. §718.304(c) – CT Scans

Employer also argues the ALJ erred in weighing the CT scan evidence. Employer's Brief at 14-17, 19-20.

An ALJ has the discretion to weigh the evidence and draw inferences therefrom. *Underwood v. Elkay Mining, Inc.*, 105 F.3d 946, 949 (4th Cir. 1997); *Maddaleni v. The Pittsburg & Midway Coal Mining Co.*, 14 BLR 1-135, 140 (1990).  The Board cannot disturb factual findings that are supported by substantial evidence even if it might reach a different conclusion if it were reviewing the evidence de novo. *Consolidation Coal Co. v. Held*, 314 F.3d 184, 189 (4th Cir. 2002).  The ALJ considered four readings of Claimant's October 1, 2013 CT scan.  Decision and Order at 16-18.  Dr. DePonte read the CT scan as positive for complicated pneumoconiosis, while Drs. Smith, Tarver, and Swart read it as negative for the disease.  Director's Exhibit 22 at 17-19; Claimant's Exhibit 1; Employer's Exhibit 5.  The ALJ found Drs. Smith and Tarver failed to adequately explain their findings and gave Dr. Swart's reading no weight because her credentials are not in the record. Decision and Order at 18.  He credited Dr. DePonte's reading as reasoned and documented, and thus found the CT scan evidence supports a finding of complicated pneumoconiosis. *Id.*

Employer argues the ALJ erred in crediting Dr. DePonte's interpretation of the October 1, 2013 CT scan over Dr. Tarver's interpretation.  Employer's Brief at 19-20.  We disagree.

Dr. DePonte opined the CT scan shows a region of coalescence in the right upper lobe containing a seventeen-millimeter opacity consistent with a Category A large opacity of progressive massive fibrosis or complicated pneumoconiosis.  Claimant's Exhibit 1.  She also observed a large eleven-millimeter opacity more centrally in the right lung apex, as

---

[9] Employer's argument that the ALJ should have found the treatment record x-rays bolster Dr. Tarver's x-ray readings is a request to reweigh the evidence, which we are not empowered to do.  *Anderson v. Valley Camp of Utah, Inc.*, 12 BLR 1-111, 1-113 (1989); Employer's Brief at 7-8.

well as a large fourteen-millimeter opacity in the left lung apex. *Id.* Specifically, she explained that the "apical posterior segment is the classic location of the most severe findings of coal workers' pneumoconiosis[, because of the] diminished lymph flow and therefore decreased clearance of dust particles in this segment of the lung." *Id.* She further opined there is no significant emphysema, and no pleural plaques, diffuse pleural thickening, mediastinal or hilar adenopathy. *Id.* Finally, she diagnosed progressive massive fibrosis indicating complicated pneumoconiosis and opined that the large opacities would measure similar in size and greater than one centimeter on a standard chest x-ray. *Id.*

Dr. Tarver opined the CT scan reveals one to two-millimeter nodules predominantly in the upper lobes, no large masses, and "minimal right apical scarring versus pseudoplaque." Employer's Exhibit 5. He opined the CT scan shows only simple pneumoconiosis. *Id.*

Dr. DePonte reviewed Dr. Tarver's interpretation of the October 1, 2013 CT scan and provided a rebuttal report. Claimant's Exhibit 3. She attached multiple images from the CT scan and March 27, 2019 x-ray illustrating the opacities she identified. *Id.* Addressing Dr. Tuteur's diagnosis of pseudoplaque she explained as follows:

> The course of the lymphatic channels is around the periphery of the pulmonary lobules, the functional unit of the lung, some of which rest along the pleura and therefore some of the large opacities form peripherally, as in this case, adjacent to the pleura. The term pseudoplaque has been applied to these opacities as a descriptive term however, these are parenchymal opacities like those that occur more centrally.

*Id.* Further, she explained that the opacities are clearly within the lung parenchyma and do not represent pleural plaques or non-specific pleural scarring, which occurs higher in the lung apices. *Id.* She stated the eleven-millimeter opacity is clearly separate from the pleura and within a region of coalescence, a classic location of progressive massive fibrosis, and reiterated her diagnosis of complicated pneumoconiosis. *Id.*

Dr. Tarver responded to Dr. DePonte's rebuttal report. Employer's Exhibit 7. He reiterated his opinion that the CT scan shows simple pneumoconiosis and minimal right apical scarring versus pseudoplaque. *Id.* He stated he disagrees with Dr. DePonte because the opacities in the right apex are small peripheral pseudoplaques, and he and Dr. DePonte "are in disagreement as to whether a pseudoplaque would qualify as a large opacity." *Id.*

In considering the CT scan interpretations of Drs. DePonte and Tarver, the ALJ included a summary of their initial interpretations and rebuttal reports. Decision and Order

9

**JA 105**

at 17-18. He then found Dr. DePonte's reading to be more persuasive than Dr. Tarver's because she was "very specific and thorough." *Id.* at 18. He elaborated on his finding, stating:

> Dr. Tarver also failed to explain his finding of [pseudoplaques] in the right apex and the causes of this type of abnormality. Dr. DePonte explained that the large opacities she noted were visible on a background of coalescence and that her observation of the large opacities appeared in a location that is very typical for pulmonary massive fibrosis and specifically complicated pneumoconiosis. In her CT reading she also made an equivalency determination finding that the large opacities would appear similarly and over one centimeter on chest x-ray. The thoroughness of her findings and explanations is also bolstered by the fact that she had the opportunity to read all three of the offered x-rays and the October 1, 2013 CT scan and was able to specifically compare the CT scan with the March 27, 2019 x-ray.

*Id.* Thus, contrary to Employer's argument, the ALJ resolved the dispute between Drs. DePonte and Tarver by permissibly crediting Dr. DePonte's opinion over Dr. Tarver's opinion.[10] *See Hicks*, 138 F.3d at 533; *Akers*, 131 F.3d at 441; Decision and Order at 18; Employer's Brief at 19-20.

Employer also argues the ALJ erred in discrediting Dr. Smith's CT scan interpretation. Employer's Brief at 14-15. We disagree.

Dr. Smith identified small nodules throughout the lung zones indicating simple pneumoconiosis but did not discuss any abnormalities in the apex of the right lung. Director's Exhibit 22 at 18. The ALJ observed the other radiologists that read the x-rays and CT scans all identified an abnormality in the right apex. Decision and Order at 18. He thus permissibly found Dr. Smith's CT scan interpretation is not persuasive because it is in

---

[10] We further reject Employer's argument that the ALJ erred in crediting Dr. DePonte's interpretation of the October 1, 2013 CT scan over Dr. Swart's interpretation found in Claimant's treatment records. Employer's Brief at 14-16. The ALJ permissibly gave greater weight to Dr. DePonte's interpretation because Dr. Swart's qualifications are unknown. *See Adkins*, 958 F.2d at 51-52; *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998); *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 441 (4th Cir. 1997); *see also Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 256 (4th Cir. 2016); Decision and Order at 16.

10

**JA 106**

the minority on the presence of an abnormality in the apical upper lobe of the right lung. *See Hicks*, 138 F.3d at 533; *Akers*, 131 F.3d at 441; Decision and Order at 18.

Thus, as it is supported by substantial evidence, we affirm the ALJ's finding the CT scan evidence supports a finding of complicated pneumoconiosis. 20 C.F.R. §718.304(c); Decision and Order at 18. We further affirm, as unchallenged on appeal, the ALJ's finding that the medical opinion evidence supports a finding of complicated pneumoconiosis. *See Skrack v. Island Creek Coal Co.*, 6 BLR 1-710, 1-711 (1983); Decision and Order at 20-21. Because Employer raises no further argument, we affirm the ALJ's finding that all the relevant evidence considered together establishes complicated pneumoconiosis. *See Melnick*, 16 BLR at 1-33; 20 C.F.R. §718.304; Decision and Order at 21. We further affirm, as unchallenged, the ALJ's finding that Claimant's complicated pneumoconiosis arose out of his coal mine employment. 20 C.F.R. §718.203(b); *see Skrack*, 6 BLR at 1-711; Decision and Order at 22. Thus, we affirm the award of benefits.[11]

---

[11] In light of our affirmance of the ALJ's award of benefits, we need not address the arguments raised in Claimant's cross-appeal. *See Larioni*, 6 BLR at 1-1278.

11

**JA 107**

Accordingly, the ALJ's Decision and Order Awarding Benefits is affirmed.

SO ORDERED.


DANIEL T. GRESH, Chief
Administrative Appeals Judge


JUDITH S. BOGGS
Administrative Appeals Judge


JONATHAN ROLFE
Administrative Appeals Judge

12

## **Notice of Appeal Rights**

A Decision of the Benefits Review Board shall become final sixty (60) days after its issuance unless a written petition for review is filed with the appropriate United States Court of Appeals prior to the expiration of the sixty (60) day period, or unless a timely request for reconsideration is filed with the Board. 33 U.S.C. Section 921; 30 U.S.C. Section 932(a); 20 C.F.R. Sections 802.406, 802.407. Therefore, you are advised that you may SEEK RECONSIDERATION OF, OR APPEAL, a final decision of the Board within the time limits set forth below. THE TIME LIMITS CANNOT BE EXTENDED, AND YOU MUST SUBMIT YOUR REQUEST TO THE PROPER PLACE WITHIN THE TIME PROVIDED.

If you seek RECONSIDERATION by this Board (that is, if you want the Board to reconsider its decision), you must submit to the Board a written Motion for Reconsideration within 30 DAYS OF THE DATE STAMPED ON THE FRONT OF THIS DECISION. Your motion should identify any error you find in the Board's opinion and state the reasons you believe warrant further consideration of your case. If you file a timely motion for reconsideration, you will have sixty (60) days from the issuance of the Board's decision on reconsideration to file an appeal with a Court of Appeals, as set forth below.

Alternatively, if you wish to APPEAL to a United States Court of Appeals, you must ensure that a petition for review is received by THE APPROPRIATE COURT (NOT THIS BOARD) WITHIN SIXTY (60) DAYS OF THE DATE STAMPED ON THE FRONT OF THIS DECISION. The petition for review should contain the case number and the date of the Board's decision. The petition should be sent to the Court of Appeals that covers the state in which the employee's injury occurred. In a black lung claim, any state in which the miner had coal mine employment may be considered the state in which the injury occurred (i.e., for a black lung appeal, you may file in any Court of Appeals covering any state in which you worked as a miner). Listed below are the twelve Courts of Appeals and the states they cover. You should identify the court covering the state of injury (including all states of coal mine employment for black lung claims) and file your petition with that court. If you have questions about your case, call the clerk of the court at the number shown below. If you appeal directly to the Court of Appeals, you may not later get reconsideration by the Board. However, if you seek Board reconsideration, you may later appeal the Board's ruling on reconsideration to the Court of Appeals.

In Defense Base Act cases, the United States Courts of Appeals for the Fourth, Fifth, Sixth, and Eleventh Circuits have held that Board decisions must initially be appealed to the United States District Court where the office of the appropriate district director is located.

**If you have any questions about the procedures to be followed in your case, call the Office of the Clerk of the board at 202-693-6300.**

## COURT OF APPEALS

**First Circuit** (Maine, New Hampshire, Rhode Island
Massachusetts, Puerto Rico)
Maria R. Hamilton, Clerk
U.S. Court of Appeals
  for the First Circuit
1 Court House Way
Suite 2500
Boston, MA  02210
(617) 748-9057
www.ca1.uscourts.gov

**Second Circuit** (New York, Connecticut,
Vermont)
Catherine O'Hagan Wolfe, Clerk
U.S. Court of Appeals
  for the Second Circuit
40 Foley Square
Room 1702, U.S. Courthouse
New York, NY  10007
(212) 857-8544
www.ca2.uscourts.gov

**Third Circuit** (Pennsylvania, New Jersey, Delaware,
Virgin Islands)
Patricia S. Dodszuweit, Clerk
U.S. Court of Appeals
  for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA  19106
(215) 597-2995
www.ca3.uscourts.gov

**Fourth Circuit** (Maryland, Virginia, West Virginia
North Carolina, South Carolina)
Patricia S. Connor, Clerk
U.S. Court of Appeals
  for the Fourth Circuit
1100 East Main Street
Room 501
Richmond, VA 23219-3517
(804) 916-2700
www.ca4.uscourts.gov

**Fifth Circuit** (Louisiana, Texas, Mississippi)
Lyle W. Cayce, Clerk
U.S. Court of Appeals
  for the Fifth Circuit
600 S. Maestri Place
New Orleans, LA 70130-3408
(504) 310-7700
www.ca5.uscourts.gov

**Sixth Circuit** (Ohio, Kentucky, Tennessee,
Deborah S. Hunt, Clerk         Michigan)
U.S. Court of Appeals
  for the Sixth Circuit
100 East 5th Street, Room 424
Cincinnati, OH  45202
(513) 564-7000
www.ca6.uscourts.gov

**Seventh Circuit** (Wisconsin, Illinois,
Indiana)
Chris Conway, Clerk
U. S. Court of Appeals
  for the Seventh Circuit
219 South Dearborn Street
Room 2722
Chicago, IL  60604
(312) 435-5850
www.ca7.uscourts.gov

**Eighth Circuit** (Minnesota, Iowa, Missouri,
Arkansas, Nebraska, South Dakota, North Dakota)
Michael E. Gans, Clerk
U.S. Court of Appeals
  for the Eighth Circuit
Thomas F. Eagleton Court House
111 South 10th Street Room 24.329
St. Louis, MO 63102
(314) 244-2400
www.ca8.uscourts.gov

**Ninth Circuit** (Washington, Oregon, Montana, Idaho,
California, Nevada, Arizona, Alaska, Hawaii)
Molly Dwyer, Clerk
U.S. Court of Appeals
  for the Ninth Circuit
95 Seventh Street
San Francisco, CA  94103
(415) 355-8000
www.ca9.uscourts.gov

**Tenth Circuit** (Wyoming, Utah, Colorado,
Kansas, Oklahoma, New Mexico)
Chritopher M. Wolpert, Clerk
U.S. Court of Appeals
  for the Tenth Circuit
1823 Stout Street
Denver, CO 80257
(303) 844-3157
www.ca10.uscourts.gov

**Eleventh Circuit** (Alabama, Georgia, Florida)
David J. Smith, Clerk
U. S. Court of Appeals
  for the Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, GA  30303
(404) 335-6100
www.ca11.uscourts.gov

**District of Columbia Circuit** (Washington,
D.C.)
Mark J. Langer, Clerk
U.S. Court of Appeals
  for the D.C. Circuit
333 Constitution Avenue, N.W., Rm. 5205
Washington, D.C.  20001
(202) 216-7000
www.cadc.uscourts.gov

14

**JA 110**

# CERTIFICATE OF SERVICE

2022-0328-BLA James Allen Braham v. ICG Tygart Valley, LLC, Arch Coal Inc., Director, Office of Workers' Compensation Programs (Case No. 20-BLA-5528)

2022-0328A-BLA James Allen Braham v. ICG Tygart Valley, LLC,, Arch Coal Inc.,, Director, Office of Workers' Compensation Programs (Case No. 20-BLA-5528)

I certify that the parties below were served this day.

_09/21/2023_
(DATE)

Thomas O. Shepherd, Jr., Esq.
Clerk of the Appellate Boards

Hon. Drew A. Swank
Office of Administrative Law Judges
William S. Moorhead Federal Office Building
1000 Liberty Avenue Suite 1800
Pittsburg, PA 15222

Office of Administrative Law Judges
Techworld Plaza
800 K Street NW
Washington, DC 20001
--Electronic

James Allen Braham
89 Apple Drive
Albright, WV 26519
--*Certified*

Office of the Solicitor, Division of Black Lung and Longshore Services
200 Constitution Avenue, N.W.
Suite N-2117, NDOL
Washington, DC 20210
--Electronic

Leonard Stayton, Esq.
P.O. Box 1386
Inez, KY 41224
--*Certified*

Mr. Michael Chance
District Director
U.S. Department of Labor
Suite C-3515, NDOL
Washington, DC 20210

William S. Mattingly, Esq.
Jackson Kelly PLLC
100 West Main Street, Suite 700
P.O. Box 2150
Lexington, KY 40507
--Electronic

**JA 111**

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**
**RICHMOND, VA**

| | | |
|---|---|---|
| In the matter of: | ) | |
| | ) | |
| ICG TYGART VALLEY, LLC, | ) | Fourth Circuit No.: TBD |
| | ) | |
|     Petitioner, | ) | BRB Nos.: 2022-0328 BLA |
| | ) |  and 2022-0328 BLA-A |
| | ) | |
| v. | ) | Case No.: 2020-BLA-05528 |
| | ) | |
| JAMES ALLEN BRAHAM, | ) | |
| | ) | |
|     Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DIRECTOR, OFFICE OF | ) | |
| WORKERS' COMPENSATION | ) | |
| PROGRAMS, | ) | |
| | ) | |
|     Party-in-Interest. | ) | |

---

**ICG TYGART VALLEY, LLC'S**
**PETITION FOR REVIEW OF ORDER OF AN AGENCY**

---

ICG Tygart Valley, LLC, the Petitioner in the above-styled

matter, requests this Court review, pursuant to the authority

provided at 33 U.S.C. § 921(c), the September 21, 2023 Order of the

United States Department of Labor, Benefits Review Board,

affirming Administrative Law Judge Drew A. Swank's April 18, 2022

**JA 112**

Decision and Order-Awarding Benefits pursuant to the provisions of 30 U.S.C. § 901, *et seq.*

In support of the petition for review, the Petitioner states:

1. That the name and address of the Petitioner is:

> ICG Tygart Valley, LLC
> c/o SmartCasualtyClaims
> P.O. Box 3389
> Charleston, WV 25333-3389

2. That the name and address of counsel for the Petitioner is:

> William S. Mattingly
> Jackson Kelly PLLC
> P.O. Box 2150
> Lexington, KY 40588-2150

3. The name and address of the Respondent is:

> James Allen Braham
> 89 Apple Drive
> Albright, WV 26519

4. The name and address of counsel for Respondent is:

> Leonard J. Stayton
> Attorney at Law
> P.O Box 1386
> Inez, KY  41224

5. The name and address for counsel for the other parties is:

> Jessica E. Matthis
> U.S. Department of Labor
> Office of the Solicitor
> Frances Perkins Building, Room N-2119
> 200 Constitution Avenue, N.W.
> Washington, D.C. 20210

6.      That on September 21, 2023, the Benefits Review Board issued an order affirming Administrative Law Judge Drew A. Swank's April 18, 2022 Decision and Order-Awarding Benefits under Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 901 *et seq.*;

7.      That the orders of the Benefits Review Board and Administrative Law Judge are irrational, not supported by substantial evidence in the record considered as a whole, and contrary to applicable law;

8.      That review is sought in this Court pursuant to the Longshore and Harbor Workers' Compensation Act, as amended, 33 U.S.C. § 921(c), incorporated by the Federal Mine Safety and Health Act, as amended, 30 U.S.C. §§ 925(a)(5) and 932(a); and

9.      That the address of the Benefits Review Board, which although not a party, must be served with a copy of the petition for review pursuant to 33 U.S.C. § 921(c), is:

> Benefits Review Board
> ATTN: Clerk of the Board
> 200 Constitution Ave., N.W.
> Room S-5220
> Washington, D.C. 20210

For the foregoing reasons, ICG Tygart Valley, LLC appeals from the decision and order entered in this federal black lung claim and asks that a briefing schedule be established.

Respectfully submitted,

ICG Tygart Valley, LLC,

By Counsel,

/s/ William S. Mattingly
William S. Mattingly
Kentucky State Bar No. 96067
Ohio State Bar No. 0029476
West Virginia State Bar No. 004699
Pennsylvania State Bar No. 68577 (inactive)
Jackson Kelly PLLC
100 West Main Street, Suite 700
Lexington, KY 40507
(859) 288-2811
wmattingly@jacksonkelly.com

## <u>CERTIFICATE OF SERVICE</u>

I, William S. Mattingly, do hereby certify that I served **ICG Tygart Valley, LLC's Petition for Review of Order of an Agency** upon the following, by mailing a copy thereof to each by electronic service or by other indicated express delivery service, this <u>17th</u> day of November 2023.

**<u>*Electronic:*</u>**    Nwamaka Anowi, Clerk
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Room 501
Richmond, VA 23219-3517

**<u>*Email:*</u>**

Jessica E. Matthis
U.S. Department of Labor
Office of the Solicitor
Room N-2119
200 Constitution Ave., NW, Ste. N-2119
Washington, D.C. 20210
*Matthis.jessica.e@dol.gov* and
*BRB-BLLLS@dol.gov*

Leonard J. Stayton
Attorney at Law
Main Street, Cain Bldg.
P.O Box 1386
Inez, KY 41224
*staytonlawoffice@bellsouth.com*

Thomas O. Shepherd, Jr.
Benefits Review Board
P.O. Box 37601
Washington, D.C. 20013-7601
*shepherd.thomas@dol.gov*

<u>*/s/ William S. Mattingly*</u>
William S. Mattingly
Kentucky State Bar No. 96067
Ohio State Bar No. 0029476
West Virginia State Bar No. 004699
Pennsylvania State Bar No. 68577 (inactive)
Jackson Kelly PLLC
100 West Main Street, Suite 700
Lexington, KY 40507
(859) 288-2811
*wmattingly@jacksonkelly.com*